

FILED
2021 Jun-01  PM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| CAROL GUY, as representative of the ESTATE OF STEVEN MULLINS, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 4:21-cv-00264-SGC |
| v. | ) ) ) ) | |
| JEFFERSON DUNN, et al., | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## PLAINTIFF'S RESPONSE TO ADOC OFFICIALS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT (Dkts. 45, 46)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................1

STATEMENT OF FACTS ......................................................................2

I.     Mr. Mullins is killed at St. Clair after reporting assaults by his cellmate .........2

II.    The Moving Defendants caused Mr. Mullins's injuries and death ...................4

LEGAL STANDARD.............................................................................9

ARGUMENTS AND AUTHORITIES .................................................10

I.     State law remedies are immaterial to Eighth Amendment claims ...............10

II.    Plaintiff states failure-to-protect claims against the Moving Defendants .....11

       A.     Plaintiff states claims against Defendants (Count I)...........................11

       B.     Defendants are not entitled to qualified immunity.............................22

III.   Plaintiff states a failure-to-intervene claim against Jones (Count VIII)........28

IV.    Plaintiff states a denial of medical care claim (Count IV) ...........................30

V.     Defendants are not entitled to state-agent immunity....................................31

VI.    Plaintiff's complaint does not merit dismissal as a shotgun pleading..........33

# TABLE OF AUTHORITIES

## CASES

*Am. Fed'n of Labor & Cong. of Indus. v. City of Miami*, 637 F.3d 1178
(11th Cir. 2011) ...........................................................................10

*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021) ...........................................36

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................10, 12

*Bridges v. Poe*, 487 F. Supp. 3d 1250 (N.D. Ala. 2020) .........................................13

*Brooks v. Warden,* 706 F. App'x 965 (11th Cir. 2017)............................................27

*Brooks v. Warden,* 800 F.3d 1295 (11th Cir. 2015) ...............................................27

*Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004) ...............................................30

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)................................................37

*Cantu v. City of Dothan*, 974 F.3d 1217 (11th Cir. 2020)......................................32

*Coffin v. Brandau*, 642 F.3d 999 (11th Cir. 2011) ...............................................25

*Cont'l Tech. Servs. v. Rockwell Int'l Corp.,* 927 F.2d 1198
(11th Cir. 1991) ...........................................................................27

*Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987) ......................................................30

*Corbitt v. Vickers*, 929 F.3d 1304 (11th Cir. 2019).................................................22

*Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003) .................................................25

*Daniels v. Felton*, 823 F. App'x 787 (11th Cir. 2020) ...........................................14

*Dickinson v. Cochran*, 833 F. App'x 268 (11th Cir. 2020)............................*passim*

*Downing v. Midland Funding, LLC*, No. 2:15-CV-00737-RDP,
2016 WL 125861 (N.D. Ala. Jan. 12, 2016) ..................................................34

*Duke v. Dunn*, 4:14-cv-1952-RDP (N.D. Ala.) ........................................................16

*Dunn v. Dunn*, 219 F. Supp. 3d 1100 (M.D. Ala. 2016) .........................................18

*Dusek v. JP Morgan Chase & Co.*, 832 F.3d 1243 (11th Cir. 2016) .....................10

*Ensley v. Soper*, 142 F.3d 1402 (11th Cir. 1998) .............................................28, 29

*Estelle v. Gamble*, 429 U.S. 97 (1976) ....................................................................30

*Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)................................................31, 32

*Ex parte Dangerfield*, 49 So. 3d 675 (Ala. 2010)....................................................31

*Ex parte Gilland*, 274 So. 3d 976 (Ala. 2018).........................................................32

*Farmer v. Brennan*, 511 U.S. 825 (1994)...........................................................*passim*

*Foster v. Maloney*, 785 F. App'x 810 (11th Cir. 2019)...........................................32

*Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974)......................................................24

*Goebert v. Lee Cty.*, 510 F.3d 1312 (11th Cir. 2007).........................................16, 18

*Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003) .................................................22

*Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990) ...................................................30

*Hale v. Tallapoosa Cty.*, 50 F.3d 1579 (11th Cir. 1995) ..................................*passim*

*Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316
    (11th Cir. 2012) ....................................................................................27, 33

*Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227 (11th Cir. 2010)................19, 20, 30

*Harris v. Coweta Cty.*, 21 F.3d 388 (11th Cir. 1994)..............................................30

*Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014)......................................14, 25

*Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999) ...............................................14

*Hawkins v. City of Greenfield*, 101 F. Supp. 2d 1356
    (M.D. Ala. 2000) ........................................................31

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994) ....................30

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................22

*Hudson v. Palmer*, 468 U.S. 517 (1984)........................................................23

*Hunter v. City of Leeds*, 941 F.3d 1265 (11th Cir. 2019) ........................................32

*Johnson v. Boyd*, 701 Fed. App'x 841 (11th Cir. 2017)....................................28, 29

*Jones v. Diamond*, 636 F.2d 1364 (5th Cir. Jan. 29, 1981) (en banc) ....................24

*Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000) ........................................21, 36

*LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993) ........................................18, 24

*Lamm v. State St. Bank*, 749 F.3d 938 (11th Cir. 2014) ......................................9, 19

*Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419 (11th Cir. 1997)........................30

*Lane v. Philbin*, 835 F.3d 1302 (11th Cir. 2016)....................................24

*Logan v. City of Evanston*, No. 20 C 1323, 2020 WL 6020487
    (N.D. Ill. Oct. 12, 2020) ........................................................28

*Mann v. Darden*, 630 F. Supp. 2d 1305 (M.D. Ala. 2009)......................................31

*Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019)..........................11, 14, 24, 25

*Marsh v. Butler Cty., Ala.*, 268 F.3d 1014 (11th Cir. 2001) (en banc)............*passim*

*Martinez v. City of Birmingham*, 2:18-cv-0465-JEO,
    2018 WL 5013861 (N.D. Ala. Oct. 16, 2018)................................................35

*Monroe v. Pape*, 365 U.S. 167 (1961) ....................................................10

*Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861
    (11th Cir. 2020) ...........................................................................................14

*Patel v. Lanier Cty. Georgia*, 969 F.3d 1173 (11th Cir. 2020) .........................27, 30

*Pearson v. Callahan*, 555 U.S. 223 (2009).............................................................25

*Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313
    (11th Cir. 2005) ...........................................................................................14

*Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)......................................................22

*Renfroe v. Nationstar Mortg.*, 822 F.3d 1241 (11th Cir. 2016).............................10

*Rivas v. Bank of New York Mellon*, 676 F. App'x 926
    (11th Cir. 2017) ...........................................................................................37

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
    407 F. Supp. 3d 1216 (N.D. Ala. 2019) .......................................................36

*S.Y. v. Holiday Hospitality*, No. 2:20-CV-624-JES-MRM,
    2021 WL 1751363 (M.D. Fla. May 4, 2021) .........................................21, 36

*Sherman v. Quest*, No. 18-60973-CIV, 2020 WL 6791100
    (S.D. Fla. Nov. 19, 2020) .............................................................................28

*Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998) ..................................................32

*Shook v. Dunn*, 2:18CV1048-MHT, 2020 WL 1492841
    (M.D. Ala. Mar. 25, 2020).....................................................................32, 33

*Taylor v. Hughes*, 920 F.3d 729 (11th Cir. 2019)....................................................32

*Taylor v. Riojas*, 141 S. Ct. 52 (2020) ....................................................................27

*U.S. Steel Corp. v. Astrue*, 495 F.3d 1272 (11th Cir. 2007) ...................................28

*Valdes v. Crosby*, 450 F.3d 1231 (11th Cir. 2006) ......................................13, 18, 20

*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313
  (11th Cir. 2015) ...................................................................33, 34

*Williams v. Edwards,* 547 F.2d 1206 (5th Cir. 1977) ..............................24

*Zinermon v. Burch*, 494 U.S. 113 (1990)...............................................10

## RULES

Federal Rule of Civil Procedure 8(a)(2) ..................................................35

Federal Rule of Civil Procedure 9(b)..........................................15, 32, 37

Federal Rule of Civil Procedure 10(b)....................................................35

Federal Rule of Civil Procedure 15(a)(2) ...............................................37

## INTRODUCTION

Plaintiff brings this action to redress the tragic and preventable death of her son, Steven Mullins, while in Defendants' custody at the horrifically violent St. Clair Correctional Facility ("St. Clair"). Defendants allowed Mr. Mullins to be sexually assaulted, threatened, and ultimately, murdered, by a serial assailant, Clarence Jackson, despite Mullins's repeated pleas for safety. The Moving Defendants—the six highest-ranking Alabama Department of Corrections ("ADOC") administrators responsible for safety at St. Clair and St. Clair's warden—did nothing to address the horrific tide of stabbings and sexual violence at St. Clair despite their knowledge that they were operating the most violent prison in country. Instead, these Defendants instituted policies and customs that fueled more violence and permitted their subordinates to do the same, failing to protect Mullins from Jackson's escalating assaults and retaliatory murder.

ADOC Commissioner Dunn; Associate Commissioners Culliver, Williams, and Daniels; Institutional Coordinator Ellington; Prison Rape Elimination Act ("PREA") Director Vincent, and Warden Jones (the "Moving Defendants") now move to dismiss Plaintiff's complaint prior to discovery, disclaiming any responsibility for Mr. Mullins's preventable death. Doc. 46. Yet contrary to their arguments, Plaintiff's complaint properly states failure to protect, failure to intervene, deprivation of emergency medical care, and wrongful death claims.

1

Defendants' contrary arguments overstate the pleading standards and requirements for liability; ignore most of Plaintiff's allegations; and rely on inapposite cases that concern the quantum of evidence required to prevail at summary judgment, not the sufficiency of pleading to state a claim prior to discovery. Defendants are also not entitled to either qualified or state-agent immunity at this early stage. Finally, Plaintiff's complaint does not commit any of the four shotgun pleading errors.

## STATEMENT OF FACTS

### I.    Mr. Mullins is killed at St. Clair after reporting assaults by his cellmate.

In February 2019, Mullins was murdered by Clarence Jackson and two co-assailants at St. Clair. Doc. 40 ¶¶1-8, 71. Jackson was a particularly dangerous prisoner with a known history of repeated in-custody sexual assault, violence, and contraband weapons possession. *Id.* ¶¶38-46. As but one example, prior to the murder of Mullins, a cellmate of Jackson reported to St. Clair staff that Jackson had repeatedly sexually assaulted him. Nonetheless, Jackson was not disciplined for his misconduct or moved to segregation and instead continued to be housed in general population, where he was emboldened to roam freely in the prison and commit violence against other prisoners with impunity and without interference from staff. *Id.* ¶¶38-47, 56-67, 69, 71-81, 4, 228-233.

Although Mullins was known to be a particularly vulnerable prisoner who faced heightened risks to his safety (*id.* ¶¶48-58), St. Clair staff nonetheless housed

him with Jackson as his cellmate in the "hot bay" P/Q blocks (*id.* ¶¶54, 4).
Predictably, Jackson targeted Mullins with a series of escalating sexual and
physical assaults. *Id.* ¶¶56-72. After Mullins refused Jackson's sexual advances,
Jackson attacked Mullins and threatened him at knifepoint. *Id.* ¶¶56-60. When
Mullins reported the assaults to assistant wardens, PREA officials, and a lieutenant
at St. Clair, they failed to confiscate the knife in Jackson's possession, discipline
him for the misconduct, segregate Jackson, place Mullins in segregation or
protective custody, or protect Mullins from retaliation. *Id.* ¶¶60-69, 182-84.
Instead, they left Jackson in general population, where, due to St. Clair's entirely
uncontrolled movement, he was free to access Mullins. *Id.* ¶¶68-81, 228-233, 4,
184. Predictably, after Mullins's report, Jackson retaliated against, stabbed, and
killed Mullins, resulting in his preventable and tragic death. *Id.* ¶¶8, 71-83. The
lone cube officer present at the time of the assault due to St. Clair's inadequate
monitoring of prisoners allowed Mullins's assailants to enter his housing block
without authorization, even though they were armed; did nothing to intervene as
she witnessed the prolonged stabbing of Mullins; allowed Jackson and his co-
assailants to flee after the assault; and failed to secure emergency care for Mullins
as he faced grave injuries, leading to his death. *Id.* ¶¶71-83, 219, 291, 318, 344.

Mullins' horrific death at St. Clair was but one manifestation of the
widespread epidemic of violence there. *Id.* ¶¶86-139. In 2018, Alabama's prisons

for men had the highest prison homicide rate in the nation, and, of Alabama's prisons, St. Clair had the highest per capita homicide rate. *Id.* ¶86. Beatings, stabbings, and rapes were endemic at St. Clair, violence and terror reigned, and the threat of assault was constant. *Id.* ¶¶85, 93-139 (detailing over 100 examples of assaults, most of which involved weapons and all of which involved serious injury), 188-97. Prisoner-on-prisoner assaults had grown <u>sevenfold</u> between 2010 and 2018, with nearly <u>300</u> reported assaults in the two years prior to Mullins's death, in addition to those that went unreported. *Id.* ¶¶88-91.

## II. The Moving Defendants caused Mr. Mullins's injuries and death.

The Moving Defendants consist of Warden Jones and the six highest-ranking ADOC officials responsible for security at St. Clair in the timeframe leading up to Mullins's death. *Id.* ¶¶17-23. Dunn was the longtime ADOC Commissioner; Culliver, Williams, and Daniels were the three officials who served in the role of Associate Commissioner of Operations and Institutional Security in the time period leading up to Mullins's death; Ellington was the ADOC Institutional Coordinator for the Northern Region, who was responsible for supervising St. Clair's wardens, ensuring safe conditions at St. Clair, and leading the security audit team; and Vincent was the PREA Director for ADOC responsible for ensuring that St. Clair protected against sexual assault and retaliation, appropriately addressed and responded to sexual assaults, and

implemented and complied with PREA. *Id.* ¶¶17-23, 34. Each of these high-

ranking officials had a responsibility to address St. Clair's violence. *Id.*

These high-ranking supervisors were also aware of the widespread crisis of

violence at St. Clair. *Id.* ¶¶85-169, 188-97. Nonetheless, each perpetrated policies

and customs that, both in isolation and collectively, posed a substantial risk of

serious harm to prisoners such as Mr. Mullins. Specifically:

- They created a culture of violence and impunity by failing to require the discipline and segregation of perpetrators of in-custody violence and appropriate responses to the threats posed by such perpetrators (*id.* ¶¶170-85, 38-47, 58-70, 124, 101e, 114, 121, 152-55).

- They permitted contraband weapons to saturate St. Clair and declined to ensure that contraband searches were conducted or that prisoners (such as Clarence Jackson) were disciplined for weapons possession and stripped of their weapons. *Id.* ¶¶186-204, 7, 58-69, 93-140, 159-60, 167, 277.

- They failed to ensure the control of prisoner movement and allowed St. Clair's prisoners to be unmonitored and unsupervised. *Id.* ¶¶205-223, 228-233, 4, 70-81, 105b, 107-108, 116d, 117, 128c, 38-44, 54-59.

- They allowed armed, unsupervised, and dangerous prisoners in the "hot bay" P/Q blocks to roam freely throughout the prison and assault other prisoners without interference. *Id.* ¶¶4, 224-35, 140, 157-58, 38-47, 54-84, 101b-d, 103-104, 106, 108, 111a-b, 115, 116b-c, 117, 118b, 119, 120a, 122a, 123-125, 126a-g, 128a-c, 131, 132a, 133, 136, 217-18.

- They failed to ensure appropriate prevention of and responses to sexual assaults and protect reporting victims from retaliation. *Id.* ¶¶236-59, 38-84, 94, 124, 101b, 105a, 106, 107b, 108, 109a, 109c, 110, 112, 114, 116d, 118a, 119, 120b, 121, 122b, 124-25, 127, 132a, 166-67, 183, 212, 220. They failed to protect sexual assault victims even though they knew of the substantial risk of retaliation facing victims who report sexual violence (*id.* ¶¶252-254, 276, 7-8, 79); that the failure to separate likely victims from

predators leads to foreseeable violence (*id.* ¶¶171, 152, 70); and that St. Clair was unsafe and unsecured (*e.g.*, *id.* ¶¶85-169, 187-98, 225-32).

Each of the Moving Defendants was subjectively aware not only of the complete breakdown of security at St. Clair (*id.* ¶¶140-69), but also of the dangerous conditions described above that resulted from their policies and customs (*id.* ¶¶170-71, 178-79, 189-98, 220-22, 225-34, 238-46, 264-67). For example, they were aware of the staggeringly high levels of violence and sexual assault at St. Clair (*id.* ¶¶140-69, 85-139, 237-59) and the risk posed by unmonitored perpetrators of in-custody violence in the P/Q blocks (*id.* ¶¶224-35).

Defendants Dunn, Culliver, Williams, Daniels, Ellington, Vincent, and Jones had received notice of the security crisis in myriad ways, including from incident reports for hundreds of assaults, ADOC reports, their own observations and internal communications, and security audits. *E.g.*, *id.* ¶¶140-41, 90-139, 143, 21, 23. Adding to this notice, the Equal Justice Initiative ("EJI") brought a prisoner class action in 2014 against Dunn, Culliver, and other Defendants, describing the outbreak of violence and the policies and customs fueling it, including inadequate supervision and monitoring, failure to address weapons proliferation, creation of a dangerous culture of abuse, and failure to respond appropriately to violence and sexual assault. *Id.* ¶¶144-47, 241; Doc. 40-1 (complaint). The class action settled in 2017, with an agreement to make changes that these high-ranking officials knew about but did not implement. Doc. 40 ¶¶152-56. Individual prisoner lawsuits, such

as three illustrative lawsuits brought against Dunn and Culliver, further put these high-ranking Defendants on notice of the constant violence, as well as the systemic failures undergirding it. *Id.* ¶¶163-64. In early September 2018—five-and-a-half months before Mullins was killed by prisoners from the P/Q blocks, a letter to Dunn from advocates (whose contents were communicated to the remaining high-ranking Defendants) warned about the severe risks posed by armed, unsupervised, and dangerous prisoners housed the "hot bay" P/Q blocks, who had committed a shocking spate of murders and assaults, and the need for immediate action, such as contraband searches, to regain control of the prisoners in those units. *Id.* ¶¶157-61. Nonetheless, the Moving Defendants failed to act (*id.* ¶¶140-69) and continued policies and customs that fueled more violence (*supra* at 5-6).

Defendants Dunn, Culliver, Williams, Daniels, Ellington, Vincent, and Jones also knew that their subordinates failed to protect prisoners from known threats to their safety (*id.* ¶¶170-78, 152-55, 101e, 114, 116a, 121, 124); failed to segregate and discipline prisoners with a known history of in-custody violence (*id.*); failed to search for weapons and discipline weapons possession (*e.g.*, *id.* ¶¶195-202, 159-60, 167, 101-06, 107d-f, 109-118b-d, 120, 122-23, 126, 128-38); failed to monitor prisoners or intervene during assaults (*id.* ¶¶205-22, 101d, 109d, 111c, 114, 121, 126i, 128a, 128c); allowed uncontrolled movement, including for dangerous prisoners in the P/Q blocks (*id.* ¶¶224-34, 4, 107f, 215); failed to properly prevent

and respond to sexual violence or to protect reporting victims from retaliation (*id.*
¶¶ 237-58, 166-67, 101b, 105a, 106-110, 112, 114, 116d, 118-122b, 124-25, 127,
132a); and abused prisoners themselves, promoting a culture of abuse and
impunity (*id.* ¶¶260-69). Nonetheless, they failed to address the misconduct,
further fueling the conditions that caused Mullins's death. *E.g.*, *id.* ¶¶276-79.

The Moving Defendants' policies and customs and supervisory failures
caused Plaintiff's injuries. St. Clair's staff failed to discipline or safely house
Jackson after learning that he had repeatedly sexually assaulted a prior cellmate,
C.M. (*id.* ¶¶38-47); released Mullins from segregation into general population into
the particularly dangerous Q block, even though they knew that Mullins had
repeatedly been identified as a prisoner facing heightened risks to his safety and
security and of the dangers of Q block's unsupervised prisoners (*id.* ¶¶48-55, 224-
35, 140, 108, 157-61, 303, 336); again failed to discipline or safely house Jackson
after learning of his escalating assaults against Mullins (*id.* ¶¶38-47, 55-56); failed
to confiscate the knife used to threaten Mullins after learning about it, allowing it
to be used later to kill Mullins (*id.* ¶¶58-67); failed to secure or monitor the P/Q or
L blocks, allowing Jackson and his co-assailants to come and go freely, while
armed, to kill Mullins (*id.* ¶¶69-73, 76-81); and failed to intervene during the brutal
murder (*id.* ¶¶74-75). The failures at St. Clair in responding to the threat posed by
Jackson and the danger to Mullins went as high as Warden Jones, her assistant

wardens, and St. Clair's PREA supervisors. *Id.* ¶¶58-70, 182-84 (describing misconduct by staff including assistant wardens Givens and Brooks and PREA officials Ragsdale and Gordy).[1]

For her part, Warden Jones also had notice of the vulnerability of Mullins (*id.* ¶¶48, 53, 55, 60, 68-69, 240-41, 166-67, 183); the dangerousness of Jackson, including his assaults and knifepoint threats of Mullins (*id.* ¶¶55, 60, 68-69); and the substantial risk of retaliation when Mullins reported Jackson's assaults (*id.* ¶¶171, 253, 101b, 121, 125, 140, 220). However, Jones left Jackson, armed with a knife, in general population where he had access to Mullins. *Id.* ¶¶60, 68-69. She also declined to put Mullins in protective custody or segregation (*id.* ¶¶62-63, 68-70, 183), even though she knew that the failure to separate reporting victims from assailants leads to foreseeable retaliation, particularly in St. Clair's unsecured and unsafe environment (*id.* ¶¶171, 253).

## LEGAL STANDARD

In reviewing a motion to dismiss, a court must accept "the factual allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Lamm v. State St. Bank*, 749 F.3d 938, 942 (11th Cir. 2014). "The

---

[1]   Culliver cannot escape liability merely because, after causing, for many years, the conditions that gave rise to Mullins's death, he was suspended shortly before the assault of Mullins came to fruition. Doc. 46 at 1 n.2. Culliver's temporal defense (and the analogous defense by Daniels) do not implicate any pleading deficiencies, and Defendants do not claim otherwise.

motion is granted only when the movant demonstrates that the complaint has failed to include "enough facts to state a claim to relief that is plausible on its face." *Dusek v. JP Morgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The complaint must raise a right to relief above the speculative level, but it need not contain detailed factual allegations." *Renfroe v. Nationstar Mortg.*, 822 F.3d 1241, 1244 (11th Cir. 2016). If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quotation omitted).

## ARGUMENTS AND AUTHORITIES

### I.   State law remedies are immaterial to Eighth Amendment claims.

In a transparent attempt to sway this Court, Defendants claim that because Plaintiff has recourse under state law, this Court need not enforce the federal constitutional rights that it is entrusted to safeguard. Doc. 46 at 10-11. Yet discussion of remedies before the Alabama Board of Adjustment is immaterial. As Defendants well know, the existence of state law remedies is not a cognizable defense to an Eighth Amendment claim. *E.g.*, *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990); *Monroe v. Pape*, 365 U.S. 167 (1961). Defendants do not claim otherwise, let alone provide contrary authority. Defendants' discussion of official

10

capacity claims and sovereign immunity is likewise superfluous. Doc. 46 at 10-11.

Defendants do not claim that Plaintiff has sued any state entities or brought official

capacity claims, and Plaintiff has expressly stated otherwise. Doc. 40 ¶14.

## II.   Plaintiff states failure-to-protect claims against the Moving Defendants.

The Moving Defendants challenge whether Plaintiff states failure-to-protect

claims against them (Doc. 46 at 13-19), and assert a qualified immunity defense

(*id.* at 21-25). As set forth below, Plaintiff states each element of the claim, and

these Defendants had fair notice of the unconstitutionality of the pleaded conduct.

### A.   Plaintiff states claims against the Moving Defendants (Count I).

"'It is well settled that prison officials must take reasonable measures to

guarantee the safety of the inmates, and a prison official violates the Eighth

Amendment[] . . . if the official is deliberately indifferent to a substantial risk of

serious harm to an inmate who suffers injury.'" *Dickinson v. Cochran*, 833 F.

App'x 268, 271-72 (11th Cir. 2020) (quoting *Marbury v. Warden*, 936 F.3d 1227,

1233 (11th Cir. 2019)). To state such a claim:

> A plaintiff must first allege an objectively substantial risk of serious harm to
> prisoners. Next, the plaintiff must allege that the [corrections] official was
> deliberately indifferent, which requires the following: (1) subjective
> knowledge of a risk of serious harm; (2) disregard of that risk; (3) by
> conduct that is more than gross negligence.

*Id.* at 272 (quotations, citations, and internal punctuation marks omitted).

A plaintiff must also allege that the constitutional violation "caused his

injuries." *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en

banc), abrogated on other grounds by *Twombly*, 550 U.S. at 561-63. A plaintiff

states the causation element against a supervisor by alleging that the supervisor

either "participated directly in the unconstitutional conduct or that a causal

connection exists between the supervisor's actions and the alleged constitutional

violation." *Dickinson*, 833 F. App'x at 272 (quotation omitted). Here, Plaintiff

alleges each element of the claim, including causation, against Defendants.

**Substantial risk of serious harm.** First, Plaintiff has plainly alleged an

objectively substantial risk of serious harm facing Mullins by alleging both a

history of widespread violence *and* systemic conditions that posed a substantial

risk of serious harm from exposure to violence at St. Clair. Defendants do not

appear to directly challenge whether Plaintiff has alleged that Mullins faced a

substantial risk of serious harm as an objective matter, and challenge only his

allegations of whether they had knowledge of that risk. Doc. 46 at 13-18.

Regardless, Plaintiff's allegations include that:

- There was a "widespread and complete breakdown of security at St. Clair—
  in which prison beating and stabbings were endemic; violence and terror
  reigned; and the threat of assault was constant." Doc. 40 ¶85.

- In the year leading up to Mullins's death, "St. Clair had the highest per
  capita prisoner-on-prisoner homicide rate of all of the men's prisons in
  Alabama, which, in turn, had the highest prisoner-on-prisoner homicide rate
  in the nation for a state prison system." *Id.* ¶86.

- Prisoner-on-prisoner assaults had grown sevenfold between 2010 and 2018,

with nearly 300 reported assaults in the two years prior to Mullins's death, in addition to those that went unreported. *Id.* ¶¶88-91. Plaintiff provided well over 100 examples of such assaults, nearly all of which involved weapons and all of which involved serious injury or death (*see id.* ¶¶93-139).

As Defendants ignore (Doc. 46 at 15-16), Plaintiff also alleged in detail the dangerous conditions that fueled the violence and posed a substantial risk of serious harm, such as inadequate supervision and monitoring, the permitted proliferation of contraband weapons, uncontrolled movement, failures to prevent and respond to sexual abuse or protect victims from retaliation, and failures to segregate dangerous prisoners or discipline their misconduct. *Supra* at 5-6.

The Eleventh Circuit recently reaffirmed that analogous allegations suffice in *Dickinson*, 833 F. App'x at 271-72, in which the plaintiff alleged, as here, a "history of widespread inmate-on-inmate abuse" and of deficient policies and customs such as inadequate supervision, allowance of contraband weapons, and failures to separate violent prisoners from non-violent ones sufficed to plead a qualifying risk. Indeed, allegations of a history of widespread violence alone satisfy the requirement to plead a substantial risk of serious harm (*Dickinson*, 833 F. App'x at 272),[2] as do allegations of dangerous conditions alone. *Marsh*, 268

---

[2]     At summary judgment, courts have held that a prisoner proves this element by providing evidence that violence occurs regularly and is severe enough to require, on occasion, medical attention. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1583 (11th Cir. 1995); *see also Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006); *Bridges v. Poe*, 487 F. Supp. 3d 1250, 1258 (N.D. Ala. 2020). Because such

F.3d at 1029; *Dickinson*, 833 F. App'x at 271-72.

Defendants' authorities are factually inapposite and address allegations that survived at the pleading stage and merely failed at summary judgment. *See Marbury*, 936 F.3d at 1234 (at summary judgment, evidence that "violence and terror reign" suffices, but evidence of only "occasional, isolated attacks," such as "2.5 stabbings per year" does not); *Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1322 n.21 (11th Cir. 2005) (at summary judgment, "evidence of two to three pretty serious inmate fights over a period of nine months and of not very many other fights over a four-year span" does not suffice); *Daniels v. Felton*, 823 F. App'x 787, 790 (11th Cir. 2020) (at summary judgment, *pro se* plaintiff's "reference to a single prior altercation between gangs . . . is not enough."); *Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 868 (11th Cir. 2020) (at summary judgment, *pro se* plaintiff failed to provide direct or circumstantial evidence that defendant was subjectively aware of a risk of harm in sending a plaintiff with canteen items to the yard); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (at summary judgment, claim of risk arising from failure to monitor a hallway failed because of limited number of assaults there); *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (at summary judgment, lack of

---

evidence is sufficient at summary judgment, it necessarily follows that allegations of the same clear the pleading hurdle.

evidence that a superintendent had knowledge of a substantial risk of harm facing student, or any policy that created risk, defeated claim).

**Defendants' subjective knowledge.** Plaintiff also pleads the Moving Defendants' subjective knowledge. A prison supervisor has subjective knowledge of a substantial risk of serious harm if he or she has knowledge of specific facts from which an inference of the risk could be drawn and draws that inference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Marsh*, 268 F.3d at 1029.

At the pleading stage, "knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b). Moreover, "'[w]hether a prison official had the requisite knowledge . . . is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Hale*, 50 F.3d at 1583 (quoting *Farmer,* 511 U.S. at 842). Thus, Plaintiff may allege such knowledge directly. *E.g.*, *Dickinson*, 833 F. App'x at 273 (sheriff received letter from advocates). Inferences of subjective knowledge may also be drawn from allegations of specific conditions "of a facility or its population rendering it particularly violent." *Id.* at 275, citing, e.g., *Hale*, 50 F.3d at 1583-84; *Marsh*, 268 F.3d at 1029. For example, in *Dickinson*, the plaintiff alleged analogous dangerous conditions such as the "failure to identify and segregate violent inmates" and other similar policies, which sufficed to raise an inference of knowledge. *Id.* at 275. Alternatively, a plaintiff may state this element when he

"alleges only a generalized risk," without pointing to specific conditions, so long as the plaintiff also alleges that "that serious inmate-on-inmate violence was the norm or something close to it.'" *Dickinson*, 833 F. App'x at 275.[3] "'[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). Finally, "[a] party that willfully blinds itself to a fact . . . can be charged with constructive knowledge." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1328 (11th Cir. 2007). When a substantial risk of serious harm has been alleged, "it does not matter whether the risk comes from a single source or multiple sources" nor "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Here, Plaintiff has alleged the Moving Defendants' direct knowledge of the substantial risk facing prisoners such as Mullins in myriad ways, including, for example, incident reports from the deluge of assaults; other reports, such as medical records and security audits; Defendants' own observations and communications; a class action lawsuit and initial settlement[4] of that lawsuit;

---

[3]     At summary judgment, evidence that a defendant knew that "violence was occurring on a regular basis" and "sometimes" required medical care, with expert testimony, suffices (*Hale*, 50 F.3d at 1583), and thus analogous allegations necessarily suffice at the pleading stage.

[4]     The action has since been reinstated and is pending before Judge Proctor. *Duke v. Dunn*, 4:14-cv-1952-RDP (N.D. Ala.).

individual lawsuits by prisoners; a DOJ investigation; and a letter from EJI warning about the dangerous conditions and necessity of immediate action. Doc. 40 at ¶¶85-169. Plaintiff also alleges dangerous conditions of which each Moving Defendant was aware (*id.* ¶¶170-71, 178-79, 189-98, 220-22, 225-34, 238-46, 264-67) and that violence was the norm or close to it (*id.* ¶¶85-169).

These allegations easily suffice to plead subjective knowledge. *Dickinson* held that a plaintiff stated a claim based on far less: allegations of "specific features of a facility or its population rendering it particularly violent" and that the sheriff received a letter from advocates "saying 'that the [j]ail conditions posed an immediate and serious threat to the safety of the inmates'" but "took 'no measures to improve conditions.'" *Dickinson*, 833 F. App'x at 273 (alterations omitted). *Dickinson*, and the authority it relies upon, thus dictate the result in this case.

Defendants' specific challenges omit most of Plaintiff's allegations and do not withstand scrutiny. Doc. 46 at 18. It is of no consequence that the class action complaint did not use the exact phrase "violence is the norm"; its analogous warnings about, for example, an "extreme level of serious life-endangering violence" (Doc. 40-1 ¶15) and "extremely high rate of prisoner-on-prisoner assaults and homicides and the dangerous conditions that facilitate the . . . violence" (*id.* at pg. 2) conveyed the same point, as did the content of the other lawsuits (Doc. 40 ¶163) and settlement of the class action (*id.* ¶¶152-56).

17

Defendants provide no authority permitting them to disregard Plaintiff's allegations of notice from lawsuits merely because those complaints did not take the form of facts adjudicated in court. Nor would such an argument be tenable, as such a requirement does not exist even at summary judgment. *E.g.*, *Dickinson*, 833 F. App'x at 273 (letter from advocates); *Valdes*, 450 F.3d at 1244 (prisoner complaints and use-of-force forms); *LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) (incident reports, internal and external reports); *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1149-50 (M.D. Ala. 2016) ("communications and reports"). Defendants also ignore that they were aware that the class action settled, with commitments to make changes that were not implemented. Doc. 40 ¶¶152-56.

As for the DOJ materials, the DOJ took the rare step of commencing an investigation into unconstitutional levels of violence in ADOC prisons housing men, including St. Clair, in 2016—long before Mullins's death. *Id.* ¶¶149-51. Defendants' insinuation that they lacked notice of the problems identified in the DOJ's subsequent letters and lawsuit impermissibly takes inferences in their favor. *See also Goebert*, 510 F.3d at 1328 ("A party that willfully blinds itself to a fact . . . can be charged with constructive knowledge."). If Defendants would like to present to the jury a theory that the high-ranking Defendants were unaware of the security crisis at St. Clair, or the hundreds of violent assaults occurring there, they will have every opportunity to do so. However, at the pleading stage, their defense

contradicts Plaintiff's complaint, which alleges in detail how Defendants learned of the security crisis and its underlying dangerous conditions. The proper vehicle for contesting Plaintiff's allegations is an answer; motions to dismiss require construction of Plaintiff's allegations as true. *Lamm*, 749 F.3d at 942.

Although not necessary to state a claim (*Farmer*, 511 U.S. at 843), Plaintiff also alleges that Jones learned of Mullins's reporting of sexual assault and knifepoint threats from Jackson through the PREA hotline[5] (Doc. 40 ¶68), and also knew that Mullins was particularly vulnerable (id. ¶55, 53, 48-51), and Jackson, particularly dangerous (id. ¶¶55, 53, 38-46).

**Unconstitutional conduct/causation.** Defendants do not mount any particularized challenge to Plaintiff's allegations of unconstitutional conduct and causation, nor meaningfully grapple with Plaintiff's allegations, let alone, as required, taking them as true and drawing inferences in Plaintiff's favor. *See* Doc. 46 at 19. Regardless, to allege supervisory liability, a plaintiff may plead either that the supervisor "personally participate[d]" in the unconstitutional conduct or that a "causal connection" exists between the supervisor's actions and the constitutional

---

[5]    Jones challenges whether she received notice through the hotline (Doc. 46 at 14 n.6), but her argument contradicts Plaintiff's allegations and fails to take inferences in Plaintiff's favor. *Lamm*, 749 F.3d at 942. If Jones would like to present a defense to the jury that even though she was St. Clair's warden, she was *not* notified when prisoners reported sexual assaults at her facility, she will be able to do so. That unlikely defense does not provide any basis for dismissal.

deprivation. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010). To allege the causal connection, a plaintiff may allege that: (1) a "history of widespread abuse" put the supervisor on notice of the need to correct the deprivation, and he or she failed to do so; (2) a supervisor's custom or policy resulted in deliberate indifference to constitutional rights; or (3) the supervisor . . . knew that subordinates would act unlawfully and failed to stop them from doing so. *Dickinson*, 833 Fed. App'x at 272; *Harper*, 592 F.3d at 1227.

Here, Plaintiff alleges that the supervisors took no action in the face of obvious and shocking levels of violence and repeated warnings, despite having the responsibility to address the violence there. *Supra* at 4-9. As outlined in detail above, these Defendants instead persisted in policies and customs that facilitated and promoted constitutional deprivations such as those experienced by Mullins. *Id.* The Eleventh Circuit has held that analogous allegations state a claim. *Dickinson*, 833 Fed. App'x at 272-75 (plaintiff stated a claim where he alleged that jail officials failed to properly protect him and other inmates from violence, staff the jail, and train and supervise officers); *Marsh*, 268 F.3d at 1029 (sufficient that jail sheriff allegedly did "nothing to alleviate the conditions . . . , despite repeated warnings and recommendations."); *Valdes*, 450 F.3d at 1244.

In addition, these high-ranking Defendants knew that their subordinates failed to properly monitor prisoners, intervene during assaults; conduct contraband

searches, and other egregious failures, but declined to address the misconduct, leading to Mullins's death. *Supra* at 7-9. These allegations likewise independently plead the causation element. *Dickinson*, 833 Fed. App'x at 272-75.

Contrary to the suggestion in Defendants' motion, Defendants cannot duck liability merely because they acted in parallel with other high-ranking officials. The number of supervisory defendants here reflects the depth of the institutional deliberate indifference to the horrific conditions at St. Clair, the pervasiveness of the policies and customs fueling the violence, and the fact that many different Defendants could have acted to prevent the killing of Mullins but chose not to. *See, e.g.*, *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000); *S.Y. v. Holiday Hospitality*, No. 2:20-CV-624-JES-MRM, 2021 WL 1751363, at *2 (M.D. Fla. May 4, 2021). Indeed, it is only because so many high-ranking leaders failed to act to protect St. Clair's vulnerable prisoners from sexual abuse and knifepoint stabbings that St. Clair's security crisis unfolded in the first place. Plaintiff has explained how each of the high-ranking defendants was responsible for addressing the security crisis. To the extent that any Moving Defendants contest their involvement in the alleged policies, customs, acts, and omissions in the timeframe leading up to Mullins's death, they will have ample opportunity to so assert that factual defense at summary judgment. Plaintiff's allegations of personal involvement suffice and no basis exists for dismissal.

**B.** **The Moving Defendants are not entitled to qualified immunity.**

Taking the facts as true and inferences in Plaintiff's favor, the pleaded misconduct stated a clear violation, and thus the Moving Defendants are not entitled to qualified immunity at this early stage. *See* Doc. 46 at 21-25. Correctional officials are not qualifiedly immune when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). When reviewing a motion to dismiss based on qualified immunity, the court is required to "accept as true the facts . . . and draw all reasonable inferences in the plaintiff's favor." *Id.* at 705; *see also Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

Plaintiff addressed the Moving Defendants' violations above (*supra* at 11-21), and thus addresses the "clearly established" prong here. "The 'salient question' is 'whether the state of the law' at the time of the official's conduct gave the official 'fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Dickinson*, 833 F. App'x at 273 (quoting *Hope*, 536 U.S. at 741). A plaintiff may show such fair warning in at least three independent ways:

> First, a plaintiff can 'show that a materially similar case has already been decided.' Second, a plaintiff can 'show that a broader, clearly established principle should control the novel facts' of a particular situation. Third, a plaintiff can show that [the] case 'fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.'

*Id.* at 273-74 (quoting *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019)).

Qualified immunity is typically addressed at summary judgment (*id.* at 271) and

may be granted at the pleading stage only if the allegations on their face show that

recovery is barred as a matter of law. *Marsh*, 268 F.3d at 1022-23. That rare

circumstance does not arise here.

**Materially similar cases.** Prison officials "are under an obligation to take

reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*,

468 U.S. 517, 526-27 (1984). This obligation is triggered when officials are aware

of a general risk of attack to prisoners regardless of whether they knew of a risk

from a specific attacker or to a specific prisoner. *Farmer*, 511 U.S. at 843. As the

Eleventh Circuit recognized in *Dickinson*, it was clearly established in January

2018 (long before Mullins's death), that supervisors violate the constitution where,

as here, they fail to correct inadequate monitoring of prisoners, contraband

weapons management, and classification and housing of prisoners, and those

deficiencies have resulted in an "ongoing problem with inmate-on-inmate abuse."

833 F. App'x at 272-73 (citing *Hale*, 50 F.3d at 1584-85; *Marsh*, 268 F.3d at

1034). *Dickinson* post-dates the conduct here, but its holding on the clarity of the

law in 2018 and discussion of *Hale* and *Marsh* compels a denial of immunity.

*Dickinson* relies on *Marsh*, in which the Eleventh Circuit held, sitting *en*

*banc*, that "it was clearly established in this Circuit [in 1996] that it is an

unreasonable response for an official to do nothing when confronted with prison

conditions that pose a risk of serious physical harm to inmates." 268 F.3d at 1034.

The conditions in *Marsh* included—as alleged here—contraband weapons

proliferation, a failure to discipline and segregate prisoners who had assaulted

other prisoners, inadequate supervision and monitoring of prisoners, and other

similar conditions. *Id.* at 1029. The *Marsh* plaintiffs did not allege "a history of

inmate assaults with serious injuries" (as Plaintiff here has alleged), but the Court

explained that "that factual variance cannot make a difference." *Id.* at 1034. *Hale*,

too, provided notice that—as alleged here—supervisors violate the constitution

when they fail to act in the face of substantial risks arising from, for example, the

failure to segregate dangerous prisoners, inadequate supervision and monitoring,

and regularly occurring fights. 50 F.3d at 1581-84; *see also Marsh*, 268 F.3d at

1033 n.12. By 2018, other authorities, too, had held that deliberate indifference to

an "excessive risk of inmate-on-inmate violence" violates the constitution.[6]

---

[6]     *E.g.*, *Lane v. Philbin*, 835 F.3d 1302, 1307-1308 (11th Cir. 2016)
(inadequate supervision of prisoners, failures to segregate particularly dangerous
prisoners, ready access to contraband weapons, and widespread violence gives rise
to a substantial risk of serious harm to which prison officials cannot
constitutionally respond with deliberate indifference); *LaMarca,* 995 F.2d at 1536-
38 (deliberate indifference in the face of inadequate supervision and monitoring of
prisoners with known histories of violence violates the constitution); *Williams v.
Edwards,* 547 F.2d 1206, 1211 (5th Cir. 1977) (citing *Gates v. Collier,* 501 F.2d
1291 (5th Cir. 1974)); *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. Jan. 29,
1981) (en banc) ("When prison officials have failed to control or separate prisoners
who endanger the physical safety of other prisoners and the level of violence has

Defendants' citation to the appellate decision in *Marbury*, 936 F.3d 1227, does not compel a different result. That decision post-dates the misconduct here and could not have informed their understanding of the established law at the time. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Nor does the district court decision in *Marbury* bear on whether the right in question was clearly established. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (the Court should look "only to binding precedent . . . to determine whether the right in question was clearly established at the time of the violation."). Regardless, as reinforced in *Dickinson* (833 Fed. App'x at 274-75), *Marbury* reaffirms that inaction by corrections officials in the face of a generalized risk of violence violates the constitution if the risk is sufficiently great, and holds merely that at summary judgment, evidence of only "occasional, isolated attacks," such as "2.5 stabbings per year" does not suffice. *Marbury* also reaffirms that "a generalized risk of violence from a prison population" can alone support a deliberate indifference claim if as here, a plaintiff can "point[] to specific features of a facility or its population rendering it particularly violent." 936 F.3d at 1235 & nn. 20-22.

Nor do Defendants' remaining citations overcome *Hale, Marsh*, and *Dickinson*, and their antecedents. *Supra* at 23-24 & n.6. *Harrison* merely held at summary judgment that a claim of risk arising from failure to monitor a hallway

_____

become so high . . . it constitutes cruel and unusual punishment . . . . ").

failed on evidentiary grounds because of limited number of assaults there. 746 F.3d
at 1300. And in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), unlike here, the
plaintiff did "not allege any affirmative custom or policy implemented by the
supervisory defendants that played a role in Cottone's death." *Id.* at 1362.
Plaintiff's allegations do not show that recovery is barred as a matter of law, as is
required for an immunity grant at this early stage. *Marsh*, 268 F.3d at 1022-23.

     **Broader principles.** Broader, clearly established principles also provided
the moving Defendants with fair notice of the unconstitutionality of their pleaded
conduct. Prison officials "are under an obligation to take reasonable measures to
guarantee the safety of the inmates," and "have a duty to protect prisoners from
violence at the hands of other prisoners." *Farmer*, 511 U.S. at 832-33 (quotation
omitted). This obligation is triggered when Defendants are aware of a general risk
of attack to prisoners regardless of whether they knew of a risk from a specific
attacker, or to a particular prisoner. *Id.* at 843. Having "stripped [prisoners] of
virtually every means of self-protection and foreclosed their access to outside aid,
the government and its officials are not free to let the state of nature take its
course." *Id.* at 833; *id.* at 834 ("Being violently assaulted in prison is simply not
part of the penalty that criminal offenders pay for their offenses against society.").
Defendants were thus on clear notice that "[a] prison official violates the Eighth
Amendment when a substantial risk of serious harm, which the official is

subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis removed). "This broad principle has put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do *nothing* to address it, they violate the Constitution." *Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1190 (11th Cir. 2020) (emphasis in original). Likewise, Defendants were on notice that a "total failure to investigate—or to take any other action to mitigate—[a] substantial risk of serious harm" to a prisoner violates the Constitution. *Caldwell*, 748 F.3d at 1103. No reasonable supervisor would have thought that it was constitutionally permissible to do nothing in the face of the horrific violence and conditions at St. Clair. *See supra* at 3-7, 12-13. Defendants are not entitled to immunity where they consistently failed to act reasonably despite knowing of, or being willfully blind to, a substantial risk of serious harm. *Farmer*, 511 U.S. at 833.

**Obvious violations.** Defendants are likewise not entitled to qualified immunity at the pleading stage because Plaintiff alleges conduct that violated the Constitution due to the "obvious cruelty inherent" in permitting Mullins to be housed under the "wantonly . . . dangerous situations" perpetrated and facilitated by Defendants. *See Taylor v. Riojas*, 141 S. Ct. 52, 52-54 (2020). Any reasonable official would have known that such conduct "was at war with the command of the

Eighth Amendment." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).[7]

## III.    Plaintiff states a failure-to-intervene claim against Jones (Count VIII).

Defendants also challenge whether Plaintiff states a failure-to-intervene claim against Jones. Doc. 46 at 20-21. To be liable on such a theory, a defendant need only have knowingly or recklessly declined to act despite knowing ways to reduce the risk of harm to the victim (*Johnson v. Boyd*, 701 Fed. App'x 841, 847 (11th Cir. 2017); *Rodriguez*, 508 F.3d at 616-17), and been "in a position to intervene," because she either directly observed or knew of the harm faced (*Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).

Plaintiff's allegations suffice. Jones knew that Mullins had been assaulted by

---

[7]    Defendants forfeited any qualified immunity defenses to Plaintiff's remaining claims by failing to raise them. *See* Doc. 46 at 24-25 (discussing only failure-to-protect caselaw). *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012); *Brooks v. Warden*, 706 F. App'x 965, 968 (11th Cir. 2017); *Cont'l Tech. Servs. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991). A generic discussion of the background law on qualified immunity is insufficient to raise the defense as to Plaintiff's other claims. *Hamilton*, 680 F.3d at 1319; *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007); *Logan v. City of Evanston*, No. 20 C 1323, 2020 WL 6020487, at *7-8 (N.D. Ill. Oct. 12, 2020); *Sherman v. Quest*, No. 18-60973-CIV, 2020 WL 6791100, at *7-8 (S.D. Fla. Nov. 19, 2020). Defendants should not be permitted to sandbag Plaintiff by asserting such defenses in their reply brief, unfairly depriving her of an opportunity to respond. The law is also clear that an officer who "fails or refuses to intervene" is liable, *Ensley*, 142 F.3d at 1407, if he knowingly or recklessly declined to act despite knowing ways to reduce the risk of harm to the victim, *Johnson*, 701 Fed. App'x at 847. Nor can Defendants disclaim fair notice that depriving a gravely-wounded prisoner of emergency medical care as he lays dying of stabbing wounds violates the Constitution. *See also infra* at 30.

Jackson multiple times and threatened at knifepoint, through the PREA hotline (*id.* ¶¶55-59, 68); that Mullins had a prior history of victimization in ADOC custody and was particularly vulnerable (*id.* ¶¶48-51, 53, 55); that he faced an acute risk from Jackson as a victim reporting sexual abuse (*id.* ¶¶253, 171, 101b, 121, 125, 140, 220); that Jackson was particularly dangerous, had a history of repeated assaults against prisoners, and was armed with a knife (*id.* ¶¶55, 38-46, 55-59, 68); and that the failure to house reporting victims safely apart from sexual assailants results in foreseeable violence (*id.* ¶¶253, 171), particularly in the context of the unsafe and unsupervised dangerous conditions at St. Clair (*e.g.*, *supra* at 3-7). Yet Jones failed to intervene to reasonably protect Mullins from retaliation, such as by confiscating Jackson's knife, housing Jackson in segregation, monitoring Jackson, or housing Mullins in protective custody or segregation, as requested, where he could not be accessed by Jackson (*id.* ¶¶54-70).

Plaintiff has thus ably alleged that Jones knowingly or recklessly declined to act reasonably despite knowing how to reduce the imminent risk to Mullins and being in a position to intervene. *See Johnson*, 701 Fed. App'x at 847; *Rodriguez*, 508 F.3d at 616-17; *Ensley*, 142 F.3d at 1407. Jones may not escape liability merely by claiming that she was not present at the exact time the foreseeable injuries to Mullins incurred. *Farmer*, 511 U.S. at 842 (claimant "need not show that a prison official acted or failed to act believing that harm actually would befall

an inmate, it is enough that the official acted or failed to act despite his knowledge

of a substantial risk of serious harm"); *Johnson*, 701 F. App'x at 847.

## IV.   Plaintiff states a denial of medical care claim (Count IV).

Plaintiff also states a denial of medical care claim against the Moving

Defendants other than Vincent. *See* Doc. 46 at 19-20. It is "well established that

'deliberate indifference to serious medical needs of prisoners'" violates the Eighth

Amendment. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Corrections staff have a duty to

facilitate access to emergency medical care when prisoners face life-threatening

conditions (*Farmer*, 511 U.S. 832; *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d

1176, 1187 & n.21 (11th Cir. 1994) (citing, e.g., *Cooper v. Dyke*, 814 F.2d 941,

945 (4th Cir. 1987)), and are liable when they deny or delay access to emergency

medical care for serious medical needs. *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d

1419, 1425 (11th Cir. 1997) (collecting authority); *see also Patel*, 969 F.3d at 1191

n.11; *Harris v. Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994). It is likewise well-

settled that supervisors may be held liable when their policies, customs, omissions,

and failure to adequately train and supervise subordinates caused constitutional

deprivations. *E.g.*, *Greason v. Kemp*, 891 F.2d 829, 836-37 (11th Cir. 1990);

*Harper*, 592 F.3d at 1236-37; *Dickinson*, 833 Fed. App'x at 272.

Here, Plaintiff alleges that the high-ranking Defendants were aware that a

lack of supervision and monitoring at St. Clair prevented the timely provision of medical care for serious medical needs, including for stabbings like that suffered by Mr. Mullins (Doc. 40 ¶¶ 205-219, 221-223); that serious and life-threatening assaults happened on a near-daily basis at St. Clair, necessitating emergency medical care (*id.* ¶¶85-140, 191); and that prisoners had been killed or severely harmed when correctional staff failed to facilitate timely access to emergency care (*e.g. id.* ¶¶216-19, 130b, 140). Nonetheless, these Defendants persisted in policies and customs that facilitated and promoted constitutional deprivations of emergency medical care, took no action in the face of a substantial risk of harm, and failed to correct their subordinates' conduct. *Id.* ¶¶205-23. As a result, Mullins was deprived of emergency medical care for his grave injuries and died. Doc. 40 ¶¶71-75, 82-83.

## V.     **Defendants are not entitled to state-agent immunity.**

Defendants seek an entitlement at the pleading stage to state-agent immunity from Plaintiff's wrongful death claims. *See* Doc. 46 at 26-28. Defendants concede that Plaintiff's pleading contains allegations that support an immunity exception (*id.* at 27), but impermissibly ask this Court to adjudicate their defense now.

Plaintiff's complaint is consistent with immunity exceptions, defeating Defendants' affirmative defense at the pleading stage. *See Hawkins v. City of Greenfield*, 101 F. Supp. 2d 1356, 1362 (M.D. Ala. 2000); *Mann v. Darden*, 630 F. Supp. 2d 1305 (M.D. Ala. 2009); *Ex parte Dangerfield*, 49 So. 3d 675, 682-83

(Ala. 2010). Two exceptions are applicable here: when "(1) the Constitution or laws of the United States . . . require otherwise;" or "(2) the State agent act[ed] willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). Plaintiff alleges violations of the federal Constitution, and thus an immunity exception is consistent with her allegations. *Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019); *Foster v. Maloney*, 785 F. App'x 810, 818-19 (11th Cir. 2019); *Hunter v. City of Leeds*, 941 F.3d 1265, 1284 (11th Cir. 2019).

Likewise, Plaintiff alleges that Defendants acted willfully, maliciously, fraudulently, and in bad faith, consistent with the second *Cranman* exception. Doc. 40 ¶¶351-56, 361-67. In federal court, mental states "may be alleged generally," Fed. R. Civ. P. 9(b). Even if specific allegations were required (which they are not), Plaintiff has detailed how Defendants knew that their dangerous conduct put prisoners in harm's way and yet took no action to reduce the risk—even as they received notice of the need for urgent action. Doc. 40 ¶¶140-69. Plaintiff's complaint also supports the defense that one who violates "clearly established law" has acted "beyond their authority." *Sheth v. Webster*, 145 F.3d 1231, 1239 (11th Cir. 1998); *Cantu v. City of Dothan*, 974 F.3d 1217, 1236 (11th Cir. 2020).

*Ex parte Gilland*, 274 So. 3d 976 (Ala. 2018), is inapposite. In that case—a "rare case . . . that would be properly disposed" at the pleading stage (*id.* at 985)—

32

the allegations indicated that the defendant "acted *conscientiously*" and "did everything in her power" (*id.* at 983, 985), and thus supported an entitlement to immunity (*id.*), rather than, as here, supporting an immunity defense. Nor does Plaintiff's complaint suffer from the infirmity addressed in *Shook v. Dunn*, 2:18CV1048-MHT, 2020 WL 1492841 (M.D. Ala. Mar. 25, 2020), in which policy and custom allegations were deemed conclusory because they were merely listed. *Id.* at *7. Review of the pertinent paragraph in *Shook* confirms its reasoning does not apply. *Shook*, Case No. 2:18-cv-1048-MHT (M.D. Ala.), Dkt. 36, ¶86.

Defendants also raise a single-sentence argument that Plaintiff fails to allege a qualifying "wrongful act, omission, or negligence," without discussion of Plaintiff's allegations or any authority other than a generic listing of the claim's elements. Doc. 46 at 28. This argument is so conclusory as to have been forfeited. *Hamilton*, 680 F.3d at 1319; *U.S. Steel Corp.*, 495 F.3d at 1287 n.13. Regardless, Plaintiff has alleged that each of the high-ranking Moving Defendants is liable for instituting dangerous policies and customs and failing to act to stem the tide of violence. *See* Doc. 40 ¶¶348-57; *see also supra* at 4-9.

## VI.   Plaintiff's complaint does not merit dismissal as a shotgun pleading.

Defendants characterize Plaintiff's complaint as a shotgun pleading. Doc. 46 at 7-10. Yet none of the four shotgun pleading deficiencies exists here. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Also, a

complaint should be dismissed for such deficiencies only if "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325. Plaintiff's complaint does not qualify for dismissal.

As Defendants concede (Doc. 46 at 7 n.5), Plaintiff's complaint does not commit the first or third errors identified in *Weiland*. Thus, Plaintiff has corrected his initial error and "[t]he allegations of each count are not rolled into every successive count on down the line." *Downing v. Midland Funding, LLC*, No. 2:15-CV-00737-RDP, 2016 WL 125861, at *3 (N.D. Ala. Jan. 12, 2016) (quoting *Weiland*, 792 F.3d at 1324). Nor does Plaintiff's complaint fail to "separate[] into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323.

With respect to the second *Weiland* error, Defendants fail to identify any "conclusory, vague, and immaterial facts," let alone establish that the complaint is "replete" with such facts, as is required for dismissal. 792 F.3d at 1321-23.

Nor, finally, has Plaintiff committed the fourth *Weiland* error by "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1324. Plaintiff specifies the basis for liability against each of the Defendants, giving them "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also supra* at 4-9; Doc. 48-1 at 3-12. For example, in Count I, Plaintiff asserts an Eighth

34

Amendment claim against an identified set of supervisory defendants for failing to protect him from assault. Doc. 40 ¶¶271-281. Plaintiff specifies the policies and customs for which each named defendant is liable. *Id.* ¶¶273-281. Plaintiff identifies the pertinent paragraphs in which, in an organized manner, she has alleged the substantial risk of serious harm facing Mullins (*id.* ¶¶275, 85-139); Defendants' subjective knowledge and failure to act to protect Mullins (*id.* ¶¶140-69); and each Defendant's policies and customs (*id.* ¶¶170-269), all demarcated by clear subheadings. Plaintiff sets out each Defendant's individual roles and responsibilities to address the security crisis at St. Clair (*id.* ¶¶24-37). Plaintiff has also complied with Rule 10(b), providing separate claims when both "founded upon a separate transaction or occurrence" and "separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b). Finally, Plaintiff has complied with the requirement of a "short and plain statement," Fed. R. Civ. P. 8(a)(2), and endeavored to avoid undue repetition. *Martinez v. City of Birmingham*, 2:18-cv-0465-JEO, 2018 WL 5013861, *3 (N.D. Ala. Oct. 16, 2018) (improper pleading was "unduly repetitive" and "vast majority" of the counts consisted of "repeating identical allegations, albeit changing a word here or there"). Plaintiff's detailed allegations against the Defendants (*supra* at 4-9; Doc. 48-1 at 3-12), and Defendants' motion to dismiss (*e.g.*, Doc. 46 at 6-7, 14-15, 20-21) also reflect that her complaint gives fair notice of her claims.

Defendants' contrary argument boils down to a gripe that Plaintiff accuses certain identified Defendants of perpetrating the same identified policies and procedures and failing to act in the face of unconscionable conditions known to them. Yet, as set forth above, Defendants cannot evade liability merely because of their parallel policies and customs and omissions, nor is a complaint that accuses multiple defendants of perpetrating the same policies, customs, and omissions impermissible. *Supra* at 21; *Kyle K.*, 208 F.3d at 944; *S.Y.*, 2021 WL 1751363, at *2. Rather, a complaint that "assert[s] multiple claims against multiple defendants" constitutes an impermissible pleading only if it fails to specify "which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021), neither of which has occurred here. Defendants are well-positioned to admit or deny that they perpetrated the alleged policies and customs or engaged in the alleged acts and omissions, and they fail to identify any further information they would need to respond to Plaintiff's complaint.

Nor does the efficiency pursuant to which Plaintiff periodically refers to groups of defendants by defined group names, rather than listing out their names, violate any shotgun pleading rules. *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1236 (N.D. Ala. 2019). Defendants "implicitly recognize" the efficiency in doing so, "as they also do not individually list each

36

entity and each individual in their motions to dismiss." *Id.* Indeed, when it serves

their own interests, Defendants have no problem understanding collective

allegations or referring to themselves collectively. *E.g.*, Doc. 46 at 23 (relying on

Plaintiff's collective scope of employment allegation); *id.* (referring throughout

memorandum to "ADOC Officials"). Nor has Plaintiff failed to allege each

Defendant's knowledge of the obvious risk of harm facing Mullins at St. Clair,

even if facts underlying his allegations of knowledge were required (which they

are not). Fed. R. Civ. P. 9(b); *see also, e.g.*, Doc. 40 at ¶¶140-69, 85-139, 187-94.

In the event the Court finds any aspect of Plaintiff's amendment deficient,

Plaintiff is prepared to promptly submit another amendment to address any

lingering deficiencies. Plaintiff thus respectfully asks that any dismissal be without

prejudice and with leave to amend pursuant to Rule 15(a)(2), which favors

resolutions of cases on the merits. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th

Cir. 2001). As Defendants do not contest (Doc. 46 at 10), no substantial reason

exists here to deny leave, as is required. *Rivas v. Bank of New York Mellon*, 676 F.

App'x 926, 931 (11th Cir. 2017). Plaintiff's prior amendment was submitted in

good faith and made meaningful changes, and Plaintiff is prepared to revise her

complaint and provide additional information if needed.

WHEREFORE, Plaintiff respectfully requests that Defendants' motion to

dismiss be denied.

Respectfully submitted,

**CAROL GUY**

BY: /s/ Ruth Brown
   *Counsel of Record*

BY: /s/ Anil Mujumdar
   *Local Counsel*

*Ruth Z. Brown (pro hac vice) (IL No. 6299187)
Megan Pierce (pro hac vice) (CA No. 314044)
Attorneys for Plaintiff
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
Telephone: 312s-243-5900
Fax: 312-243-5902
Email: ruth@loevy.com, megan@loevy.com
*Counsel of Record

Anil A. Mujumdar (ASB-2004-L65M)
Dagney Johnson Law Group
2170 Highland Avenue, Suite 250
Birmingham, Alabama 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com
* Local Counsel

## **CERTIFICATE OF SERVICE**

    I, Ruth Brown, hereby certify that on June 1, 2021, I caused the foregoing Response to Motion to Dismiss to be filed using the Court's CM/DOC. system, causing it to be filed on counsel for all Defendants.

                       /s/ Ruth Brown
                       *One of Plaintiff's Attorneys*