

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| CAROL GUY, as representative of the ESTATE OF STEVEN MULLINS | ) ) | Honorable Judge Annemarie Carney Axon |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 4:21-cv-00264-ACA |
| | ) ) | |
| JEFFERSON DUNN, et al., | ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Carol Guy respectfully submits the following supplemental authority in support of her response (Dkts. 48-1 and 50-1) to Defendants' Motions to Dismiss (Dkts. 42 and 45): Order of June 1, 2022, in *D.S. v Jefferson Dunn, et al.,* No. 2:20-cv-02012-RDP (N.D. Ala.), Dkt. 159 (attached herein as Exhibit A).

WHEREFORE, Plaintiff respectfully submits the above-cited decision for the Court's consideration in connection with her response to Defendants' Motions to Dismiss.

Respectfully submitted,

**CAROL GUY**

BY: /s/ Ruth Brown
      *Counsel of Record*

BY: /s/ Anil Mujumdar
      *Local Counsel*

*Ruth Z. Brown (pro hac vice)
Megan Pierce (pro hac vice)
Quinn Rallins (pro hac vice)
Attorneys for Plaintiff
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
Telephone: 312-243-5900
Fax: 312-243-5902
Email: ruth@loevy.com, megan@loevy.com, rallins@loevy.com
*Counsel of Record

Anil A. Mujumdar (ASB-2004-L65M)
Dagney Johnson Law Group
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com

## CERTIFICATE OF SERVICE

I, Ruth Brown, hereby certify that on June 14, 2022, I caused the foregoing Notice of

Supplemental Authority to be filed using the Court's CM/ECF system, which effected service on

all counsel of record.

/s/ Ruth Brown
*One of Plaintiff's Attorneys*

FILED
2022 Jun-01  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| D.S., | } | |
| | } | |
|    Plaintiff, | } | |
| | } | |
| v. | } | **Case No.: 2:20-CV-2012-RDP** |
| | } | |
| JEFFERSON DUNN, et al., | } | |
| | } | |
|    Defendants. | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendants' Motions to Dismiss. (Docs. # 139, 141). The Motions have been fully briefed (Docs. # 140, 142, 148, 152, 153) and are ripe for review. After careful review, the court concludes Defendants' Motions (Docs. ## 139, 141) are due to be granted in part and denied in part.

### I.   Factual Allegations in Plaintiff's Third Amended Complaint

In his Third Amended Complaint, Plaintiff D.S. has named twenty-one Defendants in their individual capacities. (Doc. # 134 at ¶ 12). The Defendants can be grouped into three categories: "[1] the 'Defendant ADOC Supervisors,' [2] the 'Defendant St. Clair Facility Supervisors,' and [3] additional defendants." (*Id.* at ¶ 15). Plaintiff makes the following allegations of fact in his Third Amended Complaint.

Plaintiff has been repeatedly and brutally assaulted at three different prisons while in ADOC custody. (*Id.* at ¶¶ 5, 43-51, 78-85). Nevertheless, Plaintiff's claims focus on a January 2019 assault at St. Clair Correctional Facility during which he was tied up, stabbed, beaten, and raped. (*Id* at ¶¶ 4-7). Plaintiff alleges that dangerous conditions at St. Clair were well known to Defendants. (*Id.* at ¶ 5).

**Exhibit A**

In February 2018, while incarcerated at the Holman Correctional Facility, Plaintiff was stabbed over 20 times by a group of prisoners who possessed contraband weapons. (*Id.* at ¶ 43). Some or all of the individuals responsible for the Holman attack were identified to Defendants and ADOC staff by Plaintiff and/or through ADOC's own investigation. (*Id.*). Several months later, Plaintiff was transferred to Donaldson Correctional Facility. (*Id.* at ¶ 44). One or more individuals involved in the attack at Holman were also transferred to Donaldson. (*Id.* at ¶ 46). Despite knowledge that one or more of the inmates who had previously attacked Plaintiff at Holman were now also incarcerated at Donaldson, Lisa Bonner, a classification supervisor at Donaldson, moved Plaintiff into general population. (*Id.* at ¶ 48-49). One of the people who carried out the attack on Plaintiff at Holman attacked him again at Donaldson. (*Id.* at ¶ 50). Because of the risks posed by his "enemies,"[1] Plaintiff was then transferred to St. Clair Correctional Facility. (*Id.* at ¶ 52). Defendant Bonner signed off on Plaintiff's transfer to St. Clair and the reason for it, which are identified on his transfer paperwork. (*Id.* at ¶ 53).

Plaintiff was initially placed in segregation at St. Clair. (*Id.* at ¶ 54). While in segregation, Plaintiff spoke with Defendants Malone, White, Jones, Brooks, McMillian, Estelle and Boyd and informed them that he had enemies at St. Clair and identified at least one of those enemies. (*Id.* at ¶ 56). Plaintiff also provided this information to Defendant Estelle in writing. (*Id.*). Defendants Malone, White, Jones, Brooks, Estelle, Gordy, Ragsdale, Givens, Boyd, McMillian, and Ary were also made aware, through documents in Plaintiff's file and first-person reports, that Plaintiff had enemies at St. Clair and the identity of at least one of those enemies. (*Id.* at ¶ 58).

Plaintiff pleads alternative theories related to his classification. First, he claims his classification officer and classification supervisor, Defendants Ary and Estelle respectively,

---

[1] By his use of the term "enemies" in the Third Amended Complaint, Plaintiff appears to indicate inmates involved in prior attacks against him. (*See, e.g.,* Doc. 134 at ¶ 3 "known enemies from the Holman stabbing.").

**Exhibit A**

received reports regarding the prior assaults and the perpetrators for the purpose of classifying him and assigning him to housing at St. Clair. (*Id.* at ¶ 59). Alternatively, he contends Defendant Bonner failed to include information about the prior assaults and the perpetrators in her classification documents, but should have done so in order to notify St. Clair staff of the risks Plaintiff faced. (*Id.* at ¶ 61). Moreover, Plaintiff was classified as a Prison Rape Elimination Act ("PREA") victim prior to his assault at St. Clair, and asserts that classification was sufficient to put Defendants Jones, Givens, Estelle, Gordy, Ragsdale, Ary, and others on notice that he should be housed separately from those prisoners likely to commit sexual violence against him. (*Id.* at ¶ 62). Nonetheless, he alleges Defendants Estelle, Ary, Jones, Givens, Ragsdale, Brooks, Malone, White, McMillian, Boyd, and Gordy caused Plaintiff to be moved out of segregation and into the general population at St. Clair. (*Id.* at ¶ 64).

Following his release into the general population at St. Clair, Plaintiff began to receive threats and was told someone had put out an order to stab him. Plaintiff immediately informed Defendant White of these threats. (*Id.* at ¶¶ 68-69). White told Plaintiff not to worry about it. (*Id.* at ¶ 70). The combination of the prevalence of contraband weapons and the free and unhindered movement of prisoners throughout the at St. Clair facility resulted in assaults and sexual violence being commonplace in the P/Q blocks, where Plaintiff was housed. (*Id.* at ¶ 75). On or about January 29, 2019, a group of prisoners came unhindered into Plaintiff's cell in the P block, tied him up, beat him, stabbed him, and raped him. (*Id.* at ¶ 82). Defendants McLemore and McMillian walked by Plaintiff's cell during the assault, saw that he was being assaulted, but did nothing to intervene. (*Id.* at ¶ 84). Plaintiff further contends that the assailants who attacked him at St. Clair had a history of violence that was known to Defendants Jones, Estelle, Givens, and Brooks through their experience at St. Clair. (*Id.* at ¶ 65).

3

**Exhibit A**

After the assault, Plaintiff told Defendant White about the attack, but White took no action and ordered Plaintiff to go back to the dorms. (*Id.* at ¶ 87). Plaintiff went to the infirmary, and was then sent to the segregation unit. (*Id.* at ¶¶ 88-90).

Well before the assault on him in January 2019, Plaintiff alleges that Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Vicente, Gordy, Ragsdale, Estelle, Ary, McMillian, Boyd, and McLemore were all on notice of a security crisis at St. Clair. (*Id.* at ¶ 98). He contends that prison beatings, stabbings, and rapes were endemic, violence and terror reigned, and the threat of assault was constant, particularly in the P/Q blocks. (*Id.*). In the year before the attack on Plaintiff, at least four men were killed in the P/Q blocks at St. Clair.[2] (*Id.* at ¶ 100). The number of *reported* assaults at St. Clair grew substantially in the eight years leading up to Plaintiff's assault, with a high mark in 2016. (*Id.*). In particular, the number of reported assaults in each of those years were: 23 in fiscal year 2010; to 59 in fiscal year 2011; to 78 in fiscal year 2012; 101 in fiscal year 2013; 127 in fiscal year 2014; 157 in fiscal year 2015; 249 in fiscal year 2016; 132 in fiscal year 2017; and 163 in fiscal year 2018. (*Id.* at ¶ 103). Many assaults went unreported. (*Id.*).

Plaintiff has made specific factual allegations regarding numerous assaults occurring at St. Clair in 2017. He asserts there was at least one assault per month from January 2017 through December 2017. (*Id.* at ¶¶ 106-123). For example, in November 2017, a prisoner was held hostage and sexually assaulted over three days by four prisoners in Q block. (*Id.* at ¶ 120). Also in November 2017, a prisoner who was being escorted by two correctional officers was stabbed and

---

[2] Terrence Andrews (killed in December 2018), Rogarius Bray (killed in September 2018); Terry Pettiway (killed in September 2018), and Travis Wilson (killed in February 2018)

**Exhibit A**

the assailant was allowed to escape without recovery of the knife. (*Id.* at ¶ 121(b)). Plaintiff has also alleged factual details regarding many other such assaults in 2017. (*Id.* at ¶¶ 106-123).

Plaintiff has also made specific factual allegations about numerous assaults occurring at St. Clair in 2018. He asserts there were an average of five assaults per month from January 2018 through December 2018. (*Id.* at ¶¶ 124-149). These incidents include a six-month-long ordeal, starting in January 2018 and lasting through June 2018, during which a prisoner was repeatedly raped by a group of individuals who said he owed them a debt. The rapes occurred on a near daily basis, and officers allegedly were aware of the situation but did nothing to intervene. (*Id.* at ¶ 126).

During another incident in May 2018, a prisoner was held hostage by four other prisoners who sexually assaulted him over two days. During the two days, officers did not enter the cell and simply asked how many men were inside when they conducted counts. The victim did not press charges after an investigator told him reporting would put his life in danger and promised that he would be transferred if he did not report. (*Id.* at ¶ 133). Plaintiff alleged factual details regarding many other such assaults in 2018. (*Id.* at ¶¶ 124-149).

Plaintiff contends Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Vicente, Gordy, Ragsdale, Estelle, Ary, McMillian, Boyd, and McLemore had knowledge of the substantial risk of serious harm facing prisoners at St. Clair --particularly, in the P/Q blocks -- based on incident reports regarding the chronic, specifically-enumerated assaults, reports by the ADOC Investigations & Intelligence division, duty officer reports, disciplinary records, medical records, annual and monthly ADOC data reports, prisoner progress reports, direct observation, internal communications, and/or prisoner lawsuits. (*Id.* at ¶ 150).

**Exhibit A**

Plaintiff has also plausibly alleged Defendants' knowledge of the substantial risk of harm to inmates at St. Clair, including that the ADOC's publicly available reports from the time period leading up to the assault on Plaintiff at St. Clair reflected that injuries, deaths, and fighting were a systemic problem at St. Clair. (*Id.* at ¶ 151).

For example, in October 2014, following a number of violent attacks and murders at St. Clair, the Equal Justice Initiative ("EJI") filed a class action lawsuit on behalf of St. Clair prisoners seeking injunctive relief to reduce the violence at St. Clair. *See Duke, et al, v. Dunn, et al.*, N.D. Ala. Case No. 4:14-cv-01952-RDP. The *Duke* Complaint described the policies and practices fueling the outbreak of violence at St. Clair, including inadequate supervision and monitoring of the facility, failure to address the widespread proliferation of contraband weapons at the facility, creation of a dangerous culture of violence and abuse, and failure to respond appropriately to incidents of violence and rape. (*Id.* at ¶ 155). Plaintiff contends Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, and Malone were all either directly named as Defendants, or substituted as Defendants, in the *Duke* litigation, and Defendants White, Graham, Vincent, Gordy, Ragsdale, and Estelle were aware both of the litigation and the deficiencies and practices identified therein. (*Id.* at ¶ 155).

In October 2016, the United States Department of Justice ("DOJ") opened an investigation into whether the conditions in Alabama's prisons for men, including St. Clair, violated the Eighth Amendment of the U.S. Constitution. (*Id.* at ¶ 159). The DOJ investigation related to whether (1) ADOC adequately protects prisoners from physical harm and sexual abuse at the hands of other prisoners and (2) provides prisoners with safe living conditions at prisons including St. Clair. (*Id.* at ¶ 159). Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks,

**Exhibit A**

Sanders, Malone, White, Graham, Vincent, Gordy, Ragsdale, and Estelle received notice of the DOJ investigation. (*Id.* at ¶ 160).

The *Duke* case settled in November 2017, with the ADOC agreeing to implement certain policies and actions designed to, among other things, prevent, track, and respond to violent incidents. (*Id.* at ¶ 162). In June 2018, EJI communicated to Defendant ADOC Supervisors, including Defendant Dunn, that ADOC had failed to implement the necessary reforms and comply with the settlement agreement. (*Id.* at ¶ 165). The *Duke* case was reopened in January 2021 due to the purported failure to take meaningful corrective actions to reduce the substantial risk of serious harm facing prisoners at St. Clair. (*Id.* at ¶ 164). At the time of the alleged assault on Plaintiff in January 2019, and despite the agreements reached in order to settle the *Duke* case, Plaintiff contends that the majority (if not all) of the allegedly unconstitutional policies and practices identified in the *Duke* complaint continued unabated at St. Clair. (*Id.* at ¶ 166).

In a letter dated September 6, 2018, just four months before Plaintiff's January 2019 assault, EJI notified Defendant Dunn of a "concerning increase in serious incidents of violence" at St. Clair. (*Id.* at ¶ 167). EJI specifically noted in its letter the dangers of St. Clair's "'hot bay' dorm management policy[, which places] individuals with behavior problems together in a single housing unit in general population [as well as a] lack [of] programming opportunities and any regular security staff presence" and further noted that "the last two homicides [] are a manifestation of the safety problems this kind of management technique creates." (*Id.* at ¶ 168). EJI also warned that "weapons contraband continues to saturate the prison and continues to contribute to serious incidents of violence at St. Clair," and that "contraband searches continue to be sporadic and ineffectual." (*Id.* at ¶ 169). EJI pointed to the specific steps experts recommended to eliminate contraband at the facility. (*Id.* at ¶ 170). The contents of EJI's letter were shared with ADOC

**Exhibit A**

Supervisors Dunn, Culliver, Williams, Daniels, Ellington, and Vincent, and Defendant Jones, yet they took no meaningful corrective action. (*Id.* at ¶ 172).

Defendants Dunn, Sanders, Malone, Gordy, Ary, and Estelle were each deposed in cases filed by prisoners alleging rapes and assaults at St. Clair resulting from the systematic failure to protect prisoners from prisoner-on-prisoner beatings, stabbings, and sexual violence. (*Id.* at ¶ 174).

Plaintiff contends that despite having knowledge of the systemic violence at St. Clair, the Defendant ADOC Supervisors and the Defendant St. Clair Facility Supervisors -- Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Vincent, Gordy, Ragsdale, and Estelle -- failed to take meaningful corrective actions to reduce the substantial risk of serious harm. (*Id.* at ¶¶ 151, 180).

Many of the prisoners housed in the P/Q blocks at St. Clair had disciplinary problems and histories of violence while in ADOC custody, and contraband weapons were commonplace. (*Id.* at ¶¶ 183, 184). Yet, prisoners were permitted to roam freely throughout the prison. (*Id.* at ¶ 186). Most of the time, a single cube officer, who generally did not leave the cubicle, was the only officer monitoring the entire P/Q block. (*Id.* at ¶¶ 188, 189). Plaintiff further asserts that oftentimes, the cube officers had not received basic correctional officer training, or were absent, asleep, on the telephone, or otherwise not paying attention to the prisoners they were charged with monitoring. (*Id.* at ¶¶ 190, 191). Security staff at St. Clair often watched violent or troubling incidents unfold without intervening. (*Id.* at ¶¶ 194, 113, 121, 123, 126, 138, 140). Moreover, the surveillance cameras had blind spots and there were no emergency call buttons in the cells. (*Id.* at ¶¶ 195-197). Despite these deficiencies, Plaintiff alleges that Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Vincent, Gordy, Ragsdale, and Estelle failed to improve supervision and monitoring in the P/Q blocks. (*Id.* at ¶ 202).

**Exhibit A**

By the time of Plaintiff's assault at St. Clair, he contends it was a matter of common knowledge among St. Clair staff that the prisoner population at St. Clair was heavily armed. (*Id.* at ¶ 209). Defendant Culliver has admitted that the contraband search protocols at St. Clair were inadequate. (*Id.* at ¶ 220). Plaintiff had been specifically identified as a likely PREA victim prior to his assault at St. Clair because of his history of victimization, yet he was placed in the general population, in a poorly-supervised housing block at St. Clair. (*Id.* at ¶¶ 229-230).

EJI's *Duke* Complaint put Defendants' Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Vincent, Gordy, Ragsdale, and Estelle on notice of the existence of the culture of abuse created by St. Clair's lack of security and the resulting risks to prisoners, as well as the inadequacies of the existing policies and practices to prevent violence. (*Id.* at ¶¶ 155-156). Defendant ADOC Supervisors and Defendant St. Clair Facility Supervisors fostered the culture of violence at St. Clair by failing to provide an established grievance system, failing to properly investigate and discipline acts of violence, discouraging victims from reporting incidents of violence, and retaliating against prisoners who reported violence. (*Id.* at ¶¶ 233-254).

In addition to prisoner-on-prisoner violence, Plaintiff alleges that Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, McMillian, and McLemore also fueled a culture of abuse at St. Clair by tolerating and condoning excessive uses of force by staff members, and in the case of Defendants Malone, McMillian, and McLemore, engaging in excessive force and abusive tactics themselves. (*Id.* at ¶ 272). More specifically, Plaintiff has alleged that Defendant Malone was present in March 2017 when Officer Howard and other officers assaulted a prisoner with severe mental health needs, and Defendant Malone directed officers to spray an asthmatic prisoner with a large volume of mace and left him

**Exhibit A**

in his cell afterward for an hour. (*Id.* at ¶ 274a and b). In December 2017, Defendants McMillian and McLemore punched a handcuffed prisoner (who had requested to be taken to a suicide cell) in the face, head and body multiple times. (*Id.* at ¶ 274f). Plaintiff has also alleged a series of other assaults by correctional officers against inmates. (*Id.* at ¶ 274a-p). Plaintiff alleges that personal observation, internal communications, use-of-force reports, incident reports, duty officer reports, medical reports, and external sources such as the *Duke* Complaint put Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, McMillian, and McLemore on notice of the culture of abuse of prisoners by correctional officers. (*Id.* at ¶ 275).

## II.   Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he

**Exhibit A**

plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### III.   Analysis

Although Plaintiff's previous Complaints addressed the assaults he suffered at three separate Alabama prisons (Holman, Donaldson, and St. Clair), his Third Amended Complaint focuses almost exclusively on the beating, stabbing, and rape that occurred in January 2019 at St. Clair Correctional Facility. (Doc. # 148 at 8). Plaintiff's Third Amended Complaint contains thirteen claims against various combinations of defendants:

> 1.   Count I is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to prisoners pursuant to 42 U.S.C § 1983 against Defendants Dunn, Culliver, Daniels, Williams, and Ellington;

**Exhibit A**

2.      Count II is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to prisoners pursuant to 42 U.S.C § 1983 against Defendants Jones, Givens, Brooks, Sanders, Malone, White, Graham;

3.      Count III is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to D.S.'s individualized risks pursuant to 42 U.S.C § 1983 against Defendants Jones, Givens, Brooks, Malone and White;

4.      Count IV is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to D.S.'s individualized risks pursuant to 42 U.S.C § 1983 against Defendants Vincent, Gordy, and Ragsdale;

5.      Count V is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to D.S.'s individualized risks pursuant to 42 U.S.C § 1983 against Gordy and Ragsdale;

6.      Count VI is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to prisoners pursuant to 42 U.S.C § 1983 against Defendant Estelle;

7.      Count VII is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to D.S.'s individualized risks pursuant to 42 U.S.C § 1983 against Defendants Estelle, Ary, and Bonner;

8.      Count VIII is an Eighth Amendment Failure to Protect Claim based on deliberate indifference to D.S.'s individualized risks pursuant to 42 U.S.C § 1983 against Defendants McMillian, Boyd, and McLemore;

9.      Count IX is retaliation claim under the First, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C § 1983 against Defendants Estelle, Ary, and Gordy;

10.     Count X is a civil conspiracy claim against all St. Clair defendants;

11.     Count XI is a failure to intervene claim pursuant to 42 U.S.C § 1983 against Defendants McLemore, McMillian, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Dunn, Culliver, Daniels, Williams, and Ellington; and

12.     Count XII is a state law intentional infliction of emotional distress claim against all Defendants;

13.     Count XIII us a state law negligence claim against all Defendants.

(Doc. # 134).

In response to Defendants' Motions, Plaintiff has conceded that his conspiracy claim

(Count X) must be dismissed pursuant to the intra-corporate conspiracy doctrine. (Doc. # 148 at

9, n.1 (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010)). Plaintiff has also

**Exhibit A**

indicated his desire to voluntarily withdraw his failure to intervene claim (Count XI) and dismiss that claim without prejudice. (*Id.*).

The court begins by addressing Plaintiff's § 1983 claims. The court concludes that Plaintiff has plausibly alleged failure to protect and retaliation claims. In addition, the court examines Defendants' assertions of qualified immunity and explains why a ruling on that defense at this juncture of the case would be premature. Finally, the court assesses Plaintiff's state law claims, and concludes that he has plausibly alleged those claims and that Defendants are not entitled to state-agent immunity at this stage of litigation.

### A.      Eighth Amendment Failure to Protect Claims Under Section 1983

"Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)); *see also Dickinson v. Cochran*, 833 F. App'x 268, 271 (11th Cir. 2020) (same).. "[A] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment [only] if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations and quotations omitted). To properly allege deliberate indifference to prisoner on prisoner violence, a plaintiff must allege "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331–32 (11th Cir. 2013) (quotations omitted).

A Section 1983 plaintiff must meet an "extremely rigorous" standard in order to plead a claim against supervisors in their individual capacities. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Supervisors are not responsible for unconstitutional acts by their subordinates on the basis

**Exhibit A**

of *respondeat superior* liability or vicarious liability. *Id.* Rather, supervisors may only be held liable in their individual capacities if they personally participated in unconstitutional conduct or "when there is a causal connection" between their actions (or inactions) and an alleged constitutional deprivation. *Id.* "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation and ellipsis omitted).

### (i)    Claims Based on the History of Widespread Violence at St. Clair

In Counts I, II and VI, Plaintiff asserts Eighth Amendment failure to protect claims based on deliberate indifference to the generalized risk to prisoners at St. Clair. Plaintiff has named Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, and Estelle as defendants with respect to those claims.

Plaintiff has plausibly alleged that there is a history of exceptionally widespread prisoner on prisoner violence at St. Clair. (*Id.* at ¶¶ 106-149). He has also plausibly alleged that the prisoner population at St. Clair was heavily armed and that that the contraband search protocols at St. Clair were inadequate. (*Id.* at ¶ 209). And, Plaintiff has plausibly alleged that all Defendants had knowledge of the substantial risk of serious harm facing prisoners at St. Clair based on incident reports regarding the chronic, specifically-enumerated assaults, reports by the ADOC Investigations & Intelligence division, duty officer reports, disciplinary records, medical records, annual and monthly ADOC data reports, prisoner progress reports, direct observation, internal communications, and/or prisoner lawsuits. (*Id.* at ¶ 150). Moreover, Plaintiff has plausibly alleged that he had been specifically identified as a likely PREA victim prior upon his transfer to St. Clair,

**Exhibit A**

but he was placed in the general population and in a poorly supervised, dangerous housing block at St. Clair. (*Id.* at ¶¶ 229-230). Finally, Plaintiff has similarly plausibly alleged that Defendants failed to take sufficient action to correct the knowingly dangerous situation or fulfill agreed-upon obligations to improve prison conditions related to the *Duke* settlement, establish a grievance system, properly investigate and discipline acts of violence. There are also plausible allegations that Defendants discouraged victims from reporting incidents of violence, and retaliated against prisoners who reported violence. (*Id.* at ¶¶ 233-254).

When confronted with well-pleaded factual allegations, "at the Rule 12 stage, the court must assume that Defendants knew about all the pre-attack incidents and statistics that [Plaintiff] pleads and thus Defendants knew or should have known that 'St. Clair was a place where inmate-on-inmate murders were the norm, rather than isolated occurrences.'" *Huffman v. Dunn*, 2021 WL 2533024, at *7 (N.D. Ala. June 21, 2021). The *Huffman* case addressed the same prison examined here, St. Clair. Plaintiff has plausibly alleged that St. Clair was a place where "'serious inmate-on-inmate violence was the norm or something close to it.'" *Marbury*, 936 F.3d at 1234 (quoting *Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (in turn quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973))); *see also Harrison*, 746 F.3d at 1299. As the *Dickinson* court explained,

> *Marbury* says that if the only evidence of deliberate indifference to inmate-on-inmate abuse is that jail officials knew about a generalized risk of violence, without more, the evidence must show that the risk was so great it was something close to normalized violence or a reign of terror. The plaintiff in *Marbury* produced no evidence of and "made no allegations regarding the specific features of the prison that would make it particularly violent." *Id.* But here, unlike the plaintiff in *Marbury*, Dickinson has alleged more than a generalized risk of violence.

*Dickinson*, 833 F. App'x at 275. And, as was the situation in *Dickinson*, the Plaintiff here has alleged more than a generalized risk of violence. He has plausibly alleged the specific features of

**Exhibit A**

violence at St. Clair. Therefore, Defendants' Motions to Dismiss Counts I, II, and VI are due to be denied.

### (ii)     Claims Based on Specific Threats of Violence Toward Plaintiff

Counts III, IV, V, VII, and VIII assert Eighth Amendment failure to protect claims based on deliberate indifference to Plaintiff's individualized risks. That is, Plaintiff alleges that Defendants were deliberately indifferent to specific threats to *Plaintiff*. The Defendants named as to these claims are Jones, Givens, Brooks, Malone, White, Ragsdale, Gordy, Estelle, Ary, Bonner, McMillan, Boyd, and McLemore. Wardens Jones, Givens and Brooks have not sought dismissal of the claims advanced against them in Count III. (Doc. # 142 at 7, n.1).

"Our caselaw [] establishes [] that officials must possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Marbury*, 36 F.3d at 1236 (citing *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)). "'[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" *Id*. (quoting *Prater v. Dahm*, 89 F.3d 538, 542 (8th Cir. 1996)). "Successful deliberate-indifference claims will generally require some further reason—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm." *Id*. The *Marbury* court explained the elements necessary to allege a successful individual risk deliberate indifference claim:

> [A] plaintiff can establish deliberate indifference to a substantial risk of serious harm where he has given prison officials further information enabling them to conclude that the risk was substantial and not merely possible. In *Rodriguez v. Secretary for Department of Corrections*, a prisoner informed prison staff that members of his former gang had threatened to kill him upon release into the general prison population.[] We concluded that if true, this allegation was enough to place

**Exhibit A**

the defendants on notice of a substantial risk of serious harm—so we allowed the case to proceed.[] The key distinction between *Rodriguez* and Marbury's case is that *Rodriguez* involved a series of threats that contained enough specific information—the threats came from members of the plaintiff's former gang—that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm. In fact, *Rodriguez* observed that a vague statement like "I have a problem with another inmate in this compound," absent specific information "about the nature of the anticipated risk," would not have created a genuine issue of fact regarding deliberate indifference to a substantial risk of serious harm.[] Marbury's statement that an another inmate told him another inmate intended to harm him is precisely this type of vague statement that conveys nothing about the nature of the anticipated risk that we cautioned in *Rodriguez* would not rise to the level of deliberate indifference to a substantial risk.

*Id*. at 1236-37. "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. at 1238 (emphasis in original). Plaintiff's allegations that he was particularly vulnerable, had a history of being victimized and violently assaulted at other prisons, and had known enemies and their associates at St. Clair do not establish subjective awareness of a particularized risk to Plaintiff. Therefore, Defendants' Motions to Dismiss Counts IV, V, and VII as to Vincent, Gordy, Ragsdale, Estelle, Ary, and Bonner are due to be granted.

With regard to Defendant White, Plaintiff alleges that, after he was told that one of his enemies had put out an order to stab him, he informed White of this specific threat. (Doc. # 134 at ¶ 68). He also alleges that he informed Defendant White of this threat and the fact that he was being housed with enemies. (*Id*. at ¶ 69). In response, White told Plaintiff "just to go back to the dorm and not to worry about it." (*Id*. at ¶ 70). Thus, Plaintiff has plausibly alleged that he provided White with "enough specific information [] that [White] could have reasonably inferred that there was a substantial, not merely possible, risk of harm to Plaintiff [] necessary to establish deliberate indifference." *See Marbury*, 36 F.3d at 1237-38. Therefore, Defendants' Motions to Dismiss Count III is to be granted as to Malone, and denied as to Defendant White on this basis, and Defendants

**Exhibit A**

Jones, Givens, and Brooks because the court has not had the occasion to assess the propriety of their dismissal as to this claim.

Count VIII is a failure to protect claim based on deliberate indifference to Plaintiff's individualized risks against McMillan, Boyd, and McLemore. As to Boyd, Plaintiff only makes generalized allegations that Boyd knew he was vulnerable, had a history of being victimized and violently assaulted while in ADOC custody, and that some of the perpetrators of the previous assaults were now at St. Clair. Plaintiff has not made any particularized allegations that Boyd had any additional "specific information [from which Boyd] could have reasonably inferred that there was a substantial, not merely possible, risk of harm to Plaintiff [] necessary to establish deliberate indifference." *See Marbury*, 36 F.3d at 1237-38. Therefore, as against Boyd, Count VIII is due to be dismissed.

With regard to Defendants McLemore and McMillian, Plaintiff has specifically alleged that they actually witnessed the January 2019 assault on Plaintiff taking place, but took no steps to protect him. (*Id.* at ¶ 370). Plausibly alleging that these officers actually saw the attack on Plaintiff presents "enough specific information [from which McLemore and McMillian] could have reasonably inferred that there was [an actual] substantial, not merely possible, risk of harm to Plaintiff [] necessary to establish deliberate indifference." *See Marbury*, 36 F.3d at 1237-38. Therefore, the Motion to Dismiss Count VIII against McLemore and McMillian is due to be denied.

### B.      Unlawful Retaliation (Count IX)

In Count IX, Plaintiff asserts an unlawful relation claim against Defendants Estelle, Ary, Gordy. To state a retaliation claim under § 1983, a plaintiff must allege that "(1) "his speech or act was constitutionally protected"; (2) "the defendant's retaliatory conduct adversely affected the

**Exhibit A**

protected speech"; and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1251 (11th Cir. 2005)). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton,* 631 F.3d at 1341 (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Plaintiff has alleged that after he told these Defendants he was sexually assaulted, he was then placed in a segregation unit among his enemies as retaliation. (Doc. # 134 at ¶¶ 90-92, 373-76). Plaintiff alleges that the Defendants' decision was motivated by a longstanding practice of placing prisoners who report sexual abuse in isolation cells in segregation. (*Id.* at ¶¶ 266-68, 375 ("it was the policy and custom at St. Clair to discourage victims from reporting assaults and rapes and to retaliate against prisoners who reported assaults and rapes by subjecting them to segregation and discipline and housing them alongside their assailants")). Plaintiff has plausibly alleged facts supporting each element of a retaliation claim. Therefore, Defendants' Motion to Dismiss is due to be denied as to the claims in Count IX.

### C.      Defendants Are Not Entitled to Qualified Immunity at this Stage of Litigation

"'The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dickinson*, 833 F. App'x at 271 (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citations and quotations omitted)). To establish that the defendants here were not entitled to qualified immunity, Plaintiff must allege that they "1) violated a constitutional right;

**Exhibit A**

and 2) that the right was clearly established at the time of the alleged violation." *Dickinson*, 833 F. App'x at 271 (citing *Caldwell*, 748 F.3d at 1099).

Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George*, 285 F.3d at 1337).

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their [alleged] conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citations and quotations omitted). "To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Caldwell*, 748 F.3d at 1099. If there is no dispute that defendants were acting within their discretionary authority, the plaintiff bears the burden of showing they are not entitled to qualified immunity. *Id.* "To do so, [Plaintiff] must allege that Defendants: 1) violated a constitutional right; and 2) that the right was clearly established at the time of the alleged violation." *Dickinson*, 833 F. App'x at 271.

"It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates, and a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment [only] if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury*, 936 F.3d at 1233 (citations and quotations omitted). As discussed above, Plaintiff has plausibly alleged that Defendants violated his

**Exhibit A**

constitutional rights. And, at the time of the events giving rise to this case, "the state of the law gave Defendants 'fair warning' of a clearly established right." *Corbitt*, 929 F.3d at 1312. And, "materially similar cases ha[d] already been decided." *Id.*; *see also Dickinson*, 833 F. App'x at 271 (discussing *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1583-85 (11th Cir. 1995) (evidence showed that the sheriff "knew that inmate-on-inmate violence was occurring on a regular basis during ... periods of overcrowding" but failed "to classify or segregate violent from non-violent inmates, ... adequately train the jailers, and adequately supervise and monitor the inmates.")) and *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (the Eleventh Circuit held that Plaintiff's allegations established the sheriff's liability for her deliberate indifference to the plaintiff's constitutional rights because "it is an unreasonable response for an official to do nothing when confronted with prison conditions ... that pose a risk of serious physical harm to inmates.")).

In the Third Amended Complaint, Plaintiff has plausibly alleged facts that, if true, establish that Defendants are not entitled to qualified immunity. Plaintiff has alleged that Defendants were aware of the widespread violence and dangerous at St. Clair, were responsible for fueling those conditions and allowing their subordinates to do the same, and failed to protect prisoners such as D.S. from the reasonably foreseeable violence that resulted. (Doc. # 134 ¶¶ 283-306, 319-330, 340-48). As of at least 2001, it was "clearly established in this Circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions [] that pose a risk of serious physical harm to inmates." *Dickinson*, 833 F. App'x at 274 (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly*, 550 U.S. 544, 561-63) and *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583-84 (11th Cir. 1995)). Thus, Defendants "had 'fair warning' that their alleged failure to correct the known inmate-on-

**Exhibit A**

inmate abuse at the jail violated a clearly established constitutional right." *Dickinson*, 833 F. App'x at 275 (discussing the conditions at St. Clair).

### D.      State Law Claims

Plaintiff has asserted two state law claims against all Defendants: an intentional infliction of emotional distress claim (Count XII) and a negligence claim (Count XIII).

#### i.          Intentional Infliction of Emotional Distress

To state an intentional infliction of emotional distress claim, "the plaintiff must demonstrate: '(1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Drew v. Quest Diagnostics*, 992 F. Supp. 2d 1177, 1185-86 (N.D. Ala. 2014) (quoting *Callens v. Jefferson County Nursing Home*, 769 So.2d 273, 281 (Ala. 2000)). For the same reasons that Plaintiff has adequately pleaded his failure to protect claims, he has plausibly stated his intentional infliction of emotional distress claims.

#### ii.         Negligence

"Prison officials have a duty to exercise ordinary and reasonable care for the protection of persons in their custody." *Patton v. Thompson*, 958 So. 2d 303, 310 (Ala. 2006). They "must exercise reasonable care for the protection of the inmate's life and health under the circumstances of the particular case." *Id.* Plaintiff has alleged that Defendants had such a duty, that they violated it, and that he suffered damages. For the same reasons Plaintiff has adequately stated his failure to protect claim, he has also stated a plausible negligence claim.

**Exhibit A**

iii.        **No State-Agent Immunity at This Stage of Litigation**

Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (quoting *Ex parte Hayles*, 852 So.2d 117, 122 (Ala. 2002)). However, "state-agent immunity do[es] not immunize [Defendants] from state law if they violated [Plaintiff's] constitutional rights" *Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019). Moreover, the Alabama Supreme Court has stated that the determination of state-agent immunity is a fact-intensive question generally fit for the summary judgment stage; not the motion to dismiss stage. *See Ex parte Ala. Dep't of Mental Health & Mental Retardation*, 837 So.2d 808, 813-14 (Ala. 2002) (it is a "rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6)") (citing *Ex parte Butts*, 775 So.2d at 177 (quoting in turn *Patton v. Black*, 646 So.2d at 10 (Ala. 1994))).

"[I]n pleading a claim against a State agent, a plaintiff's initial burden is merely to state a cause of action against the defendant." *Odom v. Helms*, 314 So. 3d 220, 229 n.3 (Ala. 2020). Plaintiff has done so here. "The plaintiff need not anticipate a State-agent-immunity defense by pleading with particularity a *Cranman* exception." *Id.* (referencing *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000)). Nonetheless, Plaintiff appears to have alleged facts supporting the application of the second *Cranman* exception. "[T]he second *Cranman* exception, [] provides that a State agent shall not be immune from liability in his or her individual capacity '(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law[.]'" *Ex Parte City of Montgomery*, 272 So. 3d 155, 167 (Ala. 2018) (quoting *Cranman*, 792 So.2d at 405). The allegations of Plaintiff's TAC can be read to support the inference that Defendants acted maliciously and/or in bad faith. In any event,

**Exhibit A**

however, "unless the inapplicability of all the *Cranman* exceptions is *clear* from the face of the complaint, a motions to dismiss based on state-agent immunity must be denied." *Odom,* 314 So. 3d at 229 n.3 (citing *Butts,* 775 So. 2d at 178) (emphasis added). Defendants are not entitled to state-agent immunity at this juncture.

## IV.   Conclusion

For the foregoing reasons, Defendants' Motions (Doc. # 139, 141) are due to be granted in part and denied in part. The Motions are due to be granted in part with regard to following claims, and these claims are due to be dismissed without prejudice:

1. Count III against Defendant Malone;
2. Count IV against Defendants Vincent, Gordy, and Ragsdale;
3. Count V against Defendants Gordy and Ragsdale;
4. Count VII against Defendants Estelle, Ary, and Bonner;
5. Count VIII against Defendant Boyd;
6. Count X against All St. Clair Defendants, and
7. Count XI.

The Motions are due to be denied in part with regard to the remaining claims. For clarity's sake, the case shall proceed on the following claims:

1. Count I against Defendants Dunn, Culliver, Daniels, Williams, and Ellington;
2. Count II against Defendants Jones, Givens, Brooks, Sanders, Malone, White, and Graham;
3. Count III against Defendants Jones, Givens, Brooks, and White; and
4. Count VI against Defendant Estelle,
5. Count IX against Defendants Estelle, Ary, and Gordy;
6. Count XII against all Defendants;[3] and
7. Count XIII against all Defendants.

**DONE** and **ORDERED** this June 1, 2022.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[3] Defendants Dunn, Culliver, Daniels, Williams, Ellington, Jones, Givens, Brooks, Sanders, Malone, White, Graham, Vincent, Gordy, Ragsdale, Estelle, Ary, Bonner; McMillian, Boyd, and McLemore.

**Exhibit A**