HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY





**PHONE CALL INMATE STEVEN MULLINS**
**AGENT BRIAN CASEY**

[REDACTED]. Date 2019-02-25. Time 105208. Dialed # from Station 57119. Press 1 for English. The time is 10:52 a.m. To report sexual abuse or sexual harassment to an agency outside of Alabama DOC leaving detailed information so that the report can be investigated, press #66 after this message. Please record your message after the tone. The time limit is two (2) minutes. When you are finished recording please press the # key.

S.M.     My name is Steve Mullins. I'm at St. Clair Correctional Facility. Um I was released from the seg two (2) weeks ago tomorrow, I was told to go sleep in uh Cube thirty-two (32). They were to be (INAUDIBLE) that cell so I found an empty bed in Cube twenty-seven (27). Okay um I've had issues with my cell partner uh rubbing on my feet while I was asleep, rubbing me on my hip while I was asleep, I asked him to stop. Okay and then this morning uh I was waking up by him punching me in the side of my head and he hit me in the eye twice. He pulled a knife on me and um actually wanted me to perform uh oral sex on him and what I did was I shoved him outa my way and I left out of that cell. Someone went and got my property for me and then I got dressed in the hallway and went to the shift office. Um the shift office uh eventually talked to Warden Givens and I was supposed to go back to the block so they could do a recount this morning and um I'm the only white individual in that block came to 2-side. Um my life is in danger, I feel very unsafe and I have nowhere to sleep. My property is in the breezeway by the shift office now. My mattress and all of my other stuff, that's why I'm calling from the gym because that's where I feel the safest and that's the only place I can go that's outa the way. I need some help. I've asked to be placed in seg for my own safety, PC if possible but I cannot live in St. Clair population. Um I need some help badly. Um and I don't know what to do. Your message has been saved. Please hang up now.

/jew

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

<u>March 8, 2019</u>
DATE

## RELEASE OF INMATE BODY TO ALABAMA DEPARTMENT OF CORRECTIONS
## TO BE SIGNED BY THE NEXT-OF-KIN

NAME OF INMATE  <u>Steven Eric Mullins</u>          AIS NUMBER  <u>175255X</u>

█████████████████████          PLACE OF DEATH  <u>UAB Hospital Room 9508</u>

NAME OF NEXT-OF-KIN ███████████████████████

This is to certify that I am the next-of-kin to the deceased inmate named above and that I do not wish to claim the deceased body and do not wish any other person to claim the body.

I understand that my action places the responsibility of burial of the deceased on the Alabama Department of Corrections and that such burial will be in accordance with the laws of the State of Alabama and will be in a cemetery owned by the Alabama Department of Corrections.

I hereby release the body of inmate <u>Steven Eric Mullins</u> to the Alabama Department of Corrections for burial.

I swear/affirm that the information given above is true under penalty of perjury. I have read this release and I understand it.

█████████████████████████████████

_____

Witness

AD0C009157

ATTN: <u>THURMAN RICHARDSON</u>
FAX: 205-934-4228

**UAB**
**UNIVERSITY HOSPITAL**
**AUTHORIZATION FOR AUTOPSY**
**DEATH** _____AM/PM
(DATE)        (TIME)

I do here by state that I am the Warden of _____ and custodian of
Inmate _____

I am the Legally designated representative and therefore am legally entitled to grant
permission for the completion of an autopsy and the removal of organs or tissues for further
study on said Inmate.

I do, therefore, give my permission for the performance of an autopsy including the removal
of organs or tissues from said inmate for diagnostic or other testing, including final disposition
thereof. The autopsy is performed without limitations.
**EXCEPT** _____
_____

_____(If no restrictions, write none)
**RELEASE BODY TO:**                    I am entitled by law to grant this permission.
(must be completed)

_____          _____
**Funeral Home**                          (Signature of designated representative)

_____
**Address**

_____
**City**              **State**

We the undersigned certify and witness that proper    **CLINICIAN REQUESTING**
permission is obtained from custodial warden          **NOTIFICATION OR**
as defined in the restrictions.                       **ATTENDANCE AT AUTOPSY**

_____
**Physician obtain permission      Phone**

                                          _____
                                                 (Name)
_____
**Head Nurse/Charge Nurse      Phone**
                                          _____
                                          **Beeper No.       Phone No.**

## CLINICAL PREMORTEM DIAGNOSIS
Include questions that may be potentially determined by postmortem examination

1) _____
2) _____

The physicians **MUST** provide any essential information need for the safety of others handling remains:
_____

AD0C009158

# HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

**Steele, Becky (DOC)**

| | |
|---|---|
| **From:** | Jones, Karla (DOC) |
| **Sent:** | Friday, March 8, 2019 9:23 AM |
| **To:** | Bean, Yumeka (DOC); ███████ █████ ████████████ █ |
| **Cc:** | Givens, Gwendolyn (DOC); Brooks, Anthony (DOC); Crow, John (DOC); Luckie, Charmelle (DOC); Graham, Carla (DOC); White, Kevin (DOC); Malone, Gary (DOC) |
| **Subject:** | Re: Deceased Inmate Steven Mullins W/175255 |

Grace Funeral Home 256-383-5990

KWJ

> On Mar 8, 2019, at 9:15 AM, Jones, Karla (DOC) ██████████████████ wrote:
>
> Malisa,
>
> Please arrange the pick of inmate Steven Mullins body at St. Clair County (Pell City) Coroner's office. (205-884-3333).
>
> The burial will be at:
> Staton Correctional Facility
> 2690 Marion Spillway Rd, Elmore Alabama 36025
> 334-567-2221
>
> Forward the bill to St. Clair CF:
> Ms. Yumeka Bean
> 1000 St. Clair Rd
> Springville, Al 35146
> 205467-6111 ext 200
>
>
> If you have any questions, please do not hesitate to phone either Wardens Givens, Brooks or Jones
> Karla W. Jones
>
>
>
>
>
> Get Outlook for iOS
> _____
> **From:** Graham, Carla (DOC) <carla.graham@doc.alabama.gov>
> **Sent:** Thursday, March 7, 2019 5:42 PM
> **To:** Jones, Karla (DOC)

AD0C009159

**Steele, Becky (DOC)**

| | |
|---|---|
| **From:** | Jones, Karla (DOC) |
| **Sent:** | Friday, March 8, 2019 9:15 AM |
| **To:** | Bean, Yumeka (DOC); ███████ ████████ |
| **Cc:** | Givens, Gwendolyn (DOC); Brooks, Anthony (DOC); Crow, John (DOC); Luckie, Charmelle (DOC); Graham, Carla (DOC); White, Kevin (DOC); Malone, Gary (DOC) |
| **Subject:** | Deceased Inmate Steven Mullins W/175255 |

Malisa,

*last Friday*

Please arrange the pick of inmate Steven Mullins body at St. Clair County (Pell City) Coroner's office. (205-884-3333).

The burial will be at:
Staton Correctional Facility
2690 Marion Spillway Rd, Elmore Alabama 36025
334-567-2221

Forward the bill to St. Clair CF:
Ms. Yumeka Bean
1000 St. Clair Rd
Springville, Al 35146
205467-6111 ext 200

If you have any questions, please do not hesitate to phone either Wardens Givens, Brooks or Jones
Karla W. Jones

Get Outlook for iOS

**From:** Graham, Carla (DOC) ███████████████████
**Sent:** Thursday, March 7, 2019 5:42 PM
**To:** Jones, Karla (DOC)
**Cc:** Givens, Gwendolyn (DOC)
**Subject:** Inmate Steven Mullins W/175255

Mother: Sue Guy

1

AD0C009160

## RECEIPT OF REMAINS

I, _____ from _____
(Please Print Name)

Funeral Home, certify that I picked up the remains of the following name Inmate from Limestone Correctional Facility.____

Inmate Name: _____

AIS Number: _____

Date: _____

Time: _____

*send to Corner Office*

_____
Signature

_____
Witness

cc: Warden
    File

*Maint Log out of date up to date M.S. Montgomery*

AD0C009161

# HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

## Fax Send Image

```
Date & Time          : MAR-08-2019 04:33PM FRI
Model Name           : SF-760 Series
Machine Serial Number : Z6SMB8KDAB000XX
```

| No | Name/Number | Start Time | Time | Mode | Page | Result |
|---|---|---|---|---|---|---|
| 575 | 918888117780 | 03-08 16:32PM | 00 30" | ECM | 002/002 | OK |

1000 St. Clair Road, Springville, AL 35146
Fax: 205-467-3299   Phone: 205-467-6111

**ST. CLAIR C.F.**

# Fax

# CONFIDENTIAL

| To: | From: Wanda Orns |
|---|---|
| Fax: 1-888-811 7780 | Pages: 1 |
| Phone: | Date: 3/8/19 |
| Re: E | cc: |

• **Comments:**

Gwendolyn. Givens Oduc. Alabama. Govv

Please fax or Email

1

AD0C009162

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

1000 St. Clair Road, Springville, AL 35146
Fax: 205-467-3299  Phone: 205-467-6111

**ST. CLAIR C.F.**

# Fax

# CONFIDENTIAL

| To: | From: Wanda Owens |
|---|---|
| Fax: 1-888-811 7780 | Pages: 1 |
| Phone: | Date: 3/8/19 |
| Re: E | CC: |

## ● Comments:

Gwendolyn. Coivens Oduc. Alabama. Gcv
Please fax or Email

1

AD0C009163

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

<u>March 8, 2019</u>
DATE

RELEASE OF INMATE BODY TO ALABAMA DEPARTMENT OF CORRECTIONS
TO BE SIGNED BY THE NEXT-OF-KIN

NAME OF INMATE <u>Steven Eric Mullins</u>        AIS NUMBER <u>175255X</u>

PLACE OF DEATH <u>UAB Hospital Room 9508</u>

This is to certify that I am the next-of-kin to the deceased inmate named above and that I do not wish to claim the deceased body and do not wish any other person to claim the body.

I understand that my action places the responsibility of burial of the deceased on the Alabama Department of Corrections and that such burial will be in accordance with the laws of the State of Alabama and will be in a cemetery owned by the Alabama Department of Corrections.

I hereby release the body of Inmate <u>Steven Eric Mullins</u> to the Alabama Department of Corrections for burial.

I swear/affirm that the information given above is true under penalty of perjury. I have read this release and I understand it.

_____

Signature/Telephone Number

_____

Witness

**HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY**

Alabama Department of Corrections
## Inmate Body Chart Documentation Form



Institution: _____ _JCCF_ _____ Date: _2/27/19_ Time: _0650_

Individual Requesting Body Chart (print name): _Santa Maie_ Title: _Sgt_

**Inmate statement:**

" _No statement_ "

**Description of markings:**

_No trauma or Injuries Noted_

Check below:

___ *NET additionally completed and filed in the inmate health record.

___ *Special Health Needs Communication Form completed and distributed, as necessary.

Health Professional (signature): _JHaynes RN_ Date: _2/27/15_ Time: _0650_

Inmate Name: _JACKSON Clarevee_ AIS #: _249273_

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

Alabama Department of Correction
## Inmate Body Chart Documentation Form

Institution: _____SCCF_____ Date: 2/27/19 Time: 0650

Individual Requesting Body Chart (print name): _Santa Maria_ Title: Sgt

**Inmate statement:**

" _____No Statement_____ "

**Description of markings:**

_No trauma or Injuries Noted_

Check below:
___ *NET additionally completed and filed in the inmate health record.
___ *Special Health Needs Communication Form completed and distributed, as necessary.

Health Professional (signature): _JHaynes RN_ Date: _____ Time: _____

Inmate Name: _Jones Christopher_ AIS #: 151939

**Inmate Assault/Upgrade to Homicide: St Clair CF:** On Tuesday, February 26, 2019 at approximately 1826 hours, an inmate assault was reported by St Clair CF. At approximately 1745 hours, staff heard a loud bang in Dorm L2. When the officer open the cell door, they observed inmate Stephen Mullins W/M AIS# 175255 on the floor and with blood everywhere. The crime scene was secured, however the weapon used in the assault was not recovered. Inmate Mullins was transported by Life Flight to UAB with life threating injuries. Inmate Mullins had surgery and is stable in recovery at UAB. Inmate Christopher Jones B/M AIS# 151939 was developed as a suspected in the assault. I&I Agent Casey is responding to start the investigation. (FYI, the 302 does not list a suspect, however there was an incident on February 25, 2019, at approximately 1600 hours, where inmate Mullins alleged that his cell mate, inmate Clarence Jackson B/M AIS# 249273 would rub him on his feet and hip even though he asked him to stop. Inmate Mullins stated that he was awakening this morning with inmate Jackson punching him on the side of the head and his eye. Inmate Mullins further stated that inmate Jackson pulled a knife on him and tried to make him perform oral sex, however, he ran out of the cell.) Inmate Mullins is currently serving a life sentence out of Coosa County for Murder and is a member of the Aryan Brotherhood STG. Inmate Jones is currently serving a 25-year sentence out of Shelby County for Murder and has no STG assessments on file.



MULLINS          JONES

# HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

Alabama Department of Corrections

## Inmate Body Chart Documentation Form



Institution: _SCCF_  Date: _2-26-19_  Time: _1800_

Individual Requesting Body Chart (print name): _Price_  Title: _Lt_

**Inmate statement:**

" _Unresponsive_ "

**Description of markings:**

_1 stab wound entering ®R cervical 2 stab wound to Ⓛ shoulder_

Check below:

_✓_ **\*NET** additionally completed and filed in the inmate health record.

___ **\*Special Health Needs Communication Form** completed and distributed, as necessary.

Health Professional (signature): _J M Mosley_  Date: _2-26-19_  Time: _1800_

Inmate Name: _Mullins, Steven_  AIS #: _176255_ ████

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

# State of Alabama Department of Corrections
# Investigations and Intelligence Division
## Rights Form



LOCATION: _St. Clair Correctional Facility_

DATE: _3/15/19_          TIME: _1254_

RACE: _B_          SEX: _M_

CHARGE(s): _____

### MIRANDA WARNING

Before asking you any questions, I must explain to you that you have the right to remain silent; that anything you say can be used against you in court; that you have the right to the advice and presence of a lawyer even if you cannot afford to hire one. If you cannot afford to hire a lawyer and want to have one present during interrogation, the court will appoint you one before questioning. If you want to answer questions you can do so, but you can stop answering at any time.

### WAIVER OF RIGHTS

I have been advised of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me by anyone.

NAME: _Clarence Jackson_

SIGNATURE: _Clarence Jackson_

INVESTIGATOR: _[signature]_

WITNESS: _[signature]_

*Case Number:* _19-0326_

AD0C009169

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

# State of Alabama Department of Corrections
# Investigations and Intelligence Division
## Rights Form



LOCATION: _St. Clair Correctional Facility_

DATE: _3/15/19_     TIME: _1222_

NAME: _Christopher Jones_

RACE: _B_     SEX: _M_  ████████████

CHARGE(s): _____

### MIRANDA WARNING

Before asking you any questions, I must explain to you that you have the right to remain silent; that anything you say can be used against you in court; that you have the right to the advice and presence of a lawyer even if you cannot afford to hire one. If you cannot afford to hire a lawyer and want to have one present during interrogation, the court will appoint you one before questioning. If you want to answer questions you can do so, but you can stop answering at any time.

### WAIVER OF RIGHTS

I have been advised of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me by anyone.

NAME: _Christopher Jones_

SIGNATURE: _Chris Jones_

INVESTIGATOR: _[signature]_

WITNESS: _[signature]_

*Case Number:* _19-0325_

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

**INMATE DEATH INFORMATION DATA FORM /**

**DECEASED INMATE RELEASE FORM**

Victim's Name:   Steven Eric Mullins          AIS Number:   175255X

Race   White          Sex   Male          ▮▮▮▮▮▮▮▮▮▮▮▮▮

Date of Incarceration   08-06-1999          County Convicted From   Coosa

Offense   Capital Murder

Length of Sentence   LWOP

Any Existing Medical History   See attached medical sheet

Terminal Illness          Yes   X          No          Unknown

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Funeral Home (If Known)

Time Last Observed Alive   8:05pm          Time Found Deceased   8:19 pm

Found by Whom:   Officer Deondre Hall, Taylor Brazier, RN

Circumstances of Being Found   Inmate Mullins was admitted to UAB for injuries sustained

Location / Availability to Other Persons / What Type Access to Area   UAB  RM# 9508

Name of Company Body Released To

Name of Person Body Released To:   TiTANIA Jones

Time of Arrival          Date   3-1-19

Name of Person Body Released To:

Time Body Picked Up   2300          Number of Medical Jackets   1

_____          Sgt. John Mason
(Signature of Person Body Released To)          (Shift Commander/Designee Signature)

Please have medical jacket available for Forensic Sciences or Contract Pick-up/Transport company at the time they pick up the body.

AD0C009171

**SYMBOL KEY**
- A: ABSENT
- \*: SEE NOTES
- H: HELD
- M: MISSED
- N: NO SHOW
- R: REFUSED
- C: COMPLETED

**SITE KEY**
1. ORAL\)
2. RIGHT BUTTOCKS (GLUTEUS)
3. LEFT BUTTOCKS (GLUTEUS)
4. RIGHT VENTRAL GLUTEUS
5. LEFT VENTRAL GLUTEUS
6. RIGHT THIGH (QUADRICEPS)
7. LEFT THIGH (QUADRICEPS)
8. RIGHT KNEE
9. LEFT KNEE
10. RIGHT ARM (DELTOID)
11. LEFT ARM (DELTOID)
12. RIGHT ARM (DELTOID) BACK
13. LEFT ARM (DELTOID) BACK
14. LEFT LEG REAR
15. RIGHT LEG REAR
16. RIGHT ANTERIOR THIGH
17. LEFT ANTERIOR THIGH
18. LOWER BACK LEFT
19. LOWER BACK RIGHT
20. UPPER BACK LEFT
21. UPPER BACK RIGHT
22. UPPER CHEST LEFT
23. UPPER CHEST RIGHT
24. ABDOMEN UPPER QUADRANT RIGHT
25. ABDOMEN UPPER QUADRANT LEFT
26. ABDOMEN LOWER QUADRANT RIGHT
27. ABDOMEN LOWER QUADRANT LEFT
28. PIC LINE
29. MIDPORT
30. RIGHT NARE
31. LEFT NARE
32. OTHER
33. RIGHT EYE
34. LEFT EYE
35. BOTH EYES
36. LEFT EAR
37. RIGHT EAR
38. BOTH EARS
39. BOTH NARES
40. RECTUM
41. JUGULAR RIGHT
42. JUGULAR LEFT
43. SUBCLAVIEN RIGHT
44. SUBCLAVIEN LEFT
45. DELTOID RIGHT
46. DELTOID LEFT
47. UPPER ARM RIGHT
48. UPPER ARM LEFT
49. ANTECUBITAL RIGHT
50. ANTECUBITAL LEFT
51. FOREARM RIGHT
52. FOREARM LEFT
53. WRIST RIGHT
54. WRIST LEFT
55. ABDOMEN
56. OUTER THIGH RIGHT
57. OUTER THIGH LEFT
58. VASTUS LATERAL RIGHT
59. VASTUS LATERAL LEFT
60. FEMORAL VEIN RIGHT
61. FEMORAL VEIN LEFT
62. LOWER LEG RIGHT
63. LOWER LEG LEFT
64. FOOT RIGHT
65. FOOT LEFT
66. TRICEP LEFT
67. TRICEP RIGHT
68. HAND LEFT
69. HAND RIGHT
70. DORSOGLUTEAL LEFT
71. DORSOGLUTEAL RIGHT
72. VENTROGLUTEAL LEFT
73. VENTROGLUTEAL REAR

## ROUTINE MEDICATION

### MEDICATION

**START** 02/25/2019
**STOP** 03/03/2019
**RX** 13237777
**NA**

Acetaminophen 325mg Tab - KOP
SUB FOR: TYLENOL
TAKE 2 TABLET(S) ORALLY TWICE DAILY -

WILSON, WALTER

| HOUR | NON-SCHEDULED |
|------|---------------|

### MEDICATION

**START** 02/21/2019
**STOP** 08/19/2019
**RX** 13169234
**100%**

Dicyclomine 20mg Tablet
SUB FOR: BENTYL
TAKE 2 TABLET(S) ORALLY THREE TIMES DAILY -

ODEN, JUSTIN

| HOUR | TH A | MC A | YH H |
|------|------|------|------|
| 04:00 | | | |
| 12:00 | | | |
| 16:00 | | | |

### MEDICATION

**START** 11/26/2018
**STOP**
**RX** 89804634
**95.7%**

Meloxicam 15mg Tablet
SUB FOR: MOBIC
TAKE 1 TABLET(S) ORALLY ONCE DAILY -

WATKINS, TIMOTHY

| HOUR | TH A |
|------|------|
| 04:00 | |

**Agency** ST CLAIR CORRECTIONAL FACILITY
**SSN**
**Alt Num**

March 2019
PAGE 1 OF 1

ALL PRE-PRINTED NAMES IN SIGNATURE TABLES COMPLY WITH ELECTRONIC SIGNATURE GUIDELINES

| INIT | FULL NAME |
|------|-----------|
| MC | CARTER, MARCY |
| TH | HAYNES, TRACI |

REPORT GENERATED BY MGOUBEAUX AT 3/1/2019 10:18:18 PM

AD0C009172

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

UABH(Location: TBIC ; 9508 ; 01)

Patient Name: MULLINS, STEVEN
Admitting Physician: Hospitalist, Service ████████████████████

Expiration Record/Morgue Admission
03/01/19 07:36 pm Performed by Resha, Rachel K. RN
Entered on 03/01/19 07:37 pm

**Updated on**
03/01/19 10:59 pm by Peek, Kimberly E RN
03/01/19 07:42 pm by Resha, Rachel K. RN

**Notification**
Pronounced By: Yates, Margaret Compton MD
Date/Time of Death: 03/01/19 12:40
Notifications Of Death: Attending physician, Family member, Medical examiner, Organ donor services
Name Of Attending Notified Of Death: Hu, Parker MD
Date/Time Attending Notified Of Death: 03/01/19 12:40
Name Of Funeral Home: undecided
Expiration Record Family Member Info

Family/Available Contact Notified: Yes
Date/Time Family/Contact Notified: 03/01/19 12:45
Name Of Family Member Contacted: ████████
Coroner's Case: Yes
Name Of Coroner And County Notified: St Clair
Dennis Russell
Date/Time Coroner Notified: 03/01/19 19:40
When a Loved One Dies Guide Given: No
Parking Passes Given: No
Reason Parking Pass Not Given: Other: prisoner patient, no family
**Organ Donation**
Date/Time Organ Bank Notified Of Death: 03/01/19 12:40
Organ Bank Member Notified Of Death: ████████
Decision By Organ Center: Suitable candidate
Response To Organ Center: ████
  Comment: declined by St Clair County
Date/Time Eye Bank Notified Of Death: 03/01/19 12:40
Eye Bank Member Notified Of Death: ████
Decision by Eye Bank: ████████████
Response To Eye Bank: ████
  Comment: declined by St. Clair county
**Disposition**
Body Transported: Morgue
Date/Time Body Left Department: 03/01/19 23:00
Name Of Person Receiving Body: Titania Jones
Valuables/Belongings Grid

| Clothes, Patient Valuables | Valuables With Body |
|---|---|
|  | Pants, Shirt, Undergarments, Other: belt |

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**



## State of Alabama
## Alabama Department of Corrections

St. Clair Correctional Facility
1000 St. Clair Road
Springville, AL 35146



**KAY IVEY**
GOVERNOR

**JEFFERSON S DUNN**
COMMISSIONER

To:   Rachael                    Security
      205-9340239 (Fax)          205-877-1838 (Fax)

Name of Inmate: Steven Mullins w/m

████████████████████████

AIS#:        175255X

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Name

Date Visitation is Granted: <u>February 28, 2019</u>

Date Visitation is Terminated: _____

Number of Visits Approved: <u>XXXX</u> One Time Only    _____ One Time Daily

_____
Warden Signature

(205) 467-6111 ext 102
Warden Phone Number

Final Approval: _____
                Rachael – Date

### TO BE PLACED IN PATIENT'S MEDICAL CHART



# State of Alabama
## Department of Corrections
### Saint Clair Correctional Facility
1000 Saint Clair Road
Springville, Alabama 35146
(205)467-6111



KAY IVEY
GOVERNOR

JEFFERSON S DUNN
COMMISSIONER

## February 27, 2019

To: Sarah Dickey (North Atlantic Security)          UAB Police
662-327-2555 (Fax)          205-934-6461

Name of Inmate:     Steven Mullins          (UAB RM# 9508)

████████████████████████

AIS#:          W/175255

Visitation is granted to the following individuals:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Date Visitation is granted:          (February 27, 2019)

Date Visitation is terminated:          (February 27, 2019)

Number of Visits Approved:     __xx__  One Time Only     ____ One Time Daily

_Gwendolyn Givens_  WARDEN II
Warden Signature

205-467-6111  ext. 10
Warden Phone Number

Final Approval: _____
                    —Date

TO BE PLACED IN PATIENT'S MEDICAL CHART

AD0C009175

I was assigned to L cube. I released $L^2$ side for chow. Heard Inmate hit the door, and saw blood everywhere. I called 10-17 for assistance.

Brenda Smith

AD0C009176

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

# State of Alabama Department of Corrections
# Investigations and Intelligence Division
### Rights Form



LOCATION: St. Clair Correctional Facility

DATE: 3/15/19    TIME: 1202

NAME: Vantrick Thomas

RACE: B    SEX: M

CHARGE(S): _____

## MIRANDA WARNING

Before asking you any questions, I must explain to you that you have the right to remain silent; that anything you say can be used against you in court; that you have the right to the advice and presence of a lawyer even if you cannot afford to hire one. If you cannot afford to hire a lawyer and want to have one present during interrogation, the court will appoint you one before questioning. If you want to answer questions you can do so, but you can stop answering at any time.

## WAIVER OF RIGHTS

I have been advised of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me by anyone.

NAME: Vantrick Thomas

SIGNATURE: _____

INVESTIGATOR: _____

WITNESS: _____

*Case Number:* 19-0325

AD0C009177

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

Alabama Department of Corrections
## Inmate Body Chart Documentation Form

Institution: _____ SCCF _____    Date: 2/27/19   Time: 0650

Individual Requesting Body Chart (print name): _____ Santa Maria _____   Title: Sgt

Inmate statement:

" _____ No statement _____ "



**Description of markings:**

_____ No trauma or Injuries noted _____

**Check below:**

___ *NET additionally completed and filed in the inmate health record.

___ *Special Health Needs Communication Form completed and distributed, as necessary.

Health Professional (signature): _____ T Haynes LPN _____   Date: 2/27/19  Time: 0650

**Inmate Name:** _____ Thomas Vanderick _____   AIS #: 148503

**<span style="color:red">HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY</span>**



ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

716 Arcadia Circle          Telephone (256) 539-1401
Huntsville, AL 35801        Facsimile (256) 533-2855

## REPORT OF AUTOPSY

**ADFS CASE NUMBER:** 19HM00153          **DATE:** March 4, 2019
                                         **TIME:** 1123 hours

**NAME(S):** STEVEN ERIC MULLINS

**COUNTY OF DEATH:** St. Clair          **DATE OF DEATH:** March 1, 2019

████████████  **RACE:** W   **SEX:** M   **LENGTH:** 73 inches   **WEIGHT:** 186 pounds

### FINAL DIAGNOSES

I.  Complications of Multiple Sharp Force Injuries
   A. Two stab wounds to the head with injury to soft tissues, skull and atlanto-occipital membrane
   B. One stab wound to the right neck with injury to major right sided arteries, right first rib and soft tissues with extensive blood loss and medical intervention (medical record review)
      1. Status post right neck exploration with Jackson-Pratt drain
      2. Status post median sternotomy with pericardial drain
      3. Status post right brachial exploration
      4. Transection of right vertebral artery
      5. Injury to right subclavian artery with stent repair
      6. Physiologic cardiac tamponade from mediastinal hematoma
      7. Pseudoaneurysms of the right vertebral and subclavian arteries
      8. Bilateral multifocal cerebellar and brainstem (pons) strokes
      9. Hemorrhagic shock
     10. Cerebral edema
     11. Right chest tube
   B. One stab wound to the left shoulder with injury to soft tissues
   C. One stab wound to the left hand with injury to soft tissues

II. Blunt Force Injuries
   A. Abrasions and contusions of the face and extremities, healing

     **CAUSE OF DEATH:**      Complications of Multiple Sharp Force Injuries

     **MANNER OF DEATH:**     Homicide

Case #   19HM00153
Name     Steven Eric Mullins

## EVIDENCE OF INJURY

I.   Multiple Sharp Force Injuries

    A.   Stab Wounds (2) to the Head

Situated on the posterior scalp were two (2) obliquely oriented, stab wounds, each measuring 3/4 inches in length. One stab wound was on the posterior right parietal scalp, located 2-1/2 inches below the top of the head and 2 inches right of the posterior midline with an approximate depth of penetration of 1/2 inch. The stab wound injured the scalp and soft tissues. It was directed from back to front and downward. The second stab wound was on the right occipital scalp, located 5 inches below the top of the head and 1 inch right of the posterior midline with an approximate depth of penetration of 2-1/2 inches. The stab wound injured the occipital scalp and bone, soft tissues of the posterior neck and atlanto-occipital membrane. It was directed from back to front, right to left and downward. Associated injuries included hemorrhagic wound tracks.

    B.   Stab Wound to the Neck

Situated on the right side of the neck in the posterior triangle was a stab wound, located 9 inches below the top of the head and 3-1/2 inches right of the anterior midline, which measured 3/4 inches in length. The stab wound injured the skin and soft tissues of the right side of the neck, right vertebral artery, posterior right first rib, right subclavian artery and mediastinal soft tissues. It was directed from back to front and downward with no other significant deviations and an approximate depth of penetration of 3 inches. Associated injuries included a hemorrhagic wound track and right hemothorax (600 milliliters).

    C.   Stab Wound to the Left Shoulder

Situated on the left anterior shoulder was a stab wound, located 12 inches below the top of the head and 6 inches left of the anterior midline, which measured 3/4 inches in length. The stab wound injured the skin and soft tissues of the anterior left shoulder. It was directed from left to right and downward with no other significant deviations and approximate depth of penetration of 1 inch. Associated injuries included a hemorrhagic wound track.

    D.   Stab Wound to the Left Hand

Situated on the lateral palm of the left hand was a stab wound, located 26 inches below the top of the shoulder and 1-1/2 inches left of the anterior midline of the hand, which measured 1 inch in length. The stab wound injured the skin and soft tissues of the lateral left hand. It was directed from front to back, left to right and upward with the hand in anatomic position. The approximate depth of penetration was 1-1/4 inches. Associated injuries included a hemorrhagic wound track.

II.  Blunt Force Injuries

Healing abrasions and contusions were noted to the face and upper and lower extremities.

Case #       19HM00153
Name      Steven Eric Mullins

## EXTERNAL EXAMINATION

The following excludes any previously described injuries.

**BODY HABITUS:** The body was that of a well-developed, well-nourished, white male. The body weighed 186 pounds, was 73 inches in height and appeared compatible with the reported ███████████

**CONDITION OF THE BODY:** The unembalmed body was cool to the touch, having been refrigerated. The body was preserved. Rigor was absent. Lividity was present and fixed on the posterior surface of the body, except in areas exposed to pressure.

**IDENTIFYING MARKS:** Tattoos were noted on the chest and upper extremities. Needle tracks were not observed.

**HEAD AND FACE:** The scalp was covered with brown-gray hair. Facial hair consisted of a beard and mustache. There were no facial fractures.

**EYES:** The irides were blue. The conjunctivae and sclerae were without hemorrhage, petechiae or jaundice.

**NOSE:** The nose was symmetrical, without acute trauma. The external nares were free of foreign material and abnormal secretions. The nose was normally aligned. The nasal skeleton was palpably intact.

**MOUTH:** The lips were without injury. The oral cavity was free of foreign material and abnormal secretions. The frenula were without contusion, abrasion or laceration. The teeth were natural and in good condition.

**EARS:** The ears were well formed and symmetrically placed, without acute trauma. The external auditory canals were free of foreign material and abnormal secretions. The left earlobe was pierced. The right earlobe was without note.

**NECK:** Examination of the neck otherwise revealed symmetrical development.

**CHEST:** The chest was otherwise symmetrical and the breasts unremarkable. No injury of the ribs was evident externally.

**ABDOMEN:** The abdomen was symmetrical and flat with no palpable organomegaly or fluctuance. Healed surgical scars were not noted.

**EXTERNAL GENITALIA:** The external genitalia were those of a normal adult male. Two testes were palpable within the scrotal sac.

**UPPER EXTREMITIES:** The upper extremities were otherwise normally aligned, without hesitation scars, needle tracks or fractures. The hands were otherwise without note. The fingernails were intact.

**LOWER EXTREMITIES:** The lower extremities were otherwise normally aligned, without edema, changes of chronic venous stasis or fractures. A scar was on the left leg. The toenails were intact. The soles of the feet were unremarkable.

**BACK AND ANUS:** Examination of the posterior torso showed a midline, normally aligned vertebral column and was otherwise without note. The anus was unremarkable.

## EVIDENCE OF MEDICAL INTERVENTION

The hands and feet were bound together with gauze, respectively. Ink writing was noted on the right arm. An electrocardiogram lead was on the back. A nasogastric tube was in the left naris, esophagus and stomach. Intravenous lines were in the bilateral forearms, left wrist and left inguinal region. A Foley catheter was in the urethra and bladder. Needle puncture sites were in the right antecubital fossa, left forearm, bilateral hands and right inguinal region. A right chest tube was in place. Stapled surgical incisions were present on the right neck, chest and right arm due to right neck exploration, median sternotomy and right brachial exploration, respectively. A Jackson-Pratt drain was in the right side of the neck. The pericardial sac was incised and a right pericardial drain to the exterior body was in place. A stent was in the right subclavian artery. A hospital band encircled the right wrist.

## INTERNAL EXAMINATION

The following excludes any previously described injuries.

**SEROSAL CAVITIES:** The body was opened by a thoraco-abdominal incision and the chest plate was removed. A serosanguineous pleural effusion was noted in the left chest cavity (50 milliliters). The pleural and peritoneal surfaces were otherwise smooth and glistening and the organs were anatomically disposed. An insignificant amount of clear free fluid was in the remaining body cavities. Otherwise, no adhesions or other collections of fluid were present in any of the body cavities. There was no internal evidence of blunt force or penetrating injury to the thoraco-abdominal region.

**CENTRAL NERVOUS SYSTEM:** The scalp was reflected. Reflection of the scalp otherwise showed the usual scattered reflection petechiae. The calvarium was intact. Removal of the calvarium showed the epidural space to be normal. The dura mater and falx cerebri were intact. There was no epidural or subdural hemorrhage present. The brain was soft and removed in the usual manner. The leptomeninges were thin, delicate, smooth and glistening and the gyri otherwise demonstrated their usual orientation and configuration with edema. The vessels at the base of the brain were intact and normally disposed and no anomalies were identified. The cranial nerves were intact and unremarkable.

The cerebral hemispheres were symmetrical. Serial sections of the brain showed the cerebrocortical ribbon to be intact with uniform normal thickness and a distinct gray-white junction. The ventricles were not dilated nor compressed and contained clear cerebrospinal fluid. The usual anatomic landmarks of the cerebrum, cerebellum, midbrain, pons and medulla otherwise demonstrated no abnormalities. Removal of the dura from the base of the skull showed the usual anatomic features without abnormalities. The pituitary fossa was unremarkable. The foramen magnum otherwise demonstrated the normal orientation and the first portion of the spinal cord, viewed through the foramen magnum, was unremarkable. The brain weighed 1710 grams.

**ORGANS OF THE NECK:** Examination of the soft tissues, including strap muscles, thyroid gland, large vessels, and cartilaginous and bony structures of the neck, including an otherwise complete layered neck dissection, demonstrated no atraumatic abnormalities with the usual anatomic relationships preserved. The hyoid bone and larynx were intact without intramuscular hemorrhages or fractures. The laryngeal

mucosa was smooth, tan-pink and glistening with no petechiae or ulcerations. The epiglottis was thin and delicate.

**CARDIOVASCULAR SYSTEM:** The pericardial surfaces were smooth, glistening and otherwise unremarkable; the pericardial sac was free of significant fluid or adhesions. The epicardium was smooth, glistening and intact. The left anterior descending coronary artery demonstrated calcifications with 30 percent occlusion. The left circumflex coronary artery had 40 percent occlusion. The coronary arteries arose normally, followed the usual distribution and were otherwise patent, without evidence of significant atherosclerosis or thrombosis. The chambers and valves exhibited the usual size-position relationship and were unremarkable. The papillary muscles and chordae tendineae were intact. The valve cusps and leaflets were thin and delicate. The valves had the following measurements: tricuspid valve, 12 centimeters; pulmonic valve, 8 centimeters; mitral valve, 10 centimeters; aortic valve, 8 centimeters. The myocardium was dark red-brown, firm and unremarkable; the atrial and ventricular septa were intact. No thickening of the ventricular walls was identified, with the left ventricle measuring 1.5 centimeters, the right ventricle measuring 0.2 centimeters and the interventricular septum measuring 1.4 centimeters. The aorta and its major branches arose normally, followed the usual course and were widely patent, free of significant atherosclerosis and other abnormality. The vena cava and its major tributaries returned to the heart in the usual distribution and were free of thrombi. The heart weighed 480 grams.

**RESPIRATORY SYSTEM:** The larynx and trachea were clear of debris and foreign material with no abnormalities and were continuous in the usual manner with the primary bronchi. The secondary and tertiary bronchi, likewise, were unremarkable. The mucosal surfaces were smooth, yellow-tan and unremarkable. The pleural surfaces were smooth, glistening and unremarkable bilaterally with the exception of anthracosis. The pulmonary parenchyma was the usual crepitant, red-purple parenchyma, exuding moderate amounts of frothy, bloody fluid; no evidence of natural disease or injury were noted. There was no evidence of consolidation or enlargement of the air spaces. The pulmonary arteries were normally developed, patent and without thrombus or embolus. The right lung weighed 860 grams; the left 900 grams.

**GASTROINTESTINAL SYSTEM:** The tongue exhibited no evidence of recent injury. The esophagus was lined by gray-white, smooth mucosa. The gastroesophageal junction was well-demarcated with no varices. The stomach was intact and continuous into a normal-appearing duodenum and small bowel. The gastric mucosa was tan-pink, intact and arranged in the usual rugal folds with no evidence of hemorrhage, ulceration or gastritis. The lumen was empty. No medication residues were identified. The small and large intestines occupied their usual positions within the peritoneal cavity and were unremarkable. The pancreas had a normal pink-tan lobulated appearance and the ducts were clear. The appendix was without note.

**HEPATOBILIARY SYSTEM:** The hepatic capsule was smooth, translucent, glistening and intact, covering dark red-brown, moderately congested parenchyma with no focal lesions noted. Cut surfaces showed the usual anatomic landmarks with a deep red, lobular parenchyma with no visible or palpable fibrosis. The gallbladder contained green-brown, mucoid bile; the mucosa was velvety and unremarkable. The extrahepatic biliary tree was patent, without evidence of calculi. The liver weighed 1960 grams.

**GENITOURINARY SYSTEM:** The renal capsules were smooth and thin, semi-transparent and stripped with ease from the underlying smooth, lobulated, red-brown cortical surfaces. The cortices were slightly congested and sharply delineated from the medullary pyramids, which were red-purple to tan and unremarkable. The calyces, pelves and ureters were unremarkable. The urinary bladder was empty; the mucosa was gray-tan and wrinkled. The testes, prostate gland and seminal vesicles were without note. The right kidney weighed 210 grams; the left 220 grams.

**ENDOCRINE SYSTEM:** The pituitary, thyroid and adrenal glands demonstrated the usual anatomic features without evidence of natural disease or injury. The parathyroid glands were inconspicuous.

**MUSCULOSKELETAL SYSTEM:** Muscle was otherwise uniformly red-brown with normal development. No atraumatic bone or joint abnormalities were noted.

**IMMUNOLOGIC SYSTEM:** The spleen had a smooth, blue-gray, intact capsule covering red-purple, moderately firm parenchyma with inconspicuous white pulp; the lymphoid follicles were unremarkable. The spleen weighed 370 grams. The thymus was atrophic and replaced by fat. The regional lymph nodes, where visualized, showed no notable pathologic changes.

## ANCILLARY STUDIES

TOXICOLOGY: Samples of blood and vitreous were submitted for toxicological analysis. See separate report.

## LOGISTICS

AUTHORIZATION: Code of Alabama (1975) Section 36-18-2; Lyle Harmon, District Attorney.

IDENTIFICATION: The body was identified by Phil Hill, Phil Hill Transport Service, to Katie Adams, Forensic Pathology Specialist.

PERSONS PRESENT: Tim Brown, Forensic Investigator, and Katie Anderton and Selina Mooney, Forensic Pathology Specialists, were present during the autopsy.

EVIDENCE: Photographs, fingerprints, palm prints, fingernail cuttings, tissues, blood and vitreous for toxicology and specimens for forensic biology were obtained.

# HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

| | |
|---|---|
| Case # | 19HM00153 |
| Name | Steven Eric Mullins |

The facts stated herein are correct to the best of my knowledge and opinion at the time of report completion.

Tissue evidence will be disposed 12 months from the date of the original report unless alternate arrangements are made prior thereto.

Toxicology evidence, not tested, will be disposed 24 months from the date of the examination unless alternate arrangements are made prior thereto.

Jonrika M. Malone, MD
State Medical Examiner

June 9, 2019
Date Signed

JMM/pab

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

2026 Valleydale Road
Hoover, AL 35244-2095

Telephone (205) 982-9292
Facsimile (205) 403-2025

## TOXICOLOGICAL ANALYSIS REPORT

Jonrika Malone, MD
Alabama Department of Forensic Sciences
716 Arcadia Circle
Huntsville, AL 35801-5908

**ADFS Case Number** 19HM00153
**Agency Case Number** 19-0233
**Case Date** 03/04/2019
**Date Completed** 04/04/2019
**Report ID** 120173830

**Subject** Mullins, Steven Eric

### Evidence analyzed (Including sub-items)

| Item | Specimen | Analyte | Result | Method(s) | Notes |
|------|----------|---------|--------|-----------|-------|
| 1H1 | Blood, chest | Ethanol | Negative | HS/GC | |
| 1H1-1H3 | Blood, chest | Dicyclomine | P | GC/MS | 45 |
| 1H1-1H3 | Blood, chest | Synthetic Cannabinoids | ND | LC/MS/MS | |

### Footnotes

| | |
|---|---|
| ND - | None detected |
| P - | Present but not quantified |
| 45 - | As of the date of this report, quantitative analysis for this analyte is not available from this laboratory. Should quantitative analysis be required, please contact the laboratory. |

### Comments

Evidence was received in a sealed plastic bag.

*Remaining evidence will be disposed 24 months from the date of this report unless storage space becomes limited or alternate arrangements are made prior thereto.*

04/03/2019

Kelly Hinds
Forensic Scientist



**ANAB**
ACCREDITED
FORENSIC TESTING
LABORATORY

ONE DEPARTMENT • ONE GOAL • EXCELLENCE
Accredited Laboratory System
*2003-Present*

Customer Satisfaction
Surveys are available at
www.adfs.alabama.gov

# ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

2026 Valleydale Road
Hoover, AL 35244-2095

Telephone (205) 982-9292
Facsimile (205) 403-2025

## EVIDENCE RECEIPT

**ADFS Case Number:** 19HM00153  **ID:** 2  **TYPE:** Death / Homicide  **COUNTY OF OFFENSE:** St. Clair  **LAB:** BH

**Agency Case Number:** 19-0233  **ORI NUMBER:** AL058CRRS  **REFERENCES:**

| CASE NAMES | TYPE | SEX | RACE | | STATUS |
|---|---|---|---|---|---|
| Steven Eric Mullins | D | M | W | | |
| Clarence Jackson | S | M | B | | |

### CHAIN OF CUSTODY

| | DATE | TIME |
|---|---|---|
| Secured at Birmingham Regional Laboratory Evidence Intake Area | 03/19/2019 | 2:13 pm |

**DESCRIPTION OF EVIDENCE:**
2 One brown paper bag identified to contain clothing

**SERVICE REQUESTED:**
FORENSIC BIOLOGY

**REPORT TO:**

Brian Casey
Alabama Department of Corrections
I&I Division
P. O. Box 668
Odenville, AL 35120

**SUBMITTED BY:**

Brian Casey
Alabama Department of Corrections

⚠ NOTICE
All items listed above are as described by the submitting agency and subject to verification upon inspection by the analyst. Evidence is processed in accordance with ADFS standard procedures. As a condition for submission of evidence to be worked by ADFS, the submitter accepts the agreement that deviation from test or calibration methods may occur when determined by ADFS to be technically justified, and that evidence may be processed at any ADFS facility or by a competent ADFS subcontractor.

Customer Satisfaction Surveys are available at www.adfs.alabama.gov

ADOC009187



**ALABAMA**
DEPARTMENT OF FORENSIC SCIENCES

2026 Valleydale Road
Hoover, AL 35244-2095

Telephone (205) 982-9292
Facsimile (205) 403-2025

## EXAMINATION OF BIOLOGICAL EVIDENCE

| | |
|---|---|
| **Brian Casey** | **ADFS Case Number** 19HM00153 |
| **Alabama Department of Corrections** | **Case Initiated Date** 03/19/2019 |
| **I&I Division** | **Start Date** 11/22/2019 |
| ▮▮▮▮▮▮▮▮▮▮ | **Report Date** 01/30/2020 |
| | **Report ID** 120175872 |
| | **Agency Case Number** 19-0233 |

**Suspect(s)**  Clarence Jackson
**Subject(s)**  Steven Eric Mullins

On March 19, 2019, the following evidence was received from Brian Casey of the Alabama Department of Corrections:

2.    One (1) brown paper bag labeled in part "brown boots" identified to be from Clarence Jackson containing:

    2A.    One (1) left boot

    2B.    One (1) right boot

On June 13, 2019, the following evidence was received from Kelli G. Hallman of the Alabama Department of Forensic Sciences Montgomery Medical Laboratory:

1B.    One (1) white envelope labeled in part "Steven Mullins" containing one (1) bloodstain card

## RESULTS:

The following item exhibited a positive result when tested for the presumptive presence of blood:
    Item 2B        right boot

The following item was examined and analyzed for the presence of blood; however, none was detected:
    Item 2A        left boot



ONE DEPARTMENT • ONE GOAL • EXCELLENCE
Accredited Laboratory System
*2003-Present*

Customer Satisfaction
Surveys are available at
www.adfs.alabama.gov

The following items were profiled utilizing the D3S1358, vWA, D16S539, CSF1PO, TPOX, Y indel, Amelogenin, D8S1179, D21S11, D18S51, DYS391, D2S441, D19S433, TH01, FGA, D22S1045, D5S818, D13S317, D7S820, SE33, D10S1248, D1S1656, D12S391, and D2S1338 PCR based DNA typing systems:

    Item 1B      DNA reference standard, Steven Mullins

    Item 2B1    swabbing, reddish-brown stain, right boot

**INTERPRETATION(S):**

The genetic traits detected in the swabbing of the reddish-brown stain on the right boot (Item 2B1) are a mixture of at least two (2) individuals, at least one (1) of which is male.

The major component of the genetic traits detected in the above item and the DNA profile of Steven Mullins (Item 1B) match.

This combination of genetic traits occurs in approximately 1 in 110 octillion (1 in 1.10E+29) random, unrelated Caucasian individuals, and 1 in 432 nonillion (1 in 4.32E+32) random, unrelated African-American individuals.

With a high degree of confidence, Steven Mullins, or his identical twin, is the source of the major component of the genetic traits detected in the swabbing of the reddish-brown stain on the right boot (Item 2B1).

Due to the complex and/or limited nature of the sample, the minor component of the genetic traits detected in the above item is not suitable for comparison purposes or for searching in the Combined DNA Index System (CODIS).

Any appropriate DNA profiles developed in this case have been entered into the Combined DNA Index System (CODIS) and will be searched on a routine basis. If any investigative leads are generated you will be notified in a separate memorandum.

The Alabama DNA Databank contains evidentiary samples, as well as biological samples from individuals who have been arrested and/or convicted of felony and specified misdemeanor offenses and who have provided samples for DNA testing in accordance with Code of Alabama 1975 Section 36-18-20 *et seq.*

No further biological analyses are being performed.

The evidence is ready to return to the investigative agency. Any remaining DNA extract(s) will be maintained by the laboratory.

ADFS Case Number 19HM00153
EXAMINATION OF BIOLOGICAL EVIDENCE
Report ID: 120175872

_Jacquelyn Jenkins_

_____

Jacquelyn Jenkins
Forensic Scientist



ALABAMA
**DEPARTMENT OF FORENSIC SCIENCES**

716 Arcadia Circle
Huntsville, AL 35801

Telephone (256) 539-1401
Facsimile (256) 533-2855

## REPORT OF AUTOPSY

**ADFS CASE NUMBER:**   19HM00153

**DATE:**   March 4, 2019
**TIME:**   1123 hours

**NAME(S):**   STEVEN ERIC MULLINS

**COUNTY OF DEATH:**   St. Clair

**DATE OF DEATH:**   March 1, 2019

**RACE:** W   **SEX:** M   **LENGTH:** 73 inches   **WEIGHT:** 186 pounds

### FINAL DIAGNOSES

I.   Complications of Multiple Sharp Force Injuries
  A.  Two stab wounds to the head with injury to soft tissues, skull and atlanto-occipital membrane
  B.  One stab wound to the right neck with injury to major right sided arteries, right first rib and soft tissues with extensive blood loss and medical intervention (medical record review)
    1.   Status post right neck exploration with Jackson-Pratt drain
    2.   Status post median sternotomy with pericardial drain
    3.   Status post right brachial exploration
    4.   Transection of right vertebral artery
    5.   Injury to right subclavian artery with stent repair
    6.   Physiologic cardiac tamponade from mediastinal hematoma
    7.   Pseudoaneurysms of the right vertebral and subclavian arteries
    8.   Bilateral multifocal cerebellar and brainstem (pons) strokes
    9.   Hemorrhagic shock
    10.  Cerebral edema
    11.  Right chest tube
  B.  One stab wound to the left shoulder with injury to soft tissues
  C.  One stab wound to the left hand with injury to soft tissues

II.  Blunt Force Injuries
  A.  Abrasions and contusions of the face and extremities, healing

**CAUSE OF DEATH:**      Complications of Multiple Sharp Force Injuries

**MANNER OF DEATH:**   Homicide

Case #      **19HM00153**
Name      **Steven Eric Mullins**

## EVIDENCE OF INJURY

I.      Multiple Sharp Force Injuries

      A.      Stab Wounds (2) to the Head

Situated on the posterior scalp were two (2) obliquely oriented, stab wounds, each measuring 3/4 inches in length. One stab wound was on the posterior right parietal scalp, located 2-1/2 inches below the top of the head and 2 inches right of the posterior midline with an approximate depth of penetration of 1/2 inch. The stab wound injured the scalp and soft tissues. It was directed from back to front and downward. The second stab wound was on the right occipital scalp, located 5 inches below the top of the head and 1 inch right of the posterior midline with an approximate depth of penetration of 2-1/2 inches. The stab wound injured the occipital scalp and bone, soft tissues of the posterior neck and atlanto-occipital membrane. It was directed from back to front, right to left and downward. Associated injuries included hemorrhagic wound tracks.

      B.      Stab Wound to the Neck

Situated on the right side of the neck in the posterior triangle was a stab wound, located 9 inches below the top of the head and 3-1/2 inches right of the anterior midline, which measured 3/4 inches in length. The stab wound injured the skin and soft tissues of the right side of the neck, right vertebral artery, posterior right first rib, right subclavian artery and mediastinal soft tissues. It was directed from back to front and downward with no other significant deviations and an approximate depth of penetration of 3 inches. Associated injuries included a hemorrhagic wound track and right hemothorax (600 milliliters).

      C.      Stab Wound to the Left Shoulder

Situated on the left anterior shoulder was a stab wound, located 12 inches below the top of the head and 6 inches left of the anterior midline, which measured 3/4 inches in length. The stab wound injured the skin and soft tissues of the anterior left shoulder. It was directed from left to right and downward with no other significant deviations and approximate depth of penetration of 1 inch. Associated injuries included a hemorrhagic wound track.

      D.      Stab Wound to the Left Hand

Situated on the lateral palm of the left hand was a stab wound, located 26 inches below the top of the shoulder and 1-1/2 inches left of the anterior midline of the hand, which measured 1 inch in length. The stab wound injured the skin and soft tissues of the lateral left hand. It was directed from front to back, left to right and upward with the hand in anatomic position. The approximate depth of penetration was 1-1/4 inches. Associated injuries included a hemorrhagic wound track.

II.      Blunt Force Injuries

Healing abrasions and contusions were noted to the face and upper and lower extremities.

Case #        19HM00153
Name        Steven Eric Mullins

## EXTERNAL EXAMINATION

The following excludes any previously described injuries.

BODY HABITUS:  The body was that of a well-developed, well-nourished, white male.  The body weighed 186 pounds, was 73 inches in height and appeared compatible with the reported ███████████

CONDITION OF THE BODY:  The unembalmed body was cool to the touch, having been refrigerated.  The body was preserved.  Rigor was absent.  Lividity was present and fixed on the posterior surface of the body, except in areas exposed to pressure.

IDENTIFYING MARKS: Tattoos were noted on the chest and upper extremities.  Needle tracks were not observed.

HEAD AND FACE:  The scalp was covered with brown-gray hair.  Facial hair consisted of a beard and mustache.  There were no facial fractures.

EYES:  The irides were blue.  The conjunctivae and sclerae were without hemorrhage, petechiae or jaundice.

NOSE:  The nose was symmetrical, without acute trauma.  The external nares were free of foreign material and abnormal secretions.  The nose was normally aligned.  The nasal skeleton was palpably intact.

MOUTH:  The lips were without injury.  The oral cavity was free of foreign material and abnormal secretions.  The frenula were without contusion, abrasion or laceration.  The teeth were natural and in good condition.

EARS:  The ears were well formed and symmetrically placed, without acute trauma.  The external auditory canals were free of foreign material and abnormal secretions.  The left earlobe was pierced.  The right earlobe was without note.

NECK:  Examination of the neck otherwise revealed symmetrical development.

CHEST:  The chest was otherwise symmetrical and the breasts unremarkable.  No injury of the ribs was evident externally.

ABDOMEN:  The abdomen was symmetrical and flat with no palpable organomegaly or fluctuance.  Healed surgical scars were not noted.

EXTERNAL GENITALIA:  The external genitalia were those of a normal adult male.  Two testes were palpable within the scrotal sac.

UPPER EXTREMITIES:  The upper extremities were otherwise normally aligned, without hesitation scars, needle tracks or fractures.  The hands were otherwise without note.  The fingernails were intact.

LOWER EXTREMITIES:  The lower extremities were otherwise normally aligned, without edema, changes of chronic venous stasis or fractures.  A scar was on the left leg.  The toenails were intact.  The soles of the feet were unremarkable.

BACK AND ANUS: Examination of the posterior torso showed a midline, normally aligned vertebral column and was otherwise without note. The anus was unremarkable.

## EVIDENCE OF MEDICAL INTERVENTION

The hands and feet were bound together with gauze, respectively. Ink writing was noted on the right arm. An electrocardiogram lead was on the back. A nasogastric tube was in the left naris, esophagus and stomach. Intravenous lines were in the bilateral forearms, left wrist and left inguinal region. A Foley catheter was in the urethra and bladder. Needle puncture sites were in the right antecubital fossa, left forearm, bilateral hands and right inguinal region. A right chest tube was in place. Stapled surgical incisions were present on the right neck, chest and right arm due to right neck exploration, median sternotomy and right brachial exploration, respectively. A Jackson-Pratt drain was in the right side of the neck. The pericardial sac was incised and a right pericardial drain to the exterior body was in place. A stent was in the right subclavian artery. A hospital band encircled the right wrist.

## INTERNAL EXAMINATION

The following excludes any previously described injuries.

SEROSAL CAVITIES: The body was opened by a thoraco-abdominal incision and the chest plate was removed. A serosanguineous pleural effusion was noted in the left chest cavity (50 milliliters). The pleural and peritoneal surfaces were otherwise smooth and glistening and the organs were anatomically disposed. An insignificant amount of clear free fluid was in the remaining body cavities. Otherwise, no adhesions or other collections of fluid were present in any of the body cavities. There was no internal evidence of blunt force or penetrating injury to the thoraco-abdominal region.

CENTRAL NERVOUS SYSTEM: The scalp was reflected. Reflection of the scalp otherwise showed the usual scattered reflection petechiae. The calvarium was intact. Removal of the calvarium showed the epidural space to be normal. The dura mater and falx cerebri were intact. There was no epidural or subdural hemorrhage present. The brain was soft and removed in the usual manner. The leptomeninges were thin, delicate, smooth and glistening and the gyri otherwise demonstrated their usual orientation and configuration with edema. The vessels at the base of the brain were intact and normally disposed and no anomalies were identified. The cranial nerves were intact and unremarkable.

The cerebral hemispheres were symmetrical. Serial sections of the brain showed the cerebrocortical ribbon to be intact with uniform normal thickness and a distinct gray-white junction. The ventricles were not dilated nor compressed and contained clear cerebrospinal fluid. The usual anatomic landmarks of the cerebrum, cerebellum, midbrain, pons and medulla otherwise demonstrated no abnormalities. Removal of the dura from the base of the skull showed the usual anatomic features without abnormalities. The pituitary fossa was unremarkable. The foramen magnum otherwise demonstrated the normal orientation and the first portion of the spinal cord, viewed through the foramen magnum, was unremarkable. The brain weighed 1710 grams.

ORGANS OF THE NECK: Examination of the soft tissues, including strap muscles, thyroid gland, large vessels, and cartilaginous and bony structures of the neck, including an otherwise complete layered neck dissection, demonstrated no atraumatic abnormalities with the usual anatomic relationships preserved. The hyoid bone and larynx were intact without intramuscular hemorrhages or fractures. The laryngeal

# HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

mucosa was smooth, tan-pink and glistening with no petechiae or ulcerations. The epiglottis was thin and delicate.

**CARDIOVASCULAR SYSTEM:**   The pericardial surfaces were smooth, glistening and otherwise unremarkable; the pericardial sac was free of significant fluid or adhesions. The epicardium was smooth, glistening and intact. The left anterior descending coronary artery demonstrated calcifications with 30 percent occlusion. The left circumflex coronary artery had 40 percent occlusion. The coronary arteries arose normally, followed the usual distribution and were otherwise patent, without evidence of significant atherosclerosis or thrombosis. The chambers and valves exhibited the usual size-position relationship and were unremarkable. The papillary muscles and chordae tendineae were intact. The valve cusps and leaflets were thin and delicate. The valves had the following measurements: tricuspid valve, 12 centimeters; pulmonic valve, 8 centimeters; mitral valve, 10 centimeters; aortic valve, 8 centimeters. The myocardium was dark red-brown, firm and unremarkable; the atrial and ventricular septa were intact. No thickening of the ventricular walls was identified, with the left ventricle measuring 1.5 centimeters, the right ventricle measuring 0.2 centimeters and the interventricular septum measuring 1.4 centimeters. The aorta and its major branches arose normally, followed the usual course and were widely patent, free of significant atherosclerosis and other abnormality. The vena cava and its major tributaries returned to the heart in the usual distribution and were free of thrombi. The heart weighed 480 grams.

**RESPIRATORY SYSTEM:**   The larynx and trachea were clear of debris and foreign material with no abnormalities and were continuous in the usual manner with the primary bronchi. The secondary and tertiary bronchi, likewise, were unremarkable. The mucosal surfaces were smooth, yellow-tan and unremarkable. The pleural surfaces were smooth, glistening and unremarkable bilaterally with the exception of anthracosis. The pulmonary parenchyma was the usual crepitant, red-purple parenchyma, exuding moderate amounts of frothy, bloody fluid; no evidence of natural disease or injury were noted. There was no evidence of consolidation or enlargement of the air spaces. The pulmonary arteries were normally developed, patent and without thrombus or embolus. The right lung weighed 860 grams; the left 900 grams.

**GASTROINTESTINAL SYSTEM:**   The tongue exhibited no evidence of recent injury. The esophagus was lined by gray-white, smooth mucosa. The gastroesophageal junction was well-demarcated with no varices. The stomach was intact and continuous into a normal-appearing duodenum and small bowel. The gastric mucosa was tan-pink, intact and arranged in the usual rugal folds with no evidence of hemorrhage, ulceration or gastritis. The lumen was empty. No medication residues were identified. The small and large intestines occupied their usual positions within the peritoneal cavity and were unremarkable. The pancreas had a normal pink-tan lobulated appearance and the ducts were clear. The appendix was without note.

**HEPATOBILIARY SYSTEM:**   The hepatic capsule was smooth, translucent, glistening and intact, covering dark red-brown, moderately congested parenchyma with no focal lesions noted. Cut surfaces showed the usual anatomic landmarks with a deep red, lobular parenchyma with no visible or palpable fibrosis. The gallbladder contained green-brown, mucoid bile; the mucosa was velvety and unremarkable. The extrahepatic biliary tree was patent, without evidence of calculi. The liver weighed 1960 grams.

**GENITOURINARY SYSTEM:**   The renal capsules were smooth and thin, semi-transparent and stripped with ease from the underlying smooth, lobulated, red-brown cortical surfaces. The cortices were slightly congested and sharply delineated from the medullary pyramids, which were red-purple to tan and unremarkable. The calyces, pelves and ureters were unremarkable. The urinary bladder was empty; the mucosa was gray-tan and wrinkled. The testes, prostate gland and seminal vesicles were without note. The right kidney weighed 210 grams; the left 220 grams.

Case #    19HM00153
Name     Steven Eric Mullins

**ENDOCRINE SYSTEM:** The pituitary, thyroid and adrenal glands demonstrated the usual anatomic features without evidence of natural disease or injury. The parathyroid glands were inconspicuous.

**MUSCULOSKELETAL SYSTEM:** Muscle was otherwise uniformly red-brown with normal development. No atraumatic bone or joint abnormalities were noted.

**IMMUNOLOGIC SYSTEM:** The spleen had a smooth, blue-gray, intact capsule covering red-purple, moderately firm parenchyma with inconspicuous white pulp; the lymphoid follicles were unremarkable. The spleen weighed 370 grams. The thymus was atrophic and replaced by fat. The regional lymph nodes, where visualized, showed no notable pathologic changes.

## ANCILLARY STUDIES

TOXICOLOGY: Samples of blood and vitreous were submitted for toxicological analysis. See separate report.

## LOGISTICS

AUTHORIZATION: Code of Alabama (1975) Section 36-18-2; Lyle Harmon, District Attorney.

IDENTIFICATION: The body was identified by Phil Hill, Phil Hill Transport Service, to Katie Adams, Forensic Pathology Specialist.

PERSONS PRESENT: Tim Brown, Forensic Investigator, and Katie Anderton and Selina Mooney, Forensic Pathology Specialists, were present during the autopsy.

EVIDENCE: Photographs, fingerprints, palm prints, fingernail cuttings, tissues, blood and vitreous for toxicology and specimens for forensic biology were obtained.

| Case # | 19HM00153 |
| --- | --- |
| Name | Steven Eric Mullins |

The facts stated herein are correct to the best of my knowledge and opinion at the time of report completion.

Tissue evidence will be disposed 12 months from the date of the original report unless alternate arrangements are made prior thereto.

Toxicology evidence, not tested, will be disposed 24 months from the date of the examination unless alternate arrangements are made prior thereto.

Jonrika M. Malone, MD
State Medical Examiner

June 9, 2019
Date Signed

JMM/pab

**HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY**

# ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

2026 Valleydale Road
Hoover, AL 35244-2095

Telephone (205) 982-9292
Facsimile (205) 403-2025

## TOXICOLOGICAL ANALYSIS REPORT

Jonrika Malone, MD
Alabama Department of Forensic Sciences
716 Arcadia Circle
Huntsville, AL 35801-5908

**ADFS Case Number** 19HM00153
**Agency Case Number** 19-0233
**Case Date** 03/04/2019
**Date Completed** 04/04/2019
**Report ID** 120173830

**Subject** Mullins, Steven Eric

### Evidence analyzed (Including sub-items)

| Item | Specimen | Analyte | Result | Method(s) | Notes |
|------|----------|---------|--------|-----------|-------|
| 1H1 | Blood, chest | Ethanol | Negative | HS/GC | |
| 1H1-1H3 | Blood, chest | Dicyclomine | P | GC/MS | 45 |
| 1H1-1H3 | Blood, chest | Synthetic Cannabinoids | ND | LC/MS/MS | |

### Footnotes

| | |
|---|---|
| ND - | None detected |
| P - | Present but not quantified |
| 45 - | As of the date of this report, quantitative analysis for this analyte is not available from this laboratory. Should quantitative analysis be required, please contact the laboratory. |

### Comments

Evidence was received in a sealed plastic bag.

*Remaining evidence will be disposed 24 months from the date of this report unless storage space becomes limited or alternate arrangements are made prior thereto.*

04/03/2019

Kelly Hinds
Forensic Scientist



**ANAB**
ACCREDITED
FORENSIC TESTING LABORATORY

ONE DEPARTMENT • ONE GOAL • EXCELLENCE
Accredited Laboratory System
*2003-Present*

Customer Satisfaction
Surveys are available at
www.adfs.alabama.gov

 

| CASE NUMBER | 19-0325 | ADOC 302 NUMBER | | | RESTITUTION AMOUNT | |
|---|---|---|---|---|---|---|
| DEFENDANT | | ADDRESS | | | SEX | RACE | DATE OF BIRTH |
| JACKSON, CLARENCE JR | | | | | | | |
| Co-DEFENDANT(s) | | ADDRESS | | | SEX | RACE | DATE OF BIRTH |
| | | | | | | | |
| COMPLAINANT | | ADDRESS | | | CITY / STATE | ███ |
| STATE OF ALABAMA | | 301 S. RIPLEY | | | MONTGOMERY, AL | |
| OFFENSE | | DAY | DATE | TIME | LOCATION | |
| MURDER | | TUESDAY | 2/27/19 | 1205 HOURS | ST. CLAIR CORRECTIONAL FACILITY | |
| ARRESTED BY | | DAY | DATE | TIME | LOCATION | |
| | | | | HOURS | | |

███████████████████████████

| TESTIMONY | LT. PRICE RECEIVED INMATE MULLINS DYING DECLARATION; INMATE THOMAS WITNESS THE MURDER OF INMATE MULLINS |
|---|---|
| ELEMENTS | On February 26, 2019, Inmate Clarence Jackson, with intent to cause the death of Inmate Stephen Mullins, caused the death of Inmate Mullins, violating Ala. Code 1975 13A-6-2. |
| PROOF OF CASE | Physical Evidence / Oral Testimony |
| DATE SENT TO DISTRICT ATTORNEY | | INVESTIGATOR / CASE AGENT | B. CASEY |

AD0C009199

FRONT
# ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

ONLY CONFIDENTIAL—ATTORNEY'S EYES ONLY

| 2 Date of Report | 3 Time of Report | ☒ AM ☐ PM ☐ MIL | 4 Type Report: ☐ Incident ☒ Offense ☐ Supplement | 5 Supplement Dat | | Suffix |
|---|---|---|---|---|---|---|
| 3  19  2019 | 7 : 11 | | | | | 000 |

☒ No
☐ Yes

| 10 Type of Incident or Offense | | 11 Degree | 12 UCR Code | 13 State Code/Local Ordinance |
|---|---|---|---|---|
| Murder | ☒ Felony ☐ Misdemeanor ☐ Attempted ☒ Completed | N/A | 906 | 13A-6-2 |

| 14 Type of Incident or Offense | | 15 Degree | 16 UCR Code | 17 State Code/Local Ordinance |
|---|---|---|---|---|
| | ☐ Felony ☐ Misdemeanor ☐ Attempted ☐ Completed | | | |

**EVENT**

| 18 Place of Occurrence | ☐ Check here if event occurred at victim's residence |
|---|---|
| ST. CLAIR CORRECTIONAL FACILITY
SPRINGVILLE, AL 35146 | |

If offense occurred at victim's residence, then only the approximate location should be listed in this section. (For example, a block number should be entered.) If the offense occurred elsewhere, then the specific address should be listed here.

Victim Demographics (Where victim is an individual)

| 19 Sex | 20 Race | 21 Ethnicity | 22 Multi |
|---|---|---|---|
| ☒ M ☐ F | ☒ W ☐ A ☐ B | ☐ Hispanic ☒ Other | ☐ Victi ☐ LE O |

28 Domestic Violence

| 24 First Offender Suspected of Using | 25 Gang | 26 Hate Bias | 27 Bias Code |
|---|---|---|---|
| ☐ Alcohol ☐ Drugs ☐ Computer Equipment ☐ N/A | ☐ Juvenile Gang ☐ Adult Gang ☒ None/Unknown | ☐ Yes ☒ No | |

| 29 Point of Entry | 30 Method of Entry | 31 Local Use | 32 Lighting | 33 Weather | 34 Location Type | | 17 Liquor Store |
|---|---|---|---|---|---|---|---|
| ☐ Door ☐ Roof ☐ Window ☐ Other | ☐ Forcible ☐ Attempted Forcible ☐ No Force | | ☐ 1 Natural ☐ 2 Moon ☐ 3 Artificial Exterior ☐ 4 Artificial Interior ☐ 5 Unknown | ☐ 1 Clear ☐ 2 Cloudy ☐ 3 Rain ☐ 4 Fog ☐ 5 Snow ☐ 6 Hail ☐ 7 Unknown | ☐ 01 Terminal ☐ 02 Bank ☐ 03 Bar ☐ 04 Church ☐ 05 Commercial ☐ 06 Construction ☐ 07 Conv Store ☐ 08 Dept Store | ☐ 09 Drug Store ☐ 10 Field/Woods ☐ 11 Govt/Public Building ☐ 12 Supermarket ☐ 13 Highway/Street ☐ 14 Hotel/Motel ☒ 15 Jail/Prison ☐ 16 Lake/Waterway | 18 Parking Lot/Garage 19 Storage Facility 20 Residence/Home 21 Restaurant 22 School/College 23 Service/Gas Station 24 Specialty Store 25 Other (Unknown) |

| 35 Occurred from MM/DD/YY | 36 Time of Event | 37 Day of Week |
|---|---|---|
| 2  27  2019 | 7 : 15 ☒ AM ☐ PM ☐ MIL | S M T W ☒ T F S |

| 38 Occurred to MM/DD/YY | 39 Time of Event | 40 Day of Week | 41 # Premises Entered (Burglary) |
|---|---|---|---|
| | : ☐ AM ☐ PM ☐ MIL | S M T W T F S | 0 |

| 42 Type Criminal Activity | 43 Victim Type |
|---|---|
| ☐ Buying/Receiving ☐ Distributing/Selling ☐ Operating/Promoting ☐ Transporting/Importing ☐ Exploiting Children ☐ Cultivating/Manu ☐ Possessing/Concealing ☐ Using/Consuming | ☒ Individual ☐ Financial (Bank) ☐ Religious Org ☐ Business ☐ Government ☐ Society |

**PROPERTY**

| 44 Loss Code | 45 Property Code | 46 Qty | 47 Property Description
Include Make, Model, Size Type, Serial #, Color, Drug Type, Drug Qty, Etc. | 48 Dollar Value | | 49 Recovered | |
|---|---|---|---|---|---|---|---|
| | | | | Stolen | Damaged | Date | Value |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

☐ Continued on Supplement

**Loss Code**
(Enter letter in loss code column)
S Stolen    B Burned
R Recovered    F Forged/Counterfeited
D Damaged/ Destroyed    N None
C Confiscated/ Seized

**Property Code**
(Enter # in property type column)
01 Aircraft
02 Alcohol
03 Autos
04 Bicycles
05 Buses
06 Clothes
07 Computer
08 Consumables
09 Credit Card
10 Drugs
11 Drug Equip
12 Farm Equip
13 Firearms
14 Gambling Equipment
15 Heavy Construction
16 Household Goods
17 Jewelry
18 Livestock
19 Merchandise
20 Money
21 Negotiable Instrument
22 Non-negotiable Instru
23 Office Equipment
24 Other Motor Vehicle
25 Purse/Wallet
26 Radios/TV/VCR
27 Recordings
28 RV's
29 Structure - Single Occupancy Dwelling
30 Structure - Other Dwelling
31 Structure - Other Commercial
32 Structure - Industrial/ Manufacturing
33 Structure - Public/Community
34 Structure - Storage
35 Structure - Other
36 Tools - Power/Hand
37 Trucks
38 Vehicle Parts/Accessories
39 Watercraft
77 Other

**VEHICLES**

| 50 Stolen Vehicle Only | Area Stolen | ☐ Residence | 51 Ownership verified by: | 52 Veh. Categories |
|---|---|---|---|---|
| | ☐ Business ☐ Rural | | ☐ Tag Receipt ☐ Title ☐ Bill of Sale ☐ Other | ☐ Recovered ☐ Victim's Vehicle ☐ Abandoned ☐ Stolen ☐ Suspect's Vehicle ☐ Unauthorized Use |

| 53 Vehicle Year | 54 Vehicle Make | 55 Vehicle Model | 56 Number Veh Stolen | 57 Vehicle Description |
|---|---|---|---|---|
| | | | 0 | |

| 58 Vehicle Style | 59 Vehicle Color Top / Bottom | 60 License | 61 LST | 62 LIY | 63 Tag Color |
|---|---|---|---|---|---|
| | | | | | |

| 64 Vehicle VIN Number | 65 Warrant Signed ☐ Yes ☐ No | Warrant Number |
|---|---|---|

| Motor Vehicle Recovery Only Required For 24XX UCR Code | 66 Stolen in your jurisdiction? ☐ Yes ☐ No  Where? | 67 Recovered in your jurisdiction? ☐ Yes ☐ No  Where? |
|---|---|---|

**ADMINISTRATION**

| 68 Case # | 69 SFX | 70 Case # | 71 SFX | 72 Case # | 73 SFX |
|---|---|---|---|---|---|

| 74 Case Status | 75 Multiple Cases Closed Listed Above ☐ Multiple Cases Closed Listed On Supplement ☐ | |
|---|---|---|
| ☒ 1 Pending ☐ 2 Inactive ☐ 3 Closed | | |

| 77 Case Disposition | 78 Exceptional Clearance (Check One) | 79 Reporting Officer |
|---|---|---|
| ☐ Cleared by Arrest (Juv) ☐ Cleared by Arrest (Adult) ☐ Unfounded ☐ Exceptional Clearance ☐ Administratively Cleared | ☐ A Suspect/Offender Dead ☐ B Prosecution Declined/Other Prosecution ☐ C Extradition Denied ☐ D Victim Refused to Cooperate ☐ E Juvenile (No Custody) ☐ F Death of Victim | Brian M. Casey |

| 76 Entered NCIC/ACJIC | 80 Assisting Officer | Officer ID Number |
|---|---|---|
| ☐ Yes ☒ No | | |

| Date (MM/DD/YY) | 81 Supervisor Approval | Officer ID Number |
|---|---|---|

NIC/AIN #: _____

| 82 Watch Commander | Officer ID Number |
|---|---|

AD0C009200

ACJIC -06-06

THIS SIDE OF FORM IS CONFIDENTIAL UNLESS RELEASED AT THE

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

| Incident/Offense Report - Continued | 83 Date of Report (MM/DD/YY) 3  19  2019 | 84 Time of Report 7 : 11 | ☒ AM ☐ PM ☐ MIL | | 86 Suffix 000 | 87 | ☐ Offender ☐ Suspect ☐ Missing Person | ☐ Check if Multiple |
|---|---|---|---|---|---|---|---|---|

| 88 Reported By (Last, First, Middle Name) ☐ Victim Or | | 92 Work Phone |
|---|---|---|
| | | 93 Home Phone |

**VICTIM INFORMATION**

| 94 Victim # 1 | 95 Victim (Last, First, Middle Name) **Mullins, Steven Eric** | | 98 Home Phone | 99 Work Phone |
|---|---|---|---|---|
| | | | | 100 Other Phone |
| 101 Employer/School | | 102 Occupation | 104 Work Phone |
| | | | 105 Other Phone |

| 106 Sex ☒ M ☐ F | 107 Race ☒ W ☐ A ☐ B | ☒ English ☐ Spanish ☐ Other | 108 | 109 HGT 6' 1" | 110 WGT 195 | | 114 Complainant SSN |
|---|---|---|---|---|---|---|---|

| ☐ Multiple Victims ☐ LE Officer | 115 | 116 Ethnicity ☐ Hispanic ☒ Other | 117 Injury ☒ Yes ☐ No | 118 Offender known to victim? ☐ Yes ☒ No | 119 Victim was? (Explain Relationship.) **Acquaintance** | 120 Relationship Code **AQ** |
|---|---|---|---|---|---|---|

| 121 Weapons Used ☐ Firearm ☒ Knife | ☐ Hands, Fist, Feet, Voice, etc. ☐ Other Dangerous | 122 Description of Weapons/Firearms/Tools Used in Offense Describe: **INMATE MADE KNIFE** | ☐ Handgun ☐ Rifle ☐ Shotgun ☐ Unknown |
|---|---|---|---|

| 123 Place of Occurrence (Enter exact street address here.) **ST. CLAIR CORRECTIONAL FACILITY SPRINGVILLE, AL 35146** | 124 Type Injury | ☐ None ☐ Broken Bones | ☐ Internal Injury ☒ Severe Laceration | ☐ Minor Injury ☐ Other Major Injury | ☐ Loss of Teeth ☐ Unconscious | 125 Sector |
|---|---|---|---|---|---|---|

| 126 Circumstances: Homicide & Assault **H25** | 128 Assault ☐ Simple ☒ Aggravated | 129 Treatment for Assault? ☐ Yes ☒ No | 130 Verify for Rape Exam? | 131 Treatment for Rape? ☐ Yes ☐ No |
|---|---|---|---|---|
| 127 Location: Rape **0** | | | | |

**SUSPECT INFORMATION**

| 132 Off # (S)1 | 133 Name (Last, First, Middle) **Jackson, Clarence Dwight** | 134 SFX | 135 Alias | | 137 Race ☐ W ☐ A ☒ B | 138 Sex ☒ M ☐ F |
|---|---|---|---|---|---|---|

| | | | | 142 HGT 5' 6" | 143 WGT 135 | 144 Ethnicity ☐ Hispanic ☐ Other | ☐ Spanish ☐ Other |
|---|---|---|---|---|---|---|---|

| 146 Probable Destination | 147 Eye **Brown** | 148 Hair **Black** | 149 Complexion | 150 Armed ☐ Yes ☒ No |
|---|---|---|---|---|

| 151 Clothing | 152 ☐ Scars ☐ Marks ☐ Tattoos ☐ Amputations | 153 ☐ Arrested ☐ Wanted ☐ Dual Arrest (Domestic Violence) |
|---|---|---|

| 154 Off # | 155 Name (Last, First, Middle) | 156 SFX | 157 Alias | 158 Social Security # | 159 Race ☐ W ☐ A ☐ B | 160 Sex ☐ M ☐ F | 161 Date of Birth | 162 Age |
|---|---|---|---|---|---|---|---|---|

| 163 Address (Street, City, State, Zip) | 164 HGT | 165 WGT | 166 Ethnicity ☐ Hispanic ☐ Other | 167 Language ☒ English ☐ Spanish ☐ Other |
|---|---|---|---|---|

| 168 Probable Destination | 169 Eye | 170 Hair | 171 Complexion | 172 Armed ☐ Yes ☐ No |
|---|---|---|---|---|

| 173 Clothing | 174 ☐ Scars ☐ Marks ☐ Tattoos ☐ Amputations | 175 ☐ Arrested ☐ Wanted ☐ Dual Arrest (Domestic Violence) |
|---|---|---|

**WITNESSES**

| Name (Last, First, Middle) | Sex | Race | Date of Birth | Address | Contact Telephone Numbers | |
|---|---|---|---|---|---|---|
| 176 | 177 ☐ M ☐ F | 178 ☐ W ☐ A ☐ B ☐ I | 179 | 180 | 181 Home | 182 Work |
| | | | | | | 183 Other |
| 184 | 185 ☐ M ☐ F | 186 ☐ W ☐ A ☐ B ☐ I | 187 | 188 | 189 Home | 190 Work |
| | | | | | | 191 Other |
| 192 | 193 ☐ M ☐ F | 194 ☐ W ☐ A ☐ B ☐ I | 195 | 196 | 197 Home | 198 Work |
| | | | | | | 199 Other |
| 200 Witness # 1 SSN | | | 201 Witness # 2 SSN | | 202 Witness # 3 SSN | |

**NARRATIVE**

203

On February 26, 2019, Inmate Clarence Jackson, with intent to cause the death of Inmate Stephen Mullins, caused the death of Inmate Mullins, violating Ala. Code 1975 13A-6-2.

☐ Continued on Supplement

| 204 Continued on Supplement ☒ Yes ☐ No | 205 Assisting Agency ORI | 206 Assisting Agency Case Number | 207 SFX | 208 Warrant Signed ☐ Yes ☐ No Warrant # | 209 Add. Cases Closed Narrative ☐ Y ☐ N |
|---|---|---|---|---|---|

| I hereby affirm that I have read this report and that all the information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying the agency if any stolen property or missing person herein reported is returned. | 210 Signature | 211 Local Use AD0C009291 |
|---|---|---|

ACJC -06-06