FILED

2025 Mar-14 PM 11:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| LORI GUY, as representative of the ESTATE OF STEVEN MULLINS | ) ) ) ) | Honorable Judge Annemarie Carney Axon |
| Plaintiff, | ) ) | Case No.: 4:21-cv-00264-ACA |
| v. | ) ) ) ) | |
| JEFFERSON DUNN, et al., | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

# PLAINTIFF LORI GUY'S MOTION TO STRIKE DEFENDANTS' EXPERT OPINIONS FROM THEIR SUMMARY JUDGMENT BRIEFING

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

LEGAL STANDARD ....................................................................................... 2

ARGUMENT AND AUTHORITIES ...............................................................4

    A. ADOC Defendants provide a recitation of expert opinions that does not follow the Court's order. ......................................................................................

    B. Mark Inch's expert opinions should be excluded at summary judgment. .......5

    C. Kevin Myers' opinions should be excluded at summary judgment..................8

    D. Brian Zawilinski's opinions should be excluded at summary judgment. ......18

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107 (S.D. Fla. 2024) ...........................14

*Broussard v. Maples*, 535 F. App'x 825 (11th Cir. 2013)........................................................2

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe*, 402 F.3d 1092 (11th Cir. 2005)...............3, 8

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ......................................................3

*D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360 (N.D. Ga. 2021) ....................................................................................................................17

*Distributor Res. Mgmt, Inc. v. Peacock*, 2012 WL 2930787 (N.D. Ala. July 13, 2012))........5

*Feliciano v. City of Miami Beach*, 844 F. Supp.2d 1258 (S.D. Fla. 2012)...............................3

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ................................................................14

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 684183, (N.D. Fla. Feb. 11, 2021).................................................................................................4

*In re Egidi*, 571 F.3d 1156 (11th Cir. 2009) .............................................................................5

*Jones v. Otis Elevator Corp.*, 861 F.2d 655 (11th Cir. 1988) ..........................................11, 15

*Kilpatrick v. Breg, Inc.,* 613 F.3d 1329 (11th Cir. 2010) ....................................................3, 16

*Powrzanas v. Jones Utility & Contracting Co. Inc.*, 834 F. App'x 500 (11th Cir. 2020) .........5

*Schoen v. State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 1323 (S.D. Ala. 2022) .....4, 5, 9. 10

*Thompson v. Alabama*, 65 F.4th 1288 (11th Cir. 2023) ...........................................................5

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ....................................................2, 3

## STATUTES AND RULES

Fed. R. Evid. 702 ....................................................................................1, 2, 5, 8, 11, 13, 15

## INTRODUCTION

Defendants rely very little on the opinions of their three retained experts in support of summary judgment. The Facility Defendants and ADOC Defendants hardly reference any retained expert testimony in their statements of fact, nor do they point to any expert opinions in their discussions of liability of the Defendants. The ADOC Defendants also include an improper summary of the defense experts' opinions in a standalone section in the middle of their brief, but do not claim to be presenting undisputed facts, and do not appear to be relying on these opinions for purposes of summary judgment. This is likely an acknowledgement that these defense expert opinions are vehemently disputed and controverted by the evidence in this case, as well as the reasoned opinions of Plaintiff's retained expert, and as such cannot support any argument that Defendants are entitled to summary judgment. For this reason alone, the defense expert opinions can be disregarded by the Court.

Yet to the extent the Court views any references to defense retained experts as pertinent to adjudication of the summary judgment motions, Defendants' experts' opinions do not satisfy the admissibility requirements of Federal Rule of Evidence 702 and should be stricken for that additional reason. As discussed in greater detail below, these opinions suffer from a variety of defects, including that the experts lack the necessary expertise to reach the opinions provided; that the experts failed to use any reliable or reasonable methodology (or sometimes any methodology at all) or to rationally connect their opinions to the facts in this case; and that the opinions are

1

unhelpful to the jury either because they are irrelevant or because they are squarely within the understanding of a layperson. Given the Court's important role as a gatekeeper of unsound expert opinions, this Court must strike the expert opinions discussed below.

## LEGAL STANDARD

Expert opinions may not be used to support a party's claims or defenses either at summary judgment or at trial unless they meet the standards set out in Rule 702 of the Federal Rules of Evidence. See *Broussard v. Maples,* 535 F. App'x 825 (11th Cir. 2013). "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert [scientific and technical] evidence." *United States v. Frazier*, 387 F.3d 1244, 1250 (11th Cir. 2004). This is a critically important function. *Id.* To determine whether an expert's testimony is admissible, district courts consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* The proponent of the expert testimony bears the burden of establishing each of these three requirements–qualification, reliability, and helpfulness. *Id.*

To determine whether an expert is qualified, a court should "examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Feliciano v. City of Miami Beach*, 844 F. Supp.2d 1258, 1262 (S.D. Fla. 2012).

To establish reliability, a court considers the following non-exhaustive factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)). "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for that opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261. A court should exclude expert opinions that are connected to the underlying evidence only by ipse dixit, or are otherwise "imprecise and unspecific." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe*, 402 F.3d 1092, 1111 (11th Cir. 2005).

Finally, an opinion assists the trier of fact if it "concerns matters that are beyond the understanding of the average lay person"; in contrast, an opinion "will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1252-63; *accord Cook*, 402 F.3d at 1111. An expert may not offer opinions that are legal conclusions. *Cook*, 402 F.3d at

3

1112 n.8. An expert is not permitted to "simply parrot[] another individual's out-of-

court statement, rather than conveying an independent judgment that only incidentally

discloses the statement to assist the jury in evaluating the expert's opinion." *Schoen v.*

*State Farm Fire & Cas. Co.*, 638 F. Supp. 3d 1323, 1334 (S.D. Ala. 2022) (quoting *In re*

*3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 684183, at *2

(N.D. Fla. Feb. 11, 2021)).

## ARGUMENT AND AUTHORITIES[1]

### I. ADOC Defendants provide a recitation of expert opinions that does not follow the Court's order.

The ADOC Defendants provide a section of their brief called "Expert

Testimony." This section appears to provide background on Defendants' experts and

ADOC Defendants' explanation of their experts' opinions. This section does not set

out facts in line with the Court's order (ECF 85 at 14-16), nor do the ADOC

Defendants cite to this section or the expert opinions discussed therein elsewhere in

their brief. To the extent ADOC Defendants intend to argue in reply that these

opinions support summary judgment on behalf of any individual Defendant in some

way, any such argument has been forfeited and waived because it was not made as

such in ADOC Defendants' opening brief in support of any Defendants' claim to

---

[1] To serve the purposes of efficiency and conservation of resources, Plaintiff moves to strike here only opinions of Defendants' experts that were actually discussed in Defendants' summary judgment briefing. Pursuant to the parties' agreement and joint understanding, as emailed to the Court on February 17, 2025, Plaintiff reserves the right to raise prior to trial in a motion *in limine* broader arguments to exclude Defendants' experts' testimony at trial.

4

summary judgment. *Powrzanas v. Jones Utility & Contracting Co. Inc.*, 834 F. App'x 500, 510 n.9 (11th Cir. 2020);  *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009); *Distributor Res. Mgmt, Inc. v. Peacock*, 2012 WL 2930787 (N.D. Ala. July 13, 2012). Moreover, Defendants do not and cannot argue that Defendants' expert opinions are undisputed—these opinions are clearly controverted by Plaintiff's statement of facts and supporting evidence, as well as the opinions of Plaintiff's expert Dan Pacholke (ECF 363; ECF 160-36).[2] As such, the defense expert opinions cannot establish a basis for summary judgment, which requires Defendants and the Court to take the evidence in the light most favorable to Plaintiff. *See Thompson v. Alabama*, 65 F.4th 1288, 1297 (11th Cir. 2023). Finally, many if not all of the opinions discussed in this section should be excluded under Federal Rule of Evidence 702.

## II.    Mark Inch's expert opinions should be excluded at summary judgment.

Defendants discuss or rely on several of Inch's opinions at summary judgment that do not satisfy Rule 702's standards. First, ADOC Defendants' cite to Inch's recitation of other documents; but Inch cannot be used simply to parrot the information from other evidence. *Schoen*, 638 F. Supp. 3d at 1334.  ADOC Defendants' Fact No. 82 cites Inch's recitation of Dunn's own testimony that during his tenure, the ADOC budget increased. ECF 166 at 20-21 ¶ 82; ECF 160-30. To the

---

[2] For example, ADOC Defendants assert that Inch concluded that "St. Clair staff responded quickly and appropriately to the discovery of the inmate-on-inmate assaults at issue in these cases." *But see, e.g.*, ECF 363 ¶¶ 80-84, 89, 99, 103-112, 160 (Defendants should have taken Mullins out of general population, investigated the attack, searched for the knife, and put Jackson in restrictive housing)

extent Defendants want to introduce evidence from documents or testimony of non-experts in evidence, they are required to cite to that evidence. This is not a proper subject of expert testimony. These citations should be stricken.

ADOC Defendants also lay out several broad opinions about Inch that are not based on any sound methodology and therefore must be excluded as unreliable. For example, Inch opines that staffing levels, inmate population levels, inmate supervision, unauthorized movement, classification and housing policies, and contraband search protocols did not cause Mullins or Andrews's assault. ECF at 166 at 31. But in preparing his report and reaching his opinions, Inch did not review the incident reports or witness statements related to Mullins or Andrews's assault (ECF 347 at 80:5-81:1); did not do any analysis of unauthorized movement at St. Clair in 2018 and early 2019 and whether staff were complying with policies related to inmate movement control (ECF 347 at 90:3-8, 91:206); did not review or rely on the St. Clair classification manual and instead relied on deposition testimony from defendants that the manual *exists and was used* (ECF 347 at 92:16-93:3); and did not review any ADOC or St. Clair records documenting contraband levels or reflecting contraband searches at the facility, instead offering an opinion about contraband that was based solely on defendants' self-serving deposition testimony. ECF 347 at 84:9-25. Inch's failure to review the underlying (and available) records relating to the conditions, policies, and practices at St. Clair undermines any claim that his opinions are reliable or based on any sound methodology. Rather, as Inch admits, he was simply crediting and relying

on the testimony of Defendants themselves. ECF 347 at 150:10-151:23. This opinion must be excluded.

Similarly, Inch opines that "Dunn identified challenges facing the ADOC and responded reasonably, by developing a comprehensive strategic plan and taking concerted actions to implement his plan to realize long-term positive change for ADOC" and that "The ADOC Officials responded reasonably to the risk of violence at St. Clair by repairing or replacing damage and aging infrastructure, establishing controlled movement measures, and taking various steps to addressing staffing challenges." ECF 166 at 30. But Inch did not review documents reflecting assessments or data about the conditions at St. Clair in 2018 and early 2019 or any incident reports (or compilations of incident reports), including PREA Audit reports, the 2018 ASCA audit report, the annual St. Clair Institutional Vulnerability Analysis, reports of assaults and the spreadsheet of incident reports, or contraband search results. ECF 160-30 at 61-63.

Indeed, Inch's report does not contain any opinions about the underlying conditions and how the conditions affect risks of violence at St. Clair. ECF 160-30. For example, he did not consider or reach opinions on whether staff were complying with the classification manual requirements (ECF 347 at 93:-9:21), or whether staff were complying with policies including relating to the Special Safety Unit (*id.* at 125:11-127:1). Nor did he provide any opinions or analysis about the levels of violence, uncontrolled movement, or contraband at St. Clair in 2018 and early 2019,

or consider underlying data or reports regarding these issues. *Id.* at 76:9-77:1, 83:17-84:25, 90:3-15; ECF 185-31. As such, any opinion that Dunn or any other Defendant acted reasonably in response to the conditions (including levels of violence and contraband, and lack of policy enforcement) at St. Clair is unreliable and not based on any sound methodology or reasoned assessment of the record. *See Cook*, 402 F.3d at 1111. Inch cannot provide anything more than a conclusory, unsupported conclusion that Defendants acted reasonably in response to risks and conditions he did not assess, consider, or review data about. *Id.* This opinion must be stricken.

Additionally, Inch opines that "ADOC operates under a robust set of policies and procedures guiding the practice of every individual from Commissioner to correctional officer within the ADOC." ECF 192 at 27 (ECF 160-30 at 46-49). But Inch did not do any methodological or systemic analysis of line staff compliance with St. Clair's written policies, nor did he consider reports or data about compliance with policy. ECF 347 at 86:1-87:21, 90:10-92:15; ECF 160-30 at 60-63 (material reviewed, omitting PREA and ASCA audits, vulnerability analysis reports, monitoring reports, incident report spreadsheet and incident reports relating to other incidents, QIT meeting minutes, security team meeting minutes). Accordingly, there is no reasonable basis for this opinion, and it should be excluded as unreliable.

## III.    Kevin Myers's opinions should be excluded at summary judgment.

Defendants rely on several of Myer's opinions at summary judgment that do not satisfy Rule 702's standards. First, the ADOC Defendants' Fact Nos. 19, 22, 26,

and 30 cite information purportedly from Mr. Mullins's underlying incarceration records (ECF 166 at 10-12), but none of those are the proper topic of expert opinion. *Schoen*, 638 F. Supp. 3d at 1334. Myers cannot be used simply to parrot factual information from other sources, particularly when Defendants do not include the underlying evidence in the first place. To the extent Defendants wanted to introduce evidence from documents or testimony of non-experts in evidence, they were required to cite to that evidence.  These expert citations are improper use of expert testimony, and should thus be stricken.

For example, in Fact No. 19, Defendants cite Myers's report for the proposition that, on occasion 16 years prior to Mr. Mullins's murder at St. Clair, he "assaulted another inmate for stealing sandwiches from the kitchen," without presenting the Court with the underlying ADOC documentation of this incident. ECF 166 at 10. This is not the subject of expert testimony or opinion, as Myers is not presenting any expert opinion but rather purporting to parrot underlying facts from another source. *Schoen*, 638 F. Supp. 3d at 1334. Moreover, Myers does not provide an accurate characterization of the incident: the underlying records describe Mullins being present for an altercation primarily between two other inmates, in which all three were charged with fighting without a weapon. ECF 183-1 at 116. Further, neither Myers's report nor the underlying incident report indicate that Mullins assaulted another inmate on the date in question "for stealing sandwiches from the kitchen." ECF 183-1 at 116; ECF 160-32 at 15.

9

The remaining facts, as well (Nos. 22, 26, and 30) are also improper uses of expert opinion pursuant to *Schoen* and thus Defendants' citation to the expert report should be stricken. Defendants failed to put the underlying records before the Court, and they cannot make up for that deficiency by citing to an expert's report.

Stunningly, Defendants also cite Myers's report in the *Ezell* matter (ECF 160-31) in their *Guy* statement of facts at Fact Nos. 16, 66, 101, 102 & 106.  But Myers expressly stated that he did not offer his *Ezell* opinions in *Guy* (ECF 351 at 67:25-68:1), and his *Guy* report purports to be the entirety of his opinions in this case (ECF 160-32 at 5). The defense attempt to now use the *Ezell* expert report as evidence in *Guy* is improper and should be disallowed. Plaintiff did not have sufficient notice that Myers's opinions in *Ezell* would be used in *Guy*, as Myers stated the opposite at his deposition. As such, facts 16, 66, 101, 102, and 106 should be stricken to the extent they rely on Myers's *Ezell* report in this case (*Guy*).

The citation to Myers's *Ezell* report in Fact No. 102 is additionally unreliable. Defendants cite Myers for the proposition that, "[c]orrectional officers received corrective action for failing to secure doors and locks and received reminders from facility leadership to keep housing unit doors secure to control inmate movement." ECF 166 at 24.  Yet at his deposition, Myers admitted that he did not look at "any documents relating to discipline of ADOC employees to prepare [his] opinions in this case" or any incident reports documenting potential rule violations by ADOC employees, and did not ask to review any disciplinary records from St. Clair. ECF 351

10

at 187:8-24. This methodology is categorically unsound. *See Jones v. Otis Elevator Corp.*, 861 F.2d 655, 662-63 (11th Cir. 1988) ("[R]elevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation."); Fed. R. Evid. 702 (adv. cmte. note to 2023 amendments) (confirming that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," go to admissibility, not merely to weight).

The citation to Myers' *Ezell* report in Fact No. 106, too, is additionally unreliable. Defendants cite Myers's *Ezell* report for the proposition that "St. Clair's classification system complies with nationally accepted standards." ECF 166 at 25. Yet during his deposition, Myers admitted that he did not do any analysis of classification records to assess whether the classification manual was being followed, other than looking at the classification records of Mullins and his assailant Clarence Jackson. ECF 351 at 88:9-90:5; *id.* at 201:21-202:12 (Myers did not conduct any analysis of how SOP 126 was implemented aside from looking at the classification decisions of the underlying assailant and victim); *id.* at 204:19-25 (Myers did not look at any documents relating to Special Safety Unit placements at St. Clair in 2018 and early 2019); *id.* at 76:20-25 (Myers did not do any analysis of line staff compliance with St. Clair's written policies other than as expressly stated); ECF 160-32 at 59-60 (list of materials reviewed does not include any classification records for any prisoners other than Mr. Mullins and his assailant, Clarence Jackson); ECF 351 at 72:25-73:10 (list of

materials reviewed contains all documents relied upon by Myers to reach his opinions); ECF 351 at 179:9-180:5 (Myers did not look at how St. Clair treated reporting victims in any case other than Mr. Mullins's). As such, he does not present a sufficient basis to opine about operation of the classification system in practice at St. Clair.

As for the reliability of Myers's opinions about classification of Mullins and his assailant, Clarence Jackson, those are flatly unreliable in their methodology. As set forth in Plaintiff's response (ECF 363 at 48), ADOC's classification manual indicates closed custody pursuant to a risk assessment tool for inmates with either: (a) a total of 12 points or more for the entire set of 8 questions, or (b) 10 points or more in total on the first 4 questions. ECF 160- 17 at 75-76; ECF 360 at 51:2-12. Jackson's April 2018 classification summary indicated (a) 22 points in total; and (b) 11 points in total for the first 4 questions. ECF 186-4 at 12. Both metrics independently qualified him for close custody according to the risk assessment tool. ECF 160-17 at 75-76; ECF 360 at 51:2-12. Yet despite Jackson's history of institutional violence, on September 18, 2018, St. Clair staff including Malone recommended that Jackson be reduced from close custody in the RHU to medium custody in general population. ECF 321 at 25. The justification for the custody level reduction was that Jackson had "done his time" in restricted housing and been infraction-free for three months while secured in the RHU. ECF 321 at 25. On the custody reduction form, which was signed by Defendant Malone, only a single April 1, 2018 assault was listed as the "infraction(s)

12

leading to current placement," despite the many other assaults identified in Jackson's April 2018 classification summary. ECF 321 at 25; ECF 186-4 at 8 & 1-14. When asked about St. Clair's fidelity to the risk assessment tool at his deposition, Myers was not even aware of any departures from the risk assessment tool's dictates. ECF 328 at 226:6-227:17 (Myers did not recall any overrides for assailants Cedric Davis or Clarence Jackson); *id.* at 201:15-20 (Myers believed ADOC complied with the classification manual as to those individuals, even though the record shows otherwise). Myers's classification opinions are not only disputed, but also unreliable in their methodology.

In the center of their brief, impermissibly, ADOC Defendants also sketch out several broad opinions by Myers that they cite nowhere in the remainder of their brief, not referencing these opinions as to any particular defendant. ECF 166 at 28-29. As set forth above, *supra* at 4-5, this discussion fails to set out facts in line with the Court's order (ECF 85 at 14-16); Defendants do not rely upon it anywhere in their discussion of defendant liability, and thus it has no bearing on Defendants' liability. Moreover, these opinions are hotly disputed, including by evidence including Plaintiff's expert Dan Pacholke, and Defendants do not even claim otherwise, having omitted them from their statement of undisputed facts. As such, these opinions cannot support summary judgment. Thus, this Court need not consider this section.

Yet if the Court does consider these facts, the opinions discussed in this section should be excluded under Federal Rule of Evidence 702 because they are unreliable

and rely on insufficient sources and methods. For example, Defendants cite Myers's

opinion that, "[t]he ADOC Officials took reasonable steps to locate, and remove

contraband, including contraband weapons, from St. Clair." ECF 166 at 29. Yet at his

deposition, Myers admitted that he merely relied on the claims of ADOC Defendants

that contraband searches were being done, and did not do any sort of independent

review of records to assess the level of searches done in practice. ECF 348 at 95:23-

96:25; *see also id.* at 157:14-158:15 &76:15-25. Myers did not do any independent

analysis of the level of contraband at the facility. ECF 351 at 226:1-5. Nor did he look

at incident reports documenting contraband searches or discipline for failure to

conduct contraband searches. ECF 351 at 95:4-16; ECF 160-32 at 59-60. Nor, besides

looking at the underlying incident, did Myers assess whether St. Clair staff complied

with the safety and security policies that were on paper. ECF 351 at 157:14-158:15.

Myers's methodology is unreliable to support his broader systemic opinion; a district

court need not "admit opinion evidence which is connected to existing data only by

the *ipse dixit* of the expert," such as when "there is simply too great an analytical gap

between the data and the opinion proffered." *General Electric Co. v. Joiner,* 522 U.S. 136,

146 (1997); *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 114–15 (S.D. Fla.

2024) ("an opinion is not reliable when there is 'too great an analytical leap between

the [supporting] data and the opinion proffered'").

Likewise, Myers' opinions that Defendants "took reasonable and appropriate

steps" to respond to the violence at St. Clair, or "did not turn a blind eye to ADOC's

14

challenges," are likewise methodologically unsound. ECF 166 at 28-29. First, without

conducting any analysis on the violence and underlying conditions at St. Clair, Myers

lacks a solid basis upon which to opine on whether the response to that violence or

condition(s)--that he did not assess–was "reasonable and appropriate." *See*, *Jones*, 861

F.2d at 662-63 ("[R]elevant testimony from a qualified expert is admissible only if the

expert knows of facts which enable him to express a reasonably accurate conclusion

as opposed to conjecture or speculation."); Fed. R. Evid. 702 (adv. cmte. note to 2023

amendments) (confirming that "the critical questions of the sufficiency of an expert's

basis, and the application of the expert's methodology," go to admissibility, not

merely to weight).

As it relates to violence and "inmate-on-inmate misconduct," for example,

Myers admitted repeatedly that he did not look at incident reports (apart from the

underlying incident) or data on violence at St. Clair. ECF 351 at 80:9-14, 76:10-14,

80:9-19. When asked why he had opined in his report that the level of violence at St.

Clair was consistent with other similar facilities, he could not identify what source that

conclusion was based on other than that it must be somewhere in his list of materials

reviewed. ECF 351 at 180:8-182:1. This is insufficient to develop an opinion on the

scope of the underlying condition of systemic violence. The same is true of the rest of

the underlying conditions referenced by Myers. *See, e.g.*, *supra* at 2-3 (Myers made no

assessment of level of contraband or searches at St. Clair in practice); ECF 351 at

93:7-11 (Myers undertook no analysis of sufficiency of staffing in practice); *id.* at 77:1-

5 (Myers did not conduct any analysis of staffing levels in practice at St. Clair other than what is in his report; ECF 160-32 (Myers's report does not describe any such analysis of St. Clair staffing levels in practice); ECF 351 at 85:9-86:24 (Myers reviewed only references to staffing audits, not the audits or even summaries of those audits); *id.* at 158:16-24 & 90:18-24 (Myers did not conduct any analysis into whether line staff were actually complying in practice with any of St. Clair's written policies).

Second, as to Myers's assessment that Defendants acted appropriately in response to these conditions (which Myers did not assess), Myers relied only on those documents provided to him by the defense. ECF 351 at 73:3-74:25; ECF 160-32 at 59-60. He did not ask to review any documents himself. ECF 351 at 73:3-74:25. As is evident from the "Materials Reviewed" list in his report, the documents he reviewed and relied upon were almost exclusively those created by ADOC employees, or consisting of Defendants' deposition testimony. ECF 160-32 at 59-60. Myers did not rely on any outside audits or reports about St. Clair from non-ADOC sources, other than a single PREA audit and a few references (not even summaries) to other audits that he did not review. ECF 160-32 at 59-60; ECF 351 at 72:19-73:10, 83:7-86:24, 158:16-24. For example, he did not review any ASCA audits, vulnerability analysis reports, *Duke* monitoring reports, incident report spreadsheets prepared for *Duke*, lawsuits, or other similar documents. This approach also presents an unsupportable methodology, as looking at one-sided, cherry-picked data is unreliable and scientifically unsound. *Kilpatrick*, 613 F.3d at 1336 (district court must scrutinize the

reliability of the expert's "sources and methods"); *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360, 1371-72 (N.D. Ga. 2021).

As another example, Myers's opinions that, "[t]he ADOC Officials maintained appropriate classification procedures, properly classified Jackson, and Mullins, and took appropriate action to separate Mullins from his alleged abuser" is unreliable for the reasons explained *supra* at 2-3, including that Myers did not have a sufficient basis to extrapolate his opinions to a systemic level based on a review limited to the underlying incident; and his conclusions about Jackson were unreliable and unsupported. In addition, Myers testified repeatedly at his deposition (ECF 351 at 113:13-119:23, 136:11-18, 148:24-6 & 175:15-21) (and also stated in his report, ECF 160-32 at 18), that he believed that Mullins did not identify Clarence Jackson as his assailant, and that staff were unaware of the identity of the assailant, until after Mullins was stabbed by Jackson and that fact was pivotal to his conclusion that staff were unable to take any further action to protect Mullins. Yet Myers was simply mistaken as to this crucial fact, as Defendants' own records and deposition testimony definitively established that they knew Mullins had identified Jackson on February 25th. *See* ECF 363 at 49-55 (Plaintiff's Statements of Fact Nos. 68-74 & 91-92 & 95).

Likewise, Myers testified that he believed Mullins had never requested to leave general population in connection with his reports about Jackson (ECF 351 at 172:12-176:15), and thus, that "ADOC staff facilitated Mullins' housing requests and placed him in RHU or protective custody when he alleged concerns for his safety in

17

population" (ECF 363 at 21). Again, the underlying facts here are flatly incorrect, as

shown by Defendants' own documentation. *See* ECF 363 at 50 (Fact No. 73: "I've

asked to be placed in seg for my own safety, PC if possible but I cannot live in St.

Clair population."); ECF 363 at 54-55 (Fact No. 93: "Mullins claims that he is in fear

for his life in population at St. Clair" and asked "to be placed in seg"). In short,

Myers' methodology was unreliable, and his failure to review the underlying (and

available) records relating to the conditions and practices at St. Clair undermines any

claim that his opinions are based on any sound methodology. Rather, Myers was

simply crediting and relying on cherry-picked testimony of Defendants and ADOC

employees, often with great inaccuracy. These opinions must be excluded, and in any

case, no Defendant relies on them in any statement of fact or any discussion of any

Defendant's liability.

## IV. Brian Zawilinski's opinions should be excluded at summary judgment.

The ADOC Defendants' brief makes broad references to Brian Zawilinki's

opinions, but they do not withstand scrutiny. ECF 166 at 31. As an initial matter,

Defendants do not cite to Zawilinski's actual testimony, where he concedes that his

opinions are lacking methodology and analysis. *See, e.g.*, ECF 357 at 97:7-25; 176:15-

177:12. Importantly, Mr. Zawilinski was never stationed in a maximum security prison

throughout his career. *Id.* at 80:16-20; 112:16-24; 82:23-83:3-12; 91:22-92:4. St. Clair is

the only maximum security prison he has ever visited, and he did so in order to

provide retained expert opinion.  *Id.* at 145:15-24; 147:10-13; 147:21-148:12.

First, the ADOC Officials reference Mr. Zawilinski's opinions that place the blame for St. Clair's problems on staffing. ECF 166 at 31 (citing to ECF 160-33 at 38-39 (Zawilinski report)). Mr. Zawilinksi goes so far to state that the "significant staffing shortage is likely the single greatest contributor of the issues plaguing SCCF for approximately the last decade." ECF 160-33 at 23. Yet he gives this opinion without any analysis ("No analysis was needed to determine they had a severe staffing shortage") of the staffing levels, and no methodology ("you don't need any methodology"). ECF 357 at 97:7-25; 176:15-177:12. Accordingly, Mr. Zawilinski's opinion is devoid of sufficient information to opine on staffing shortages. *See, e.g. Jones*, 861 F.2d at 662-63. Moreover, this opinion is heavily disputed, even in testimony from Defendants themselves. *See, e.g.*, ECF 345 at 150:1-151:20 (Defendant Givens denying that staffing levels interfered with the ability to supervise prisoners, conduct contraband searches, or control prisoner movement); ECF 363 at 67 & 73-74 (Plaintiff's Fact Nos. 141 & 167). This opinion should be stricken as unreliable.

Similar methodological problems infects Mr. Zawilinki's other opinions referenced by the ADOC Officials. *See* Dkt. 166 at 31 (citing ECF 160-33 at 41-42, 44). For starters, they contend Mr. Zawilinski's third opinion is relevant, where he apparently disagrees with the opinions and recommendations of outside entities and external experts regarding St. Clair's failure to properly staff the facility. ECF 160-33 at 40. The problem is, Mr. Zawilinksi admitted under oath he did not review any external expert reports or external audits to form his opinion about their critiques and

recommendations on St. Clair. ECF 357 at 61:1-11. On the contrary, his opinions relied almost exclusively on documents that came from ADOC employees and staff themselves, and not these external entities. *Id.* at 59:21-60:2.

In Mr. Zawilinski's fourth opinion cited by Defendants, he claims that, after meeting with St. Clair staff, speaking with them over the telephone, and reviewing St. Clair's documentation, there is no evidence that supervisory staff condoned or approved of the violent conditions, or of staff not performing their job functions. ECF 166 at 31 (citing ECF 160-33 at 41-42).  Here, Mr. Zawilinki's opinion is misleading.  He did not engage in a deep dive to understand what evidence exists that staff were deliberately indifferent to the violence at St. Clair or not fulfilling their job responsibilities; instead he only met with a single employee, Defendant Larry Baker. ECF 357 at 98:23-99:20. He also did not review whether staff complied with St. Clair's written policies (*Id.* at 52:8-11), which would have provided him with insight on whether staff were performing their job functions.  Further, he could hardly provide an opinion on staff responses to the conditions at St. Clair because he did not analyze them. He did not conduct any analysis to understand the overall level of assaults at St. Clair  or staffing for rovers and cubicle officers ("[t]hat doesn't require analysis"). ECF 357 at 56:5-10; 97:7-25.  He did not analyze documents to determine whether inmates were usually sleeping in unassigned cells or documents related to the discipline of ADOC employees. *Id.* at 57:25-58:10; 105:15-22.  Mr. Zawilinski did not

take the basic step to compare the violence at St. Clair with other Alabama prisons. *Id.* at 160:3-9. This opinion should be stricken as methodologically unsound.

Finally, Mr. Zawilinski's lack of pertinent specialized knowledge dooms his fifth opinion, also cited by ADOC Officials as relevant, that staff efforts involving Mr. Mullins complied with ADOC and St. Clair policy. ECF 160-33 at 44. In reaching this opinion, Mr Zawilinski contradicts abundant St. Clair staff's testimony regarding all of the many errors made by St. Clair staff, often as admitted by staff, with regard to their treatment of Mr. Mullins and his assailant. *See* ECF 363 at 41-61 (Plaintiff's Fact Nos. 36-39, 42-49, 57-58, 60-63, 65-66, 75, 80-83, 88-89, 99-105, 108-112, 115-118, 122). Zawalinski's methodology is unsound, and, in any event, his opinion is plainly disputed and thus provides no basis for summary judgment.

WHEREFORE, for the reasons explained, Plaintiff respectfully asks this Court to strike Defendants' expert opinions as set forth above.

Respectfully submitted,

BY: /s/ Megan Pierce
*One of Plaintiff's Attorneys*

BY: /s/ Anil Mujumdar
*Local Counsel*

*Ruth Z. Brown (pro hac vice)
Megan Pierce (pro hac vice)
Quinn Rallins (pro hac vice)
Attorneys for Plaintiff
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor

Chicago, IL 60607
Telephone: 312-243-5900
Fax: 312-243-5902
Email: ruth@loevy.com,
        megan@loevy.com
        rallins@loevy.com
*Counsel of Record

Anil A. Mujumdar (ASB-2004-L65M)
Dagney Johnson Law Group
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com

## CERTIFICATE OF SERVICE

I, Megan Pierce, an attorney, hereby certify that on March 14, 2025, I caused the foregoing to be filed using the Court's CM/ECF system, thereby effecting service on all counsel of record.

/s/Megan Pierce
*One of Plaintiff's Attorneys*

22